IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE HARRIS and JEFF DUNSTAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11 C 5807 |
| | ) | |
| COMSCORE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs Mike Harris and Jeff Dunstan allege, as individuals and on behalf of a class of similarly situated individuals, that comScore, Inc. ("comScore") improperly obtained and used personal information from their computers after they downloaded and installed comScore's software. They assert claims for violation of the Stored Communications Act, 18 U.S.C. § 2701(a)(1) &(2) (Count I), violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a) & (d) (Count II), violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) (Count III), violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (Count IV), and for unjust enrichment (Count V). Before the court is ComScore's "Motion to Dismiss Under Rule 12(b)(3) or, in the Alternative, to Transfer Venue under 28 U.S.C. §1404(A)" (Dkt. No. 12).

BACKGROUND

ComScore is an internet research company that monitors the computer usage of consumers who install comScore's software. (Compl. ¶ 4.) To induce consumers to install its software, comScore bundles the software with free programs such as screensavers and games and offers free prizes for each download. (*Id.* ¶¶ 32-34.) After installation, comScore's software continually

monitors the host computer and sends information about its activity to comScore's servers. (*Id.* ¶26.) ComScore then sells the data to its clients, who use the data for marketing research and analysis of online behavior. (*Id.* ¶¶ 26-27).

According to the declaration of comScore's Vice President for Panel Operations, John O'Toole, before a user can install comScore's software, the consumer must click a box acknowledging that he or she has "read [and] agree[d] to . . . the terms and conditions of the Privacy Statement and User License Agreement." (Dkt. No. 14 ("Declaration of John O'Toole") ¶ 4.) The User Licence Agreement includes a forum-selection clause stating that "for any non-arbitral action or proceeding arising out of or related to this program or this agreement, sole and exclusive jurisdiction shall reside with the appropriate state court located in Fairfax County, Virginia or federal court located in Alexandria, Virginia." *(Id.* at Ex. A.) ComScore through its pending motion seeks to enforce that forum-selection clause.

## DISCUSSION

The plaintiff bears the burden of demonstrating that the venue it has chosen is proper. *Electroplated Metal Solutions, Inc. v. Am. Servs., Inc.*, 500 F. Supp. 2d 974, 976 (N.D. Ill. 2007) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). To resolve a venue motion, the court must take all facts in the complaint as true, unless contradicted by the defendant's affidavits, and must resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. *Id.*; *see also* 5B Charles Alan Wright, et al., *Federal Practice and Procedure* §1352 (3d ed. rev. 2011). A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10. That reasonableness standard means, among other things, that a forum-selection clause is enforceable only if its existence "'was reasonably communicated to the

plaintiff.'" *Electroplated Metal Solutions*, 500 F. Supp. 2d at 976 (quoting *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995)).

Here, plaintiffs Harris and Dunstan have plainly alleged that the forum-selection clause was not apparent when they downloaded the software.[1] Specifically, the complaint alleges that the terms of service were obscured during the installation process "in such a way that the average, non-expert consumer would not notice the hyperlink" to them. (Compl. ¶ 40). Nothing in comScore's filings contradicts that allegation. Indeed, O'Toole's declaration states only that every user must click to acknowledge that he has read the licence agreement, and that a hyperlink was available to the agreement. (O'Toole Declaration ¶ 4.) O'Toole's declaration does not provide sufficient detail about how the hyperlink to the agreement was presented to the user, however, to demonstrate that the user could reasonably be expected to find the hyperlink to the agreement or manifest assent to it during the installation process. Given that the court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff, the court declines to infer that clicking a box acknowledging that a user has read an agreement indicates that the agreement was reasonably available to the user, particularly when the plaintiffs have alleged that the hyperlink to the agreement was obscured.

ComScore cites several cases in which online "click-through" agreements—including some with forum-selections clauses like the one at issue here—have been enforced. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002); *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913 (N.D. Ill. 2003); *Nazaruk v. eBay, Inc.*, 2006 WL 2666429 (D. Utah 2006) (unpublished)

---

[1] *See* Compl. ¶ 69 ("Plaintiff Harris did not agree to comScore's Terms of Service and did not know that he was installing Surveillance Software when he installed the free software."); ¶ 73 ("Plaintiff Dunstan did not agree to comScore's Terms of Service and did not know that he was installing Surveillance Software when he installed the free software.").

(forum-selection clause enforced); *Forrest v. Verizon Comm'n Inc.*, 805 A.2d 1007 (D.C. 2002) (forum-selection clause enforced). None of those cases, however, included the key aspect of this case—the complaint's allegation that the hyperlink to the agreement was obscured and that the agreement was not readily available to the user.

Indeed, *Specht* explicitly acknowledged the possibility that a click-through agreement is not enforceable if its terms are not reasonably apparent to the user. In *Specht*, the existence of the license terms was not apparent unless the user scrolled below the download button. The court concluded that "in circumstances such as these, where consumers are urged to download free software at the immediate click of a button, a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." *Specht*, 306 F.3d at 32. Similarly, in this case, the plaintiffs have alleged that the hyperlink to the license agreement was not apparent. It is true, of course, that the plaintiffs in this case should have seen the reference to the agreement and the requirement that they acknowledge that they read it before commencing their download. Nonetheless, it is not reasonable to expect a user casually downloading free software to search for such an agreement if it is not immediately available and obvious where to obtain it. As the Second Circuit noted, "[w]hen products are 'free' and users are invited to download them in the absence of reasonably conspicuous notice that they are about to bind themselves to contract terms, the transactional circumstances cannot be fully analogized to those in the paper world of arm's-length bargaining." *Id.* Consequently, under the circumstances alleged here, including that the location of the license agreement was not readily apparent, the court concludes that the forum-selection clause was not reasonably communicated to the plaintiffs Harris and Dunstan.

Of course, further factual development may indicate that the plaintiff's allegations are

incorrect, that the terms of the license agreement were reasonably available during the installation process, and that the plaintiffs therefore must have manifested assent to the contract and the forum-selection clause. At this stage, however, the court must take the plaintiffs' word for it. The defendant's 12(b)(3) motion is accordingly denied.

In the alternative, ComScore seeks a transfer of the case under 28 U.S.C. §1404(a). That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). To prevail on the motion, ComScore must establish "that the transferee forum is clearly more convenient." *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The court may consider "the plaintiff's choice of forum, the locations of the material events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses." *Electroplated Metal Solutions*, 500 F. Supp. 2d at 978.

In this case, a transfer would perhaps serve the convenience of comScore, in that its offices and many of the documents related to the suit are in the Eastern District of Virginia. One of the plaintiffs, however, is a resident of Illinois, and a significant event—his downloading and installation of the software—occurred here. Moreover, "[a] plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum," and "a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). In light of the deference due the plaintiffs' choice to file suit in the Northern District of Illinois, the court declines to exercise its discretion to transfer the case. The defendant's motion is denied.

## CONCLUSION

For the reasons explained above, ComScore's "Motion to Dismiss Under Rule 12(b)(3) or,

in the Alternative, to Transfer Venue under 28 U.S.C. §1404(A)" is denied.

ENTER:

_____

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: Oct. 7, 2011