# In the United States District Court
## For the Northern District of Illinois
### Eastern Division

| | | |
|---|---|---|
| MIKE HARRIS and JEFF DUNSTAN, | ) | |
| Individually and on behalf of a class of similarly | ) | |
| Situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 11 C 5807 |
| | ) | |
| v. | ) | Judge Holderman |
| | ) | |
| COMSCORE, INC., a Delaware corporation, | ) | Magistrate Judge Kim |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO BIFURCATE DISCOVERY**

Introduction

A denial of class certification will, as a practical matter, bring this litigation to an end.
Mr. Harris and Mr. Dunstan allege minimal damages, and their individual claims can be easily
satisfied if certification is denied. For that reason, among others, full-fledged merits discovery
should not proceed at this time. Such discovery has no bearing on the threshold question of class
certification, and would be extremely burdensome and expensive for Defendant comScore.

Indeed, Plaintiffs have propounded sweeping and intrusive discovery requests for
documents going back more than ten years (the statute of limitations for Plaintiffs' claims is two
years) and encompassing virtually all aspects of comScore's business.[1] On their face, these
requests would require comScore to collect, search, and review a massive number of emails and
documents, the great majority of which will have no bearing at all on whether this case can
proceed as a class action under Rule 23.

---

[1]  Plaintiff Mike Harris' First Set of Interrogatories to Defendant Comscore , Inc. is attached as Exhibit "A" to this
Memorandum. Plaintiff Mike Harris' First Set of Requests for the Production of Documents to Defendant
Comscore, Inc. is attached as Exhibit "B" to this Memorandum.

Burdens aside, there is no reason to allow merits discovery until the Court determines whether there will be a class and, if so, what the scope of that class will be. As things stand, Plaintiffs are seeking to certify an expansive class encompassing individuals who used different software and who were allegedly harmed in different ways by different alleged business practices and different technical issues. These discrepancies among the proposed class members will affect the contours of any class that might be certified. Launching into full merits discovery on all alleged issues when the critical question of class certification remains unanswered would lead to waste and inefficiency, as detailed below.

ComScore has already agreed to provide Plaintiffs with the relevant source code for the software in dispute, as well as the source code for its "RK Verify" software that confirms that consumers have viewed and agreed to comScore's Terms of Service before installing the software. This source code will allow Plaintiffs to test their core allegations on the merits while also addressing the central issues on class certification. In addition, comScore is committing to provide additional discovery going to these key class certification issues and others, as outlined below. Under these circumstances, comScore respectfully requests that the Court follow the common practice of deferring merits discovery until a ruling on Plaintiffs' class certification motion.

I.     **BACKGROUND**

ComScore is a leading Internet market research company that measures the online activity of Internet users ("Panelists") who volunteer to join a comScore market research panel in exchange for various benefits, such as the planting of trees in rural communities on their behalf, free third-party software applications, or the chance to win prizes—while helping to influence overall trends on the Internet (in the same way Nielsen TV families influence television). (*See* Compl. ¶ 25.) To join a comScore panel, a prospective Panelist must download and install

comScore's software, which is available in a Windows version and was available, for a short period of time, in a Macintosh version. (*Id*.) Before prospective Panelists can install comScore's software, they must affirmatively agree to the terms and conditions set forth in comScore's terms of service ("TOS"), which are presented to every prospective Panelist. (O'Toole Decl., docket number ("Dkt. No"). 40 ["O'Toole Decl."], at ¶¶ 3, 4.) ComScore's software will *only* install if a prospective Panelist clicks on a button to acknowledge that he or she has read and agreed to the TOS. (*Id*.; Compl. at ¶¶ 38-40, Exh. A.)

The thrust of Plaintiffs' Complaint is that comScore collects information on consumers' Internet activity without their consent and unjustly profits by selling the information to third parties. Specifically, Plaintiffs allege:

- That Panelists do not consent to the extent of information the software actually collects; specifically, that the software collects personal information, not just from Panelists' computers, but also from local networks to which Panelists' computers are connected, (Compl. ¶¶ 10, 11, 37, 51, 52, 54, 82, 91, 98, 105, 106);

- That comScore's full privacy policy is not as readily accessible as Plaintiffs believe it should be, which affects Panelists' ability to consent to its terms, (*id*. at ¶¶ 38, 40);

- That comScore's TOS is not displayed to prospective Panelists prominently enough to allow them to sufficiently consent to the installation of the comScore software, (*id*. at ¶¶ 12, 39);

- That the comScore software installs "root certificates" on Panelists' computers and adjusts firewall settings, allegedly making them more susceptible to hacking attacks (*id*. at ¶¶ 60-66); and

- That the comScore software is difficult to remove. (*id*. at ¶¶ 14, 58-59).

ComScore has denied these allegations in its Answer, and in declarations filed with the Court. (Answer, Dkt. No. 59, response to ¶¶ 10, 11, 12, 14, 38, 39, 40, 60; O'Toole Decl., Dkt. No. 40, ¶¶ 10-14.) As referenced in comScore's Answer, the first two allegations stem from issues specific to comScore's Macintosh software. (*Id*. at ¶¶ 10, 11, 38.) With respect to the first allegation, comScore explained in its Answer that a glitch in the beta version of its Macintosh

3

Panel potentially allowed the software to count the number of specific types of files located on networks to which Panelists' Macintosh computers were connected, but did not allow the software to determine the content of the files, or to collect private data from any non-Panelist user of a local network. (*Id*. at ¶¶ 10, 11.) The glitch was promptly fixed, and information comScore obtained from its Macintosh panel was never shared, sold, or otherwise commercialized to any customers. (*Id*.)

With respect to the second allegation, comScore's Answer explains that, for a short period of time, one version of an installation presentation that was limited to comScore's Macintosh software did not contain a functioning hyperlink to comScore's full privacy policy, although this installation presentation still disclosed comScore's TOS and required prospective Panelists to acknowledge that they had read and agreed to its terms. (*Id*. at ¶ 38.)

With respect to the remaining issues, comScore's Answer, and the O'Toole Declaration, explain that the software does not install root certificates, and that the software can be easily and permanently removed using the Windows Add/Remove Program utility, just like any other piece of software. (Answer, response to ¶¶ 14, 60; O'Toole Decl., ¶¶ 10-14.)

## II.  LEGAL STANDARDS APPLICABLE TO BIFURCATION

"[T]he decision to bifurcate discovery is within the discretion of the district court …." *American Nurses' Assoc. v. State of Illinois*, 1986 WL 10382, at \*2-\*3 (N.D. Ill. Sept. 12, 1986); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02-c-2523, 2004 WL 609326, at \*2 (N.D. Ill. Mar. 23, 2004). In fact "[i]t is recommended that no discovery on the merits be permitted during the discovery of the class action issue, except as is relevant to the class determination." *Plummer v. Chicago Journeyman Plumbers' Local Union No. 130*, 77 F.R.D. 399, 402 (N.D. Ill. 1977) (citing Manual For Complex Litigation). In *Plummer* the court declined to permit discovery to proceed on the merits, concluding that a "bifurcated approach to

discovery is the proper and most efficient way to administer the class action." *Id*. at 401. *See also Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992) ("to best serve the interests of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits"); *Harris v. Option One Mortgage Corp.*, 261 F.R.D. 98, 111 (D.S.C. July 17, 2009) (granting defendant's motion to bifurcate on the ground that doing so "will promote the interests of fairness and efficiency").

Bifurcation is particularly appropriate where the denial of class certification is likely to end the litigation or where the terms of an order granting certification could define and narrow the issues to be litigated on the merits. In these circumstances, courts have granted bifurcation to defer merits discovery because the class certification ruling could entirely or partially moot further discovery on the merits. As Judge Kocoras noted in ordering bifurcation: "If class certification is denied, the scope of permissible discovery may be significantly narrowed; if a class is certified, defining that class should help determine the limits of discovery on the merits." *American Nurses' Assoc.*, 1986 WL 10382, at *3. *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.14 (2009) ("[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary" and for that reason "[c]ourts often bifurcate discovery between certification issues and those related to the merits of the allegations.").

For this reason, bifurcation is consistent with Rule 23's mandate that class certification orders be entered at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). *Am. Nurses' Assoc.*, 1986 WL 10382, *2-*3 (granting bifurcation because it would "expedite the decision on class certification in accord with Federal Rule 23.") This goal of bifurcation is particularly relevant here, as the parties have agreed to an early determination of the class certification issue (as set forth in their Form 52 Report) and the discovery process will need to be managed carefully to ensure compliance with that mutually agreed goal.

III.     ARGUMENT

A.     **Bifurcating Class And Merits Discovery Will Lead To Efficiencies.**

1.     **If A Class Is *Not* Certified, The Burden And Expense Of Engaging In Merits Discovery Will Largely Be For Naught.**

This litigation will not proceed if class certification is denied. Plaintiffs understand this, and acknowledge it repeatedly in their pleadings. Paragraph 79 of the Complaint states that "[a]bsent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and will have no effective remedy." Similarly, Plaintiffs' motion for class certification filed with their Complaint reiterates that the alleged "injuries suffered by individual Class members are relatively small," and that "absent a class action, it would be difficult, if not impossible, for the individual members of the classes to obtain effective relief." [2] (Dkt. No. 2, Aug. 23, 2011, at 8.)

Plaintiffs' individual claims for damages reflect the relatively small amounts at stake. Only one of the named plaintiffs, Jeff Dunstan, alleges a loss claiming he "had to pay forty dollars ($40)" to purchase antivirus software to remove the comScore software from his computer. (Compl. ¶¶ 73, 118.) Both Plaintiffs claim statutory damages in an amount of $1,000 pursuant to two statutory damages provisions in the Stored Communications Act and Wiretap Act, respectively. (Compl., at 26. ¶ D.) Notably, Plaintiffs may only recover under one of these two statutes, not both. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007). This means that plaintiff Harris may recover, at maximum, $1,000, and plaintiff Dunstan may recover, at maximum, $1,040.

Given the meager amounts at issue, failure to certify a class will either lead Plaintiffs to voluntarily withdraw this action or, facilitate a quick and nominal settlement within the

---

[2] Although Plaintiffs filed a class certification motion, it was never noticed or presented to the Court. Plaintiffs apparently intend to file a supplemental motion.

applicable statutory parameters. In either case, proceeding with full merits discovery before the ruling on class certification will impose burdens that will be entirely wasted if (as we expect) the class is not certified. This concern is heightened in this case given the scope of Plaintiffs' pending discovery requests and the substantial costs and burdens that merits discovery in this case could entail (as discussed further in Section IV.C., below).

The circumstances here thus stand in contrast to those in which courts have denied bifurcation based on the likelihood that individual litigation would proceed regardless of the outcome on class certification. *See, e.g., In re Semgroup Energy Partners, L.P., Securities Litig.*, 2010 WL 5376262, at *3 (N.D. Okla. Dec. 21, 2010) (denying bifurcation where numerous plaintiffs had alleged enormous individual losses, indicating that the case would likely continue even if class certification were denied); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) (denying bifurcation where eighteen plaintiffs from multiple districts had individually sought relief before the cases were consolidated, indicating that the case would continue even if certification were denied).

### 2. Even If A Class Is Certified, Bifurcated Discovery Will Still Lead To Greater Efficiencies And Minimize The Potential For Waste

Bifurcated discovery will also lead to efficiencies even if a class *is* certified, because the certification order will likely define and narrow the issues so that the parties can better focus merits discovery. *American Nurses' Assoc.*, 1986 WL 10382, at *3. As things stand, Plaintiffs are claiming an open-ended class of millions of individuals, which spans all versions of the comScore software (for Windows computers and Macintosh computers) and encompasses all of the many distinct issues alleged in the Complaint. (Compl. ¶¶ 74, 76.) Correspondingly, Plaintiffs have propounded discovery requests that are sweeping in breadth and encompass all potential issues, including those that may well be obviated depending on the outcome of the class certification process.

For example, Plaintiffs have asked comScore to identify each of its customers who access the database derived from comScore's software and to provide additional sensitive information about comScore's customer relationships. (*See, e.g.*, Interrogatory Nos. 10 and 11, RFP Nos. 29 and 30.) The database accessed by comScore's customers, however, is derived *entirely and exclusively* from information collected from users who have downloaded the Windows version of comScore's software[3] – whereas many of the issues alleged in the Complaint pertain *only* to the software applicable to Macintosh computers. For example, Plaintiffs' contention that the comScore software collects information from local networks, *(see, e.g.*, Compl. ¶¶ 10-11), stems from a single, short term glitch that only affected comScore's Macintosh software and not the Windows software. Similarly, Plaintiffs' claim that comScore's terms of service do not always provide a conspicuous and functioning hyperlink to its privacy policy stems from one version of an installation presentation that was limited to comScore's Macintosh software and did not affect the installation of any Windows software.

If the Court ultimately certifies a class limited to these issues unique to the Macintosh software, discovery related to comScore's customers (who access a database derived *exclusively* from the Windows software) would become entirely irrelevant. There is no reason to subject comScore to the burdens and business complications inherent in Plaintiffs' customer-related discovery requests when the class certification process will determine whether discovery regarding these customers is relevant at all.[4]

At the same time, there are unique hurdles to certification applicable to the Macintosh

---

[3] As reflected in comScore's Answer, no comScore customers have had access to any information collected from the Macintosh version of comScore's software because comScore never shared, sold, or otherwise commercialized the information obtained from the Macintosh Panel. (*See* Answer at ¶ 10.)

[4] Similarly, it would be inequitable to subject these customers to burdensome third party discovery that would be rendered moot by a certification order that excludes Windows users from the class. Plaintiffs' counsel has already expressed an intention to direct third party discovery to comScore's customers, (*see, e.g.*, Plaintiffs' Motion for Expedited Discovery, Dkt. No. 6, at 7), and has previously made efforts to do so, including making a demand, on October 12, 2011, for "an immediate Rule 26 conference so we can send out proper subpoenas."

8

Panel, which could lead to a class limited to *Windows* Panelists and thus narrow the scope of merits discovery in a different way. Among other things, Plaintiffs must show that their proposed class of Macintosh Panelists have suffered injury-in-fact sufficient to confer constitutional standing under Article III. Because comScore never sold, shared, or otherwise commercialized information obtained from Macintosh Panelists, these Panelist are distinguishable from Windows Panelists in that they have no basis to claim that comScore profited from their personal information. If Plaintiffs are unable to certify a class of Macintosh Panelists, there would be no need for discovery targeted specifically at Macintosh-related issues.

Whichever way these issues are ultimately decided, it is clear that the contours of any potential class would become clear only following the class certification process. Under these circumstances, the most prudent course is to stay merits discovery until after the court has ruled on Plaintiffs' certification motion and defines the class, if any.

**B.      comScore's Current Agreement To Produce The Source Code In Dispute, And To Respond To Specified Discovery, Addresses The Core Issues On Class Certification.**

The main issues on class certification are likely to be: (1) whether the comScore software impacted the putative class members in a common manner; and (2) whether Plaintiffs can litigate the core issue of consent (*i.e.*, whether class members consented to installation of the comScore software) on a class-wide basis. The materials comScore has already agreed to provide go directly to these central issues and will allow Plaintiffs to fully assess whether they can satisfy the elements of Federal Rule of Civil Procedure 23.

With respect to the first issue, the parties have engaged in an extensive meet and confer process (involving their respective e-discovery liaisons as recommended under the Seventh Circuit's Electronic Discovery Pilot Program) and agreed on the production of certain source code for comScore's Panelist software (both Windows and Macintosh-based versions). Thus,

Plaintiffs will be able to determine the precise manner in which the comScore software may have

impacted the proposed class members, including: (1) what information the software collects and

transmits to comScore; (3) how the software avoids collecting or transmitting sensitive

information like passwords, credit card numbers, social security numbers and the content of

emails; (4) how the software affects, and interacts with, Panelists' computers (e.g., does it install

root certificates, how does it affect the system registry, does it adjusts firewall settings, etc.), and

(5) how the software can be uninstalled, among other issues. With this information, Plaintiffs

will be able to determine whether the comScore software affects Panelists in a sufficiently

common manner to satisfy the requirements of Rule 23. The source code to be provided will also

allow Plaintiffs to answer critical questions about the similarity, or dissimilarity, between

comScore's Windows-based software and its Macintosh-based software, which also goes to the

core issue of commonality and predominance on class certification.[5]

With respect to the issue of consent, comScore has also agreed to provide the source code

for its "RK Verify" software, which is designed to prevent comScore's Panelist software from

installing unless a prospective Panelist is presented with comScore's terms of service and agrees

to its terms. This is the crux of the consent issue. Through analysis of RK Verify, Plaintiffs will

be able to determine whether, in their view, the software contains any deficiencies affecting

consent, and whether there are individualized issues that would impact certification under Rule

23. ComScore will also agree to provide (i) discovery sufficient to show the methods by which

comScore's terms of service and other disclosures are presented to prospective Panelists, and (ii)

discovery sufficient to show the methods by which consent to comScore's terms of service is

obtained from prospective Panelists. Several of Plaintiffs' pending discovery requests relate to

---

[5] This commitment to produce the relevant source code thus addresses Plaintiffs Requests for Production Nos. 2, 27-28, and Interrogatories 16 and 17.

these areas[6] and comScore will commit to meet and confer in good faith to determine the precise scope of responsive materials that will be provided on the consent issue in the initial phase of class certification discovery.

In addition, comScore agrees that discovery on the following areas raised by Plaintiffs' pending discovery requests is appropriate for the initial phase of class certification discovery and will commit to meet and confer in good faith to determine the precise scope of responsive information and documents to be provided:

- Discovery on the materials that comprise the contractual agreement and applicable terms between comScore and Panelists (Requests Nos. 15, 26.)

- Discovery on the particular agreements with the named plaintiffs (Requests Nos. 24, 25.)

- The number of Panelists in the proposed class (Interrogatory No. 7.)

- Complaints from Panelists about the issues raised in the Complaint (if any) (Requests for Production Nos. 34, 35 and Interrogatory No. 8.)

- Information on comScore's document preservation policies and compliance in this case (Request for Production Nos. 40-42 and Interrogatory No. 6.)

**C.      The Bulk Of Plaintiffs' Discovery Requests Seek Information That Has No Bearing On Class Certification.**

The following discovery requests have no bearing on the elements of Federal Rule of Civil Procedure 23, and should be stayed pending the Court's ruling on class certification.

**1.      Discovery related to comScore's customers.**

RFP Nos. 29 and 30 and Interrogatory Nos. 10 and 11 seek information related to comScore's customers who access comScore's databases. The potential relevance (if any) of this discovery will depend entirely on the outcome of the class certification process. As discussed above, Plaintiffs' primary grievances with the comScore software relate to issues specific to the Macintosh Panel, yet comScore never shared, sold, or otherwise transferred information about its

---

[6] These include Interrogatory Nos. 12-14 and Requests for Production Nos. 13, 18, 21-26.

Macintosh Panelists to any customers. Moreover, discovery focused on comScore's customers has nothing to do with whether comScore Panelists share common claims and has no bearing to applying the requirements of Rule 23.

### 2. Discovery related to comScore's third-party partners.

RFP Nos. 4, 9, 10, 11, 12, 37 and Interrogatory No. 9 seek information related to comScore's third-party business partners, including all contracts with those third-parties and internal emails about those contracts. These third-parties offer comScore's software to users during the installation process of their own software application.[7]

ComScore is already committing to provide targeted discovery on the methods for displaying comScore's disclosures and for obtaining consent from prospective Panelists (methods that are implemented during the process for installing the software offered by comScore's third-party partners). As noted, comScore will produce the source code for its RK Verify software (which ensures that the comScore software cannot be installed along with its third party partners' software applications unless a user is presented with, and agrees to, comScore' terms of service), as well as additional materials sufficient to demonstrate the methods for presenting comScore's disclosures and obtaining consent from Panelists (as discussed above).

Beyond these areas, further discovery related to comScore's third-party partners should be deferred because it has no relevance to class certification. In particular, comScore's contracts with its partners and the related negotiations and communications over those contracts have no bearing whatsoever on any issue impacting any putative class member. Moreover, nearly all of

---

[7] Plaintiffs refer to these partners as "bundling partners" because they allegedly "bundle" comScore's software with their own. This is a misnomer because the software is not actually bundled together. Rather, comScore's third party partners offer the comScore software as a completely independent piece of software during the download and installation process for their own software. A prospective Panelist is free to install, or to not install, the comScore software.

this customer-related discovery will be irrelevant if class certification is denied. In particular, if Plaintiffs pursue their claims on an individual basis, the pending discovery related to comScore's third-party partners will only be relevant, if at all, with respect to the particular third-party partner from whom Plaintiffs themselves downloaded the comScore software.

### 3. Discovery seeking internal emails and other communications regarding the comScore software and other issues.

RFP Nos. 3, 5, 6, 7, 12, 14, 16, 17, 19, 20, 28, 30, 33, 36, 37, 38 and Interrogatory No. 4 seek production of emails and other communications involving comScore employees that relate to various issues, including the operation of the comScore software, the documents comprising the contractual agreement with Panelists, and comScore's contracts with third-party partners. As noted above, Plaintiffs are seeking production of materials over a period of more than ten years. The burden and expense involved in responding to these requests – which will require comScore to pull, search, and review what would almost certainly amount to several millions of pages of emails and documents – is massive and should not be imposed on comScore prior to a class certification ruling that may render the requests entirely moot.

As an example, Request No. 3 demands production of emails and other internal communications that relate to the "design, development, and deployment" of comScore's Panelist software. This request spans virtually all internal communications regarding the software that is the core of comScore's business. Imposing this massive burden at this juncture would serve no legitimate purpose. What matters ultimately is what the software does or does not do (which will be evident from the source code comScore has agreed to provide), not what comScore employees may have said about the software internally in daily emails.

As another example, these requests also seek production of internal emails that relate to comScore's Terms of Service and other materials comprising the contractual agreement with Panelists. (*See* Request for Production Nos. 14-17.) But comScore is already committing to

produce the contractual documents themselves. Requiring comScore to search, review, and produce internal e-mails about the drafting of these terms and other daily matters related to these materials would add nothing to the class certification analysis.

### 4. Discovery related to Trees for the Future.

RFP Nos. 31-33 and Interrogatory No. 18 seek information regarding comScore's relationship with Trees for the Future, which is explained above. This discovery has nothing to do with any of the elements of Rule 23.

### 5. Discovery related to termination of the Mac Panel.

RFP Nos. 6, 7, 8 and Interrogatory No. 19 seek information regarding the Macintosh version of comScore's software. As noted above, this software never made it past the beta testing phase and information from the Macintosh panel was never commercialized by comScore. These requests would require comScore to engage in a premature and burdensome document review process that would provide nothing of value to Plaintiffs, given comScore's existing commitment to produce its source code, including the source code for the Macintosh software.

Plaintiffs' discovery related to the Macintosh Panel should also be stayed because there is a critical distinction in this case between the Macintosh software and the Windows software that will likely affect the contours of any class that may be certified. ComScore never shared, sold, or otherwise commercialized information it collected from Macintosh Panelists, so these putative class members have no basis to claim injury on the grounds that comScore unlawfully profited from their personal information (nor do they claim otherwise). Consequently, there is a likelihood that any certified class will exclude Macintosh users, which would render these Macintosh-related discovery requests completely irrelevant.

### 6. Discovery related to experts comScore may or may not retain in connection with this litigation.

Request No. 43 and Interrogatory No. 23 seek related to comScore's potential experts.

14

However, the parties have already worked out a process for exchanging expert reports and conducting expert discovery on class certification issues, as set forth in the parties' Form 52 Report. (Dkt. No. 60.) These additional discovery requests, therefore, relate only to pretrial expert issues going to the merits issues and are premature on their face.

**7.     Other discovery that has no bearing on the class certification question, or are otherwise burdensome for this stage in the ligation.**

Requests Nos. 1, 39, 44, 45 and Interrogatory Nos. 2, 3, 4, 5, 15, 20, 21 have no bearing on class certification issues, are overly burdensome at this stage in the ligation, and/or would be premature even in a non-class action case. By way of example, Request for Production No. 44 asks for "All DOCUMENTS, ESI, CORRESPONDENCE or COMMUNICATIONS that YOU used, relied upon, reviewed, referenced, or consulted in drafting YOUR public response to this lawsuit." Interrogatory No. 20 delves into the same issue. Interrogatory No. 21 asks comScore to "IDENTFIY and DESCRIBE each and every fact and/or documentation which YOUR affirmative defense in the COMPLAINT are based." ComScore should not be required to respond to these or the other identified discovery requests at this time, which on their face relate exclusively to merits issues (to the extent they are relevant at all).

## IV.     CONCLUSION

For all of the above reasons, comScore asks that, with the exception of the materials comScore has agreed to produce, and the discovery requests comScore is offering to provide responses and/or objections to during the class period, all other non-class discovery in this action be stayed.

<table>
<tr><td>/s/Paul F. Stack</td><td>/s/Whitty Somvichian</td></tr>
<tr><td>Paul F. Stack</td><td>Michael G. Rhodes (<em>admitted pro hac vice</em>)</td></tr>
<tr><td>Mark W. Wallin</td><td>Whitty Somvichian (<em>admitted pro hac vice</em>)</td></tr>
<tr><td>STACK & O'CONNOR CHARTERED</td><td>Ray Sardo (<em>admitted pro hac vice</em>)</td></tr>
<tr><td>140 South Dearborn Street</td><td>COOLEY LLP</td></tr>
<tr><td>Suite 411</td><td>101 California Street, 5th Floor</td></tr>
<tr><td>Chicago, IL 60603</td><td>San Francisco, CA 94111</td></tr>
<tr><td>Telephone (312) 782-0690</td><td>Telephone: (415) 693-2000</td></tr>
</table>