IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals, )<br><br>Plaintiffs, )<br><br>v. )<br><br>COMSCORE, INC., a Delaware corporation, )<br><br>Defendant. )<br>_____) | Case No. 1:11-5807<br><br>Hon. James F. Holderman |

**PLAINTIFF JEFF DUNSTAN'S MOTION TO
VOLUNTARILY DISMISS COUNT IV OF THE COMPLAINT**

Plaintiff Jeff Dunstan ("Dunstan"), pursuant to the Court's general discretion to grant a motion for voluntary dismissal of a claim and Magistrate Judge Kim's recent order (Dkt. No. 121), respectfully moves the Court for an order granting him leave to voluntarily withdraw and dismiss Count IV of his class action complaint (the "Complaint") brought under the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFA"), 815 ILCS 505/1 *et seq.*, on behalf of a putative subclass of individuals (the "Dunstan Subclass"). In support of this Motion, Dunstan states as follows:

**I.      INTRODUCTION**

As the Court is aware, this lawsuit challenges Defendant comScore Inc.'s ("comScore") unauthorized collection and dissemination of Plaintiffs' personal information through its use of spyware. Plaintiff Dunstan—who was forced to spend forty dollars ($40) on anti-virus software to remove comScore's software from his computer (Compl. ¶¶ 74, 114–119)—seeks to narrow the issues in dispute and drop Count IV of the Complaint, which prays for relief under the ICFA on behalf of a subclass of consumers who "incurred costs in removing the Surveillance

Software." Unfortunately, rather than dealing with the dismissal of Count IV efficiently—i.e., by stipulation—comScore sees it as an opportunity to force Plaintiffs to file an amended complaint, so that it may file a <u>third</u> Rule 12 motion to dismiss. As such, and despite Plaintiff's several attempts, comScore will not stipulate to the dismissal of Count IV, and instead insists that Plaintiffs formally file an amended complaint dropping the claim.

comScore's tactic will only slow down the litigation and is improper in light of the reasons that Dunstan is dropping Count IV. First, voluntary dismissal of the ICFA subclass will streamline and focus Plaintiffs' upcoming motion for class certification. Put simply, while Dunstan doubtlessly has an individual claim against comScore regarding monetary damages he suffered as a result of the Surveillance Software (and a claim on behalf of a subclass that may have suffered similar money damages), the ICFA claim—which is reliant on allegations of out-of-pocket monetary damages—presents certain ascertainability issues that are not present amongst the other claims. Second, and specific to his *individual* claim against comScore under the ICFA, voluntary dismissal of the claim will put an end to comScore's insistence on receiving Dunstan's unredacted anti-virus logs—a tactic only designed to embarrass and harass him. Because the anti-virus logs are only relevant to Dunstan's ICFA claim (i.e., relating to money Dunstan spent on computer repair), dismissal of his claim negates comScore's supposed need for them.

Ultimately, because these out-of-pocket claims under the ICFA are not central to the rest of the Complaint (and, really, go to the merits issue of damages), Dunstan now moves the Court to voluntarily dismiss that claim and drop the associated subclass. comScore's demand for a formal amendment is a calculated move designed to set up a third Motion to Dismiss (on issues that have already been twice decided, no less). As this case nears the close of class discovery and

the Parties are on the eve of class certification, motion practice of that sort would be a total waste of time and resources. Accordingly, the Court should have little issue allowing for the narrowing of issues and dismissal of Dunstan's ICFA claim as alleged in Count IV.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As stated above, Dunstan represents a subclass of individuals that "incurred costs in removing [comScore's] Surveillance Software" and alleges that he was forced to pay forty dollars ($40) for anti-virus software to remove that software from his computer. (*Id.* at ¶¶ 74, 114–119.) As a part of his discovery production, Dunstan provided comScore with the logs from the anti-virus program he purchased, which show that comScore's software was detected, marked as a threat, and removed from his computer. (Declaration of Rafey Balabanian at ¶ 2 ("Balabanian Decl."), a true and accurate copy of which is attached hereto as Exhibit A.) Before producing those logs, however, Dunstan's counsel redacted certain information detailing Dunstan's private and sensitive Internet usage data—coincidentally, the same information comScore's software would regularly collect from Dunstan without his knowledge or permission before it was removed from his computer—before producing the logs to comScore. (*Id.* at ¶ 3.)

The Parties thereafter exchanged correspondence relating to the redacted portions of the anti-virus logs. As summarized in its letter dated May 31, 2012, comScore insisted that it be provided complete and unredacted copies of the logs, insofar as they were relevant to certification of the Dunstan Subclass—i.e., those "individuals and entities . . . that have incurred costs in removing [comScore's] Surveillance Software." (Balabanian Decl. at ¶ 4.) In response, Dunstan's counsel explained that the produced and redacted virus logs sufficiently responded to comScore's discovery requests since they supported the allegations that he purchased software that helped him detect and get rid of comScore's software. (*Id.* at ¶ 5.) Beyond that, though,

3

comScore's requests for the anti-virus logs only concerned the nature of Dunstan's damages and, as such, were not relevant during the class certification stage of discovery.[1] (*Id.*) Moreover, Dunstan's counsel indicated that the redacted portions of the anti-virus logs contained information relating to Dunstan's "private and sensitive Internet usage data" and, to balance his privacy interests against comScore's over-reaching requests, they would not be turned over. (*Id.* at ¶ 5.)

At the same time, Plaintiffs' counsel also evaluated the relative strength of the Dunstan Subclass's claims under the ICFA, particularly relating to the upcoming motion and briefing for class certification. (*Id.* at ¶ 6.) After further scrutiny, Plaintiffs' counsel determined that the ICFA claim—unlike the claims brought on behalf of the putative Class—presented unique challenges to Rule 23's ascertainably requirement insofar as it may be difficult to identify those individuals who, like Dunstan, suffered money damages trying to repair their computers. (*Id.*) Thus, in order to strengthen the Class's overall legal theory, and because the facts underlying the ICFA claim are not central to Plaintiffs' other claims, Dunstan decided not to proceed with certification of the Subclass or pursue the Subclass's claim under the ICFA. (*Id.*) As such, Dunstan considered comScore's requests for the unredacted anti-virus logs moot. (*Id.* at ¶ 7.)

Subsequently, during a motion hearing held on July 26, 2012, Dunstan's counsel informed the Court of this issue and specifically indicated Plaintiffs' intention of amending the complaint to: (1) drop Count IV and (2) add a new count for trespass to chattels relating to the operation of comScore's software. (*Id.* at ¶ 8.) But Plaintiffs eventually decided against adding the proposed trespass to chattels claim and, accordingly, informed comScore that amending the

---

[1] Magistrate Judge Kim granted comScore's motion to bifurcate discovery between class and merits issues on March 2, 2012. (Dkt. No. 87.) Pursuant to this Court's order, the class discovery period is set to close on November 30, 2012. (Dkt. No. 118.)

4

pleadings was not necessary. (*Id.* at ¶ 10.) Rather, since the claims were being narrowed and factual allegations remained unchanged, Plaintiffs' counsel invited comScore to join a stipulation permitting Plaintiffs to voluntarily withdraw the ICFA claim. (*Id.*)

Rather than respond to Plaintiffs' stipulation offer, comScore raised the issue directly to Magistrate Judge Kim at the August 13, 2012 status hearing. (*See* August 13, 2012 Transcript before Magistrate Judge Kim at 19:17–20:12, a true and accurate copy of which is attached hereto as Exhibit B.) comScore requested that Judge Kim set a deadline for Plaintiffs to amend their complaint to (1) add the proposed trespass to chattels claim (even though Plaintiffs had already informed comScore that they had decided against adding such a claim), and (2) drop the ICFA claim brought on behalf of the Dunstan Subclass. (*Id.*) In response, Plaintiff's counsel explained that amended pleadings were not necessary and that, as a general matter, Plaintiffs could not be forced to file one.

Moreover, Plaintiffs repeated their offer to—by stipulation—voluntarily dismiss the single count brought on behalf of the Dunstan Subclass. (*Id.* at 20:15–21:14.) Although comScore's counsel nevertheless insisted that Plaintiffs be forced to amend (*id.* at 21:16–22, 22:22.), Judge Kim even explained that "it's really up to the plaintiff, Mr. Dunstan, what he wants to do. Either he can amend the complaint or he can dismiss portions of his complaint [by stipulation or with leave of the Court]; and depending on the scope of that dismissal, it would be up to defendant to then decide [whether to] move forward with [its] motion to compel [the anti-virus logs]." (*Id.* 22:23–23:6.) Accordingly, Judge Kim ordered Plaintiffs to draft and provide a stipulation to dismiss to comScore by August 14, 2012.[2] (*Id.* at 23:14–24:1.)

---

2      As ordered, on August 14, 2012, Plaintiffs circulated a draft stipulation to voluntarily dismiss Count IV of the Complaint and agree to not pursue relief on behalf of the Dunstan Subclass. (Balabanian Decl. at ¶ 12.) comScore responded to that draft on August 21, 2012. (*Id.*)

5

On August 23, 2012, the Parties again appeared before Judge Kim and comScore again insisted that Plaintiffs file an amended complaint. (*See* August 23, 2012 Transcript before Judge Kim, a true and accurate copy of which is attached here to as Exhibit C.) In support of its renewed (but previously rejected) request, comScore cited the purported confusion attendant to a stipulated voluntary dismissal—namely, the need to (1) change the word "Classes" to "Class" throughout the complaint, (2) eliminate one sentence defining the Dunstan subclass, and (3) voluntarily dismiss Count IV.[3] (*Id.* at 3:7–21.) More telling of its motives, though, comScore revealed, for the first time, the real strategic purpose underlying its position—its desire to file a third Rule 12(b)(6) motion.[4] (*Id.* at 3:23–4:2.) In response, Judge Kim simply explained that if comScore would not agree to the proposed stipulated dismissal of Count IV, "then the next step is for Mr. [Dunstan] to go ahead and file a motion for . . . leave of Court to dismiss his claim regarding having to expend certain dollars to have something removed from his computer." (*Id.* at 5:1–9.) As such, Judge Kim ordered Plaintiffs to file the instant motion by September 7, 2012. (Dkt. No. 121.)

The following day, comScore confirmed that it would not join any stipulation and, instead, "would like the opportunity to answer or otherwise respond to an amended complaint with the remaining counts absent the factual allegations relating to damages." (Balabanian Decl. at ¶ 13.) Short of that, comScore insisted on receiving the unredacted portions of Dunstan's anti-virus logs, even though the information sought has no relevance to the dispute and is far outside the scope of class discovery. As a result, this Motion followed.

---

[3] comScore additionally suggested that general factual allegations specific to Dunstan—none of which appear within Count IV—would have to be removed from the complaint. (Ex. C at 3:13–15.)

[4] comScore additionally (and correctly) surmised that if the Parties proceeded by way of stipulation—i.e., simply agreed to permit Plaintiffs to withdraw Count IV and the Dunstan Subclass—then Plaintiffs would contest any attempt by comScore to file yet another motion to dismiss. (*Id.* at 4:3–12.)

**III.     ARGUMENT**

Dunstan's request to voluntarily withdraw and dismiss his claim under the ICFA is straightforward, causes no prejudice to comScore, and should be granted. Courts in the Seventh Circuit have the discretion to allow for voluntary dismissal of individual claims and have previously granted a plaintiff's motion to voluntarily withdraw a count of a complaint without prejudice. *See*, *e.g.*, *Tibor Mach. Products, Inc. v. Freudenberg-NOK Gen. P'ship*, 967 F. Supp. 1006, 1022 (N.D. Ill. 1997). Here, voluntary dismissal of Dunstan's claim under the ICFA (i.e., Count IV of the Complaint), would (1) narrow the issues before the Court and focus the Parties' anticipated class certification briefing, (2) eliminate any need for comScore to insist upon receiving unredacted copies of the anti-virus logs that initially prompted these discussions, and (3) would require only minor alterations to the pleadings. Importantly, this is not a case where a partial voluntary dismissal of a claim might result in prejudice to the defendant—such as where, for example, a dismissal would divest a court of its jurisdiction over a case. *See*, *e.g.*, *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir 1988). Rather, voluntary dismissal of Count IV—again, the only count brought on behalf of the Dunstan subclass—would not affect this Court's power over this case, change any factual allegations in the complaint, or require additional discovery.[5]

To be clear, Plaintiffs have *no* interest in amending their complaint under Rule 15 if doing so (1) will not resolve the above-described discovery dispute relating to Dunstan's anti-virus logs, and (2) will result in comScore re-asserting twice failed Rule 12 arguments. In that light, it should be noted that some courts construe motions to voluntarily dismiss individual

---

[5]     Initially, comScore insisted on knowing whether Dunstan would or would not prosecute Count IV to determine whether it would (or, presumably, would not) ask him about the anti-virus program he purchased during his deposition on August 8, 2012. (Balabanian Decl. at ¶ 9.) Even without a definite answer, however, comScore proceeded to ask Dunstan numerous questions about his purchase and use of the anti-virus software. (*Id.* at ¶ 11.)

claims—sometimes brought under Rule 41—as motions to amend under Rule 15. *See*, *e.g.*, *Loutfy v. R.R. Donnelley & Sons, Co.*, 148 F.R.D. 599, 602 (N.D. Ill. 1993). From that perspective, a prospective amendment in this case would only: (1) change the word "classes" to "class" throughout the complaint, (2) eliminate the sentence defining the Dunstan subclass, and (3) eliminate Count IV, Dunstan's ICFA claim, which is the only claim reliant on his allegations that comScore's software caused him to suffer out-of-pocket monetary damages in the form of computer repairs. Such changes—whether effected through a voluntary dismissal, as Dunstan prefers, or a Rule 15 amendment, which comScore demands—would provide no basis from which comScore could compel production of Dunstan's unredacted anti-virus logs (which bear no relation to class certification issues) or assert/re-assert Rule 12 arguments (which would require either new legal theories and/or altered factual allegations).

The reality is that this entire exercise has been about comScore's desire to obtain (what they hope is) potentially incriminating/embarrassing evidence from Dunstan, by accessing his unredacted anti-virus logs, or better yet, getting a third shot at dismissing the Complaint. comScore's recent indication that it would not stipulate to voluntary dismissal of Dunstan's ICFA claim—even *before* entertaining any revisions to its own proposed draft stipulation, as ordered by Judge Kim—underscores that strategy. (*See* Balabanian Decl. at ¶ 13.) Ultimately, continued focus on compelling Dunstan to produce his unredacted anti-virus logs and amending the Complaint under Rule 15 just to set up another round of Rule 12 motions is and would be a complete waste of the Parties' and the Court's time and resources. The Court should put a stop to it by allowing Dunstan to dismiss his ICFA claim without prejudice and drop the Dunstan Subclass.

## IV. CONCLUSION

Permitting Dunstan to voluntarily dismiss Count IV of the Complaint will both narrow the issues before this Court without adding or subtracting any factual allegations, and address (and hopefully resolve) an on-going discovery dispute between the Parties. As such, this Court should grant Dunstan's Motion.

WHEREFORE, Plaintiff Dunstan respectfully requests that this Court enter an order dismissing Count IV of the Complaint without prejudice, and deeming the putative Subclass dismissed from the Complaint as well.

Dated: September 7, 2012                    Respectfully submitted,

By: /s/ Rafey S. Balabanian
Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
Benjamin S. Thomassen
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
cgivens@edelson.com
bthomassen@edelson.com

## **CERTIFICATE OF SERVICE**

      I, Benjamin S. Thomassen, an attorney, hereby certify that on September 7, 2012, I served the above and foregoing ***Plaintiff Jeff Dunstan's Motion to Voluntarily Dismiss Count IV of the Complaint*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 7th day of September, 2012.

                                          /s/ Benjamin S. Thomassen
                                          Benjamin S. Thomassen