# EXHIBIT 9
# [FILED PARTIALLY UNDER SEAL]

**Edelson LLC**

350 North LaSalle, Suite 1300, Chicago, IL 60654
t 312.589.6370  f 312.589.6378

www.edelson.com

September 18, 2013

**VIA ELECTRONIC MAIL**

Andrew H. Schapiro
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661
andrewschapiro@quinnemanuel.com

Re: *Dunstan, et al. v. comScore, Inc.*, No. 1:11-cv-05807 (N.D. Ill.)

Dear Andy:

I write to address certain concerns we have with comScore's responses to Plaintiffs' discovery requests, which were served on August 30, 2013. As outlined below, we'd like to schedule a meet-and-confer to discuss these issues.

**comScore's Responses to Plaintiff Dunstan's First Set of Requests for Production**

To start, comScore incorporates a set of "General Objections" into *each* of its responses to Dunstan's Document Requests, which is unhelpful at best, and improper at worst. *See Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) ("the uninformative litany that the requests [are] overbroad, [and that] production of documents is unduly burdensome…[or that] that the evidence is 'neither relevant nor reasonably calculated to lead to the discovery of admissible evidence,' is an insufficient basis to refuse to comply with discovery. They are tantamount to not making any objection at all."); *see also In re Aircash Disaster*, 172 F.R.D. 295 (N.D. Ill. 1997) (discussing the impropriety of non-specific, boilerplate objections). These stock objections are incorporated by reference into each of comScore's responses, and are also repeated throughout the responses without any indication of their bases.[1] As we've explained before, general objections are improper and here, they have made it impossible to discern what comScore is objecting to.

We therefore ask that comScore withdraw its "General Objections" and, to the extent it believes that some or all of Plaintiff's Requests are objectionable, assert them in its individual responses to the Requests. To the extent comScore refuses to do so, please be prepared to explain the bases for asserting these objections as they relate to each and every one of Plaintiff's Requests during our meet and confer. The following sets forth in detail the issues we have with comScore's responses to Plaintiff's Requests.

---

[1] For example, comScore states that nearly every Request is "vague and ambiguous; overly broad in that it seeks information unrelated to Plaintiffs' claims, unduly burdensome, harassing and oppressive; seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence; and seeks information already produced by comScore."

Illinois / California / Colorado

**Edelson LLC** *Dunstan, et al. v. comScore, Inc.*
September 18, 2013
Page 2 of 9

### Document Request Nos. 2, 47, and 80

Document Request Nos. 2, 47, and 80 seek information relating to comScore's decision to collect the Personal Information of its Panelists, as well as the design, development, and operation of the software that comScore used to gather this information. In response, comScore states that the Requests are "not relevant," and that the terms "decision" and "begin" are vague and ambiguous. These objections are not well-taken. The definitions section of Plaintiff's Requests direct comScore to construe terms like "decision" and "begin" in accordance with their plain and ordinary meaning. Thus, we see no ambiguity in these terms. As to comScore's relevance objection, Request No. 2 is confined to information related to the development and operation of the software that is at the heart of this case, and Request Nos. 47 and 80 enumerate specific categories of data that Plaintiffs allege were collected from Panelists without their informed consent. The allegations in the operative complaint are inseparable from the information sought in these Requests, as this case turns, in part, on whether or not comScore intentionally designed and developed OSSProxy to collect precisely this type of data from Panelists.

comScore also objects to each of these Requests as overly burdensome, but this is not a valid objection either. We seriously doubt that the production of such information would pose a significant burden to comScore. Assuming that a large data analytics company such as comScore does not make such decisions on an *ad hoc* basis, we believe that there are records of these business decisions. The design and implementation of these aspects of OSSProxy should be well documented in comScore's internal memoranda and project-management materials, and no amount of burden would outweigh their probative value.

comScore also objects to Request Nos. 47 and 80 on the grounds that "comScore has not and does not collect [such information] from its Panelists," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is also non-responsive. In requesting this information, Plaintiff seeks an understanding of comScore's collection methods—not a general denial that such collection occurs.

Notwithstanding the objections, comScore claims that it has already produced all responsive, non-privileged documents. However, based on our understanding of how comScore's software is developed and distributed, we believe that there are responsive documents in comScore's control that have yet to be produced. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In Request Nos. 47 and 80, Plaintiff simply seeks information about comScore's decision to develop this capability, as well as the capability to obtain the other categories of information that are the subject of these Requests.

### Document Request Nos. 19-22

These Requests seek information about the process by which comScore distributes its software through third parties and how Bundling Partners learn of and join comScore's bundling program. ▇▇▇▇▇▇▇▇

**Illinois / California / Colorado**

**Edelson LLC** *Dunstan, et al. v. comScore, Inc.*
September 18, 2013
Page 3 of 9

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ comScore responds to these Requests by objecting to the words "recruit," "promotion," and "advertising" on grounds of vagueness and ambiguity. These objections are baseless and do not absolve comScore of its duty to produce responsive documents. Neither does comScore's objection that such information is irrelevant, since the relationship between comScore and its Bundling Partners undeniably relates to the manner in which the software was installed onto Panelists' computers. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Unless comScore keeps no record of these communications with its Bundling Partners, or never reduced them to writing—which strikes Plaintiffs as incredibly hard to believe—then responsive documents should exist and must be produced.

### *Document Request Nos. 11–12, 15, 17, 30–31, 33, 35–37, 41, and 85*

These Document Requests seek information related to comScore's process of purging, fuzzifying, and collecting the Class's and Subclass's Personal Information. For example, Request Nos. 15 and 30 seek documents that relate to "the manner in which [comScore] designed [its] Panelist Software" to "Collect Personal Information," and to "Filter Personal Information," respectively. In response, comScore objects that the requests are overly broad and irrelevant because they "seek[] documents related to the development of the comScore software." We fail to understand how comScore can assert in good faith that the "development of comScore's software" is irrelevant. OSSProxy's ability to collect the Personal Information of panelists is precisely what is at issue in this case, and it is more than reasonable to assume that documents related to the development of the software will apprise Plaintiffs of the way the software collects or avoids this information. Nor do we understand how these Requests could be construed as overbroad. They seek documents related specifically to the collection and filtering of Personal Information, which is at the heart of the issues in this case.

Further, comScore objects that Request Nos. 15 and 30 are "vague and ambiguous," without specifying the word(s) that are unclear, and despite the fact that every word except "manner" and "designed" is defined by Plaintiff Dunstan in his First Set of Document Requests. For those not defined, we ask, again in line with the instructions provided in the Requests, that comScore interpret these words in accordance with their plain and ordinary meaning.

comScore nevertheless maintains that it has already produced all documents responsive to these Requests. Based on what we have learned through class discovery, we strongly doubt that all responsive documents have been produced. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Such information would also be responsive to Request No. 37 (among others), which seeks documentation relating to "current and past protocols, processes, and/or procedures for identifying, processing, and/or documenting occurrences where [comScore] Collected Personal Information…that was not Filtered." ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**Edelson LLC**                                                                 *Dunstan, et al. v. comScore, Inc.*
                                                                                       September 18, 2013
                                                                                            Page 4 of 9

### *Document Request Nos. 28 and 29*

Document Request Nos. 28 and 29 ask comScore to produce information that identifies individuals who had Panelist Software running on their computers. comScore responds that the Requests are "unclear," and that it "therefore…will not produce documents responsive to this request." Such a generalized response, without any indication as to how the Request is unclear, is improper. Though we don't believe the Requests need clarification, to move the process along, we are seeking records of, and communications regarding, all current and former Panelists' identities, along with their contact information. At present we are limited by our understanding of comScore's database schema, but would like to discuss this Request further during the meet and confer.

### *Document Request No. 43*

Document Request No. 43 seeks communications relating to the "Terms of Service, User License Agreements, or other agreements" that comScore believes govern its relationship with the Panelists. In response, comScore objects that the Request is "vague and ambiguous" with respect to the term "other agreements," and "overly broad in that it purports to include communications regarding agreements or portions of agreements not relevant to Plaintiffs' claims." We fail to understand how comScore can assert that communications relating to the Terms of Service or User License Agreements, which are also central to the claims, are irrelevant. The scope of Panelists' supposed consent is still at issue in this case (*see* Dkt. 186 at 11), and communications regarding such agreements, how they were drafted, the word choice, and the categories of information they were intended to cover, are directly relevant to the issue of consent and therefore discoverable. Nor do we understand comScore's objection that the Request is "overbroad," since it asks only for those agreements that "[comScore] contend[s] govern[] the relationship between [comScore] and Panelists," which relate specifically to comScore's defenses.

comScore also objects to this Request on the grounds that "it seeks privileged information." comScore, however, cannot claim that this information is privileged simply to avoid its discovery obligations. If any of these communications are privileged, comScore must provide, per Judge Kim's Case Management Procedures, a privilege log enumerating them as such, rather than simply claiming the privilege without any further information.[2]

### *Document Request Nos. 74–77*

Document Request Nos. 74–77 seek documentation of complaints that comScore received about its software. comScore responds with its standard objection language, but adds that the word

---

[2] Again, this is true of the vast majority of comScore's responses, which contain generalized objections claiming privilege.

**Illinois / California / Colorado**

"complaints" is vague and ambiguous. This is an untenable position in our view, considering that comScore provides a "Complaint Procedure" on its "Code of Business Conduct and Ethics" webpage. A simple search of *these* "complaints" would likely produce documents that are responsive to Document Requests Nos. 74–77. To the extent comScore is withholding relevant information on the basis of technical objections, or because of some perceived ambiguity in ordinary words like "complaint," we ask that it proceed in good faith and produce responsive documentation.

comScore also objects on the grounds that documents related to complaints about the Panelist Software are irrelevant to Plaintiffs' claims. We disagree. As you know, Plaintiffs allege that comScore "intentionally intercepted and endeavored to intercept Plaintiffs' and [the] Class Members' electronic communications." (Dkt. 169 at ¶ 95.) Whether or not comScore intentionally designed its software to intercept and collect the Personal Information of Panelists, or whether it was aware of such interception and collection, will likely be evinced through these complaints and comScore's responses to them.

Finally, we remind you that the Court's Bifurcation Order stayed requests substantially similar to these "pending resolution of the class certification issues." (*See* Dkt. No. 88 at 12.) Those class certification issues have been resolved, and we believe that comScore is obligated to produce responsive information given the stage of the litigation.[3]

### Document Request Nos. 64–68

comScore also refuses to produce any documents or correspondence sought in Request Nos. 64–68 which seek information relating to comScore's arrangement with Trees for the Future, NPO. Instead, comScore again provides a jumble of generic, unqualified objections to Dunstan's requests, stating that the terms "understanding," "as a result of," and "on behalf of" are vague, and that the requests are overbroad and oppressive. For the same reasons explained in our discussion of comScore's vagueness objections above, there is no merit to these objections. We fail to see how these responses are overbroad or harassing, as they seek specific information about comScore's relationship with Trees for the Future—a company that is directly involved with the distribution of the Panelist Software. ████████████████████████████████████████████████████████████ The nature of comScore's relationship with Trees for the Future—assuming one exists—is also relevant for the damages calculation in this case. If comScore's relationship with Trees for the Future was not as purported, and thus comScore's actions in this regard were willful or knowing, Plaintiffs may be entitled to additional damages.[4] Moreover—and as explained in our discussion of Request

---

[3] Similarly, comScore has failed to identify any complaints it received regarding the Panelist Software as requested by Dunstan's Interrogatory No. 13. For the same reasons, we believe that comScore is obligated to answer this Interrogatory as well.

[4] The same holds true for comScore's response to Interrogatory No. 5 of Harris's Second Set of Interrogatories, which seeks similar information about comScore's relationship with Trees for the Future.

Nos. 19–22 above—comScore's method of promoting and advertising its software through third parties is undoubtedly relevant and should be produced.

### *Document Request Nos. 69–73*

Through Documents Request Nos. 69–73, Dunstan seeks the production of any documents related to any contracts and communications between comScore and its *amici curiae*, or any documents relating to the amicus brief filed in support of comScore's appeal of the class certification order. comScore objects on vagueness grounds and also because the Request is supposedly not "related to Plaintiffs' remaining claims." The vagueness objection is improper without an indication of how the Request is vague, and we disagree that this information is not relevant to Plaintiffs' remaining claims, considering that the *amici curiae* seem to have specialized knowledge about comScore's "cookie" technology that Plaintiffs don't. (*See* Appellate Dkt. No. 4 at 2) (representing to the Seventh Circuit that this case "implicate[s] a foundational Internet communication and commerce technology, (the so-called 'cookie')".) Our understanding of OSSProxy's functionality is that it tracks Panelists' behavior *without* the use of any cookies generated by comScore. These Requests seek to resolve this incongruity by discovering the bases of the *amici curiae's* claims.

### *Document Request Nos. 81–82*

Taking up these Requests in reverse, No. 82 seeks communications between "any of [comScore's] officers, directors, or Employees on the one hand, and representatives of the following companies on the other hand: TMRG, Inc.; VoiceFive, Inc.; CreativeKnowledge, Inc; Nedstat, Inc; and Knowledge Networks, Inc." In response, comScore repeats its generalized objections to this Request, this time adding that it is vague and ambiguous with respect to the terms "on the one hand" and "on the other hand," that it is overly broad, and that it is not relevant to Plaintiffs' remaining claims.

Ignoring the fact that a plain reading of this Request specifies what is being sought—communications between comScore and its subsidiaries—this Request is directly relevant and narrowly tailored to the issue of Panelists' supposed consent. When OSSProxy is installed onto Panelists' computers, the displayed Privacy Statement and User License Agreements only refer to these five companies and state that no third parties (presumably comScore included) have any rights under those terms. However, while it's Plaintiffs' position that comScore is not a party to any supposed contract with Panelists, we also believe these subsidiaries are nothing but shell companies for comScore. Thus, assuming *arguendo* that Panelists consented to the collection of their Personal Information at the hands of any of these companies, comScore's relationship with these entities is relevant to the scope of such consent.

comScore also objects on grounds of overbreadth, which is similarly unavailing. The Request seeks communications only from the five companies that appear on the Privacy Statement and User License Agreements displayed to the Panelists. comScore also contends that the Request is "oppressive in that it seeks documents related to companies that do not collect information from Panelists." Since the Privacy Statements and User License Agreements indicate that these companies do, in fact, collect Panelists' information, the objection seems utterly meritless.

Documents that are responsive to Request No. 81 should be produced for the same reasons. Request No. 81 seeks all documents and ESI that relate to the five companies named above. Because the scope of Panelists' supposed consent is dictated by the Privacy Statement and User License Agreements that involve these companies—and that conspicuously exclude comScore itself—the requested information related to these companies should be produced.

### *Document Request No. 86*

Document Request No. 86 seeks production of "any and all correspondence[,] uncompiled source code, and object code" that was used to locate, produce, or generate responsive documents to Plaintiffs' Discovery Requests. comScore objects on the grounds that the Request is overly broad and unduly burdensome, in addition to a litany of other non-specific objections. comScore further asserts, however, that Request No. 86 seeks information "not in the custody or control of comScore."

Document Request No. 86 simply seeks to determine what search terms, queries, or other source code was used to respond to these Requests. Because comScore responded to Plaintiffs' Discovery Requests, the search terms, queries, or other source code should therefore be in comScore's custody or control. That such information may be in the "care, custody, or control of" a third-party hired to answer these Requests does nothing to alleviate comScore's burden to preserve and produce such information. *See*, *e.g.*, *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) ("it is well-settled that a party need not have actual possession of the documents to be deemed in control of them;" rather, the "test is whether the party has a legal right to obtain them"; "practical" control is "sufficient to order production of corporate documents").

### *Document Request No. 88*

Document Request No. 88 asks for "[a]ny and all policies of liability insurance under which You were named or covered during the Relevant Time Period." comScore has yet to produce this information, despite its obligation to do so in its initial disclosures. (*See* Dkt. 88 at 15–16) ("comScore should have produced a copy of the relevant policies on December 7, 2011, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv).") Instead, comScore again refuses to comply with its discovery obligations, this time objecting on the grounds that the words "named" or "covered" are ambiguous and vague. However, the Request plainly seeks disclosure of any insurance policies that cover (arguably or otherwise) the claims alleged in this case. The plain meaning of this Request should be evident.

Further, comScore's assertion that such policies are "not relevant" is similarly misguided, as the Court has already stated that this information should have been produced to Plaintiffs. (Dkt. 88 at 15–16.) We therefore request that comScore either produce this information or explain the basis for its inability or unwillingness to do so.

In light of the above, we ask that comScore specify the particular bases for its objections, conduct another search of its records and databases for responsive documents, and be prepared to discuss these issues during a meet-and-confer to take place no later than September 30th.

**Edelson LLC**  *Dunstan, et al. v. comScore, Inc.*
September 18, 2013
Page 8 of 9

**comScore's Responses to Plaintiffs' Interrogatories**

  comScore's "General Objection" to Plaintiffs' Interrogatories are similarly improper and unhelpful. As with comScore's objections to the Document Requests, it is difficult for us to discern what comScore takes issue with, since it has not specified the particular bases for most of its objections. As with its responses to the Document Requests, we ask that comScore withdraw its "General Objections" and, to the extent it believes that some or all of Plaintiffs' Interrogatories are objectionable, assert them in its individual responses to the Interrogatories. To the extent comScore refuses to do so, please be prepared to explain the bases for asserting these objections as they relate to each and every one of Plaintiffs' Interrogatories during our meet and confer.

*Dunstan's Interrogatory Nos. 10–12*

  These Interrogatories ask comScore to identify any top-line revenue generated and "any and all monies or other benefits [comScore] received from sharing, selling, transmitting, and/or disclosing the Class's and Subclass's Personal Information," to which comScore responded "[n]one." It seems unreasonable to us that comScore receives no money or derives no benefit from this data, and we see no other reason why it would be collected.[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, comScore states on its website that "comScore's services are used by more than 750 clients," including AOL, Yahoo, BBC, and others. Thus, we'd like to discuss comScore's basis for stating that it generates no benefit from the disclosure of Personal Information to third parties.

  Similarly, comScore responds to Dunstan's Interrogatory No. 12—which asks comScore for its "total net worth"—with the generalized objection that the Interrogatory is "vague and ambiguous, overly broad, [and] unduly burdensome." Because comScore provides no basis for asserting these objections, it is hard to see how they could be well-founded. However, to the extent that there is genuine confusion about the meaning of this Interrogatory, we would be happy to clear it up at the meet-and-confer.

*Harris's Second Set of Interrogatory Nos. 2–4*

  We find numerous examples of comScore's responses to Harris's Interrogatories similarly lacking. For example, we are skeptical of comScore's objection to Interrogatory No. 2, which seeks the identity and details about comScore's Bundling Partners. Though comScore objects on the basis that providing such information would be, among other things, "unduly burdensome," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As such, we don't think it unreasonable (and certainly not unduly burdensome) for comScore to identify and describe its

---

[5]   For the same reason, Plaintiffs ask that comScore look again for the documents requested in Dunstan's Document Request Nos. 56–63, which seek documents related to the monies or benefits comScore received from selling, sharing, transmitting, or disclosing the Class's and Subclass's Personal Information.

**Illinois / California / Colorado**

**Edelson LLC**  *Dunstan, et al. v. comScore, Inc.*
September 18, 2013
Page 9 of 9

relationship with these Bundling Partners to Plaintiffs. comScore has acknowledged that it "compensates its third-party partners that offer the comScore software during the installation process..." (Dkt. 180 at ¶ 12.)

In response to Interrogatory No. 4, comScore states that it "has or will produce" documents that are responsive "pursuant to Federal Rule of Civil Procedure 33(d)." However, Rule 33 requires that comScore "provide sufficient detail to permit [Plaintiffs] to identify the records from which the answer may be ascertained," which—assuming comScore did already produce responsive documents—it has failed to do. *See Wilson v. Sundstrand Corp.*, 99 C 6944, 2003 WL 21961359, at *4 (N.D. Ill. Aug. 18, 2003). Please indicate which previously produced documents are responsive to this Interrogatory.

\*    \*    \*

Our evaluation of comScore's discovery responses continues, and we may raise additional concerns under separate cover in the future.

At your earliest convenience, please let us know when you are available next week to meet and confer on these issues and we'll set up a conference call. We look forward to hearing from you.

Best regards,

EDELSON LLC

Rafey S. Balabanian

cc:   Mr. Jay Edelson
      Mr. Ari J. Scharg
      Mr. Chandler R. Givens
      Mr. Benjamin S. Thomassen
      Mr. Stephen S. Swedlow
      Ms. Robyn M. Bowland
      Mr. Paul F. Stack