**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals, | Case No. 1:11-cv-5807 |
| Plaintiffs, | Hon. James F. Holderman |
| v. | Magistrate Judge Young B. Kim |
| COMSCORE, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT COMSCORE, INC.'S MOTION TO COMPEL**

In its latest Motion to Compel (Dkt. 226 (the "Motion")), Defendant comScore, Inc. ("Defendant" or "comScore") seeks an order requiring Plaintiffs Jeff Dunstan ("Dunstan") and Mike Harris ("Harris") (collectively, "Plaintiffs") to produce Dunstan's actual computer for inspection and directing both Plaintiffs to supplement their answers to certain contention interrogatories. For the reasons discussed below, comScore's requests should be denied.

First, comScore asks for, but is not entitled to, cart blanche access of Dunstan's personal computer. This is the second time that comScore has sought to compel production of Dunstan's computer, but it offers no new reasons as to why it's necessary to produce it "for inspection" now as opposed to following the standard practices endorsed by Federal Courts throughout the country (i.e., by requesting that relevant, non-privileged information be extracted from Dunstan's computer and then be produced—rather than simply asking, without explaining why, that the computer be "produced for inspection"). And as before, Plaintiffs are perfectly willing to give comScore copies of whatever relevant information from Dunstan's computer that it needs, but

they are not willing (nor are they required) to simply give comScore unrestricted access to the entirety of Dunstan's personal computer.

Second, comScore prematurely seeks answers to four contention interrogatories, even though those interrogatories concern the merits of this case and were propounded before Plaintiffs had an opportunity to conduct any merits-based discovery at all. In short, there's no reason to artificially narrow issues now by forcing Plaintiffs to provide what will certainly be incomplete answers to comScore's interrogatories—a point that comScore tacitly concedes by suggesting that it is entitled to "the best answer that Plaintiffs can provide at this time." (Def. Mot. at 6.) What's more, that entitlement runs contrary to the practice of Federal Courts and ignores that it was *comScore* that effectively delayed merits discovery (and, by extension, answers to merits-based contention interrogatories) by moving to bifurcate class and merits discovery in this matter.

In sum, neither of comScore's requests to compel should be granted.

## ARGUMENT

**I.   comScore Is Not Entitled to Unrestricted Access to Dunstan's Computer, But Can Seek Production of Certain Information Stored on It.**

This is the second time that comScore asks that Dunstan's personal computer (or a copy of it)[1] be turned over so that comScore can "inspect" it. Once again, comScore's request does not specify *why* it needs the computer—only that it should be produced. And as before, comScore is not entitled to full access to (or a full copy of) Dunstan's personal computer to comb through until it is satisfied. Rather, comScore can make specific requests that certain responsive, non-

---

[1]   Specifically, comScore asked Plaintiffs to "Produce for Inspection the Personal Computer or Computers You contend was affected by comScore Software, the Inspection including making the Personal Computer or Computers' hard drive available for the making of a forensic copy." (Dkt. 226-1 at 4.)

2

privileged information be produced from the computer. As such, while comScore's request that Plaintiffs produce Dunstan's computer for inspection is not appropriate, Plaintiffs are willing to work with comScore to retrieve non-privileged documents from it that respond to requests for specified information.

The overriding problem with comScore's request is that it runs contrary to the Federal Rules of Civil Procedure and the routine practice of Federal Courts. The Advisory Committee Notes to Rule 34(a) are explicit about this point—*i.e.*, that the Federal Rules are "not meant to create a routine right of direct access to a party's electronic information system." To that end, Plaintiffs have always been willing, as they indicated to comScore the first time it sought to inspect Dunstan's computer in May of 2012,[2] to (1) provide images of Dunstan's hard drive to a forensic expert (for its part, comScore acknowledges that Plaintiffs have already done so, (Def. Mot. at 4-5 (citing Ex. C to the Motion))) and (2) disclose information responsive to specific requests from comScore found on the images, after removing any non-relevant or privileged information. *See* Scheindlin, Shira A., and Capra, Daniel J., *Electronic Discovery and Digital Evidence in a Nutshell* (St. Paul, MN: West, 2009). This approach has been endorsed by Federal Courts throughout the country. *See*, *e.g.*, *Han v. Futurewei Tech., Inc.*, No. 11–CV–831–JM, 2011 WL 4344301 (S.D. Cal. Sept. 15, 2011) (this approach "takes into account the significant privilege and privacy interests implicated in this case, is reasonable at this stage of the case, and follows the convention under the Federal Rules that the party *responding* to discovery determines what is relevant, responsive, and protected by privilege or privacy interests.");

---

[2] comScore withdrew its first motion to compel in this case (which also sought to inspect Dunstan's computer) after the Parties met and conferred and reached an agreement as to the issues raised therein. (*See* Dkts. 103 at 2-4, 107.) With regards to comScore's previous request that Dunstan's computer be produced for inspection, Plaintiffs agreed to produce certain registry files and a "virus log," which indicated that comScore's software had been installed on and removed from the computer.

*Coburn v. PN II, Inc.*, No. 207-CV-00662-KJD-LRL, 2008 WL 879746, at *2-3 (D. Nev. Mar. 28, 2008); *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2008 WL 1902499 (S.D. Ohio Apr. 28, 2008); *Frees, Inc. v. McMillian*, No. CIV.A.05 1979, 2007 WL 184889 (W.D. La. Jan. 22, 2007) *aff'd,* No. CIV.A. 05-1979, 2007 WL 1308388 (W.D. La. May 1, 2007).

Even the cases that comScore cites endorse this or a similar approach. (*See* Def. Mot. at 5.) In *Genworth Financial Wealth Management, Inc. v. McMullan*, for example, an investment firm sued its former employees, who allegedly used computers to download the firm's proprietary information and trade secrets, and moved to compel the defendants "to submit their computers and electronic media devices to forensic mirror imaging and examination by a neutral court-appointed forensic expert." 267 F.R.D. 443, 445 (D. Conn. 2010). The court found that "forensic imaging by a neutral expert [was] the only way that the Plaintiff [would] be able to secure the electronic data to which it is entitled," and thereafter ordered a three-step process consisting of (1) an "imaging step," where a neutral computer expert would image the subject computers, (2) a "recovery step," where data recovered from the computer would be provided to the defendants, and (3) a "disclosure step," where the defendants would provide responsive, non-privileged documents to the plaintiff. *Id.* at 447 (citing *Ameriwood Industries, Inc. v. Liberman,* No. 4:06 CV 524-DJS, 2006 WL 3825291, at *3, *6 (E.D. Mo. Dec.27, 2006), amended by, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007)), 449. An undirected "inspection" of the subject computer, in contrast, was never even considered.

Likewise, the court in *G.D. V. Monarch Plastic Surgery, P.A.* followed a similar approach in a case involving the alleged wrongful disclosure of medical information stored on a particular computer's hard drive. 239 F.R.D. 641, 643 (D. Kan. 2007). There, the plaintiffs sought to both "inspect, test, and evaluate the operation of the computer itself" (i.e., to find

4

information about its functionality) and also obtain specific records from it. *Id.* at 644. In granting the plaintiffs' motion, the court appointed an expert to conduct an examination of the defendants' computer and ordered a two-part process. *Id.* at 649. First, for the "inspection" part, the court ordered that the expert (and *only* the expert—the parties were not allowed to be present during the expert's review) image the computer and provide a report to the parties summarizing his findings regarding the computer's components, settings, and functionality. *Id.* at 648-49. Second, for the "review of stored records" part, the court ordered essentially the same three-step process endorsed in *Genworth Financial Wealth Management*, where (1) the computer would be imaged, (2) the image would be produced to defendants, and (3) the defendants would produce responsive, non-privileged documents to plaintiffs. *Id.* at 649-50. Again, there was never a suggestion that the computer, or a computer image, would simply be turned over for the plaintiffs' unfettered "inspection."

Finally, the issue in *Equity Analytics, LLC v. Lundin*—a suit alleging that a former employee gained illegal access to the employer's electronically stored information after being fired—centered only on whether search terms proposed by the defendant and designed to retrieve responsive information from a computer were adequate. 248 F.R.D. 331, 332 (D.D.C. 2008). And once again, there was no suggestion that an "inspection" was even on the table.

In sum, comScore's motion lacks any justification for the remedy it seeks and there is no basis for its overreaching and undirected request to "inspect" Dunstan's computer. Plaintiffs are, and have always been, perfectly willing to turn over non-privileged information from Dunstan's computer that is responsive to particular discovery requests. But in order to so respond, comScore must first specify what information it seeks. Since it hasn't done so, the Court should deny its Motion to Compel.

## II. comScore Cannot Compel Answers to Contention Interrogatories Regarding the Merits of this Case Before Plaintiffs Received Any Merits-Based Discovery.

Seeking to lock Plaintiffs into a position before any opportunity to conduct and/or review merits-based discovery, comScore seeks answers to what it admits are "contention interrogatories," (Def. Mot. at 5), regarding (1) losses and damages suffered pursuant to the CFAA and (2) comScore's alleged violations of the SCA, ECPA, and/or CFAA. Without citing any support, comScore simply claims that it is "entitled to the best answer Plaintiffs can provide at this time," in response to Plaintiffs' present answers that "at this stage of the litigation (*e.g.*, with having conducted only discovery into class-wide issues per comScore's request to bifurcate discovery), Plaintiffs have not had a sufficient opportunity to gather certain further information, which they anticipate will be responsive to this Interrogatory." (Def. Mot. at 6; Dkt. 226-2 at 5-6.) Stated otherwise, Plaintiffs do not dispute that comScore is owed answers, but there is no reason to prematurely force answers now—especially given the sheer breadth of comScore's merits discovery production (and anticipated depositions stemming from that production), which all but guarantees that Plaintiffs are not in a position at this time to provide final or near-final answers.

"The general policy is to defer contention interrogatories until discovery is near an end." *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996); *see also Med. Assur. Co., Inc. v. Weinberger*, No. 4:06 CV 117, 2011 WL 2471898, at *5 (N.D. Ind. June 20, 2011) (citing Fed. R. Civ. P. 33(c) Advisory Committee Notes (1970 amendments) ("Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer."). That policy is grounded in efficiency and judicial fairness, which "prescribe[] that . . . parties should not be obliged to

6

answer contention interrogatories repeatedly . . . [and] because one of the chief purposes of contention interrogatories is to narrow the issues for trial, fairness dictates that parties not be forced to prematurely take a position, which would produce an artificial narrowing of the issues, instead of an informed paring down." *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2, n.3 (N.D. Ill. Dec. 7, 1995); *see also Weinberger*, 2011 WL 2471898, at *5 (noting that a "court may ask if early answers are likely to require multiple supplemental answers or require a party to commit prematurely to positions, thereby artificially narrowing the issues").

At this juncture, even comScore seems to recognize that Plaintiffs will only be able to provide incomplete, "best guess" answers to the contention interrogatories at issue. (Def. Mot. at 6.) Indeed, even if answers are given, they will assuredly be amended following the close of merits discovery as Plaintiffs learn more information responsive to these interrogatories (*e.g.*, how the Class and Subclass members were harmed by comScore's conduct and the ways that comScore's panelist software "contemporaneously intercepts" communications or otherwise violates the SCA, ECPA, and CFAA). Simply put, there's nothing to be gained from attempting to artificially narrow issues now, *especially* in light of the fact that it was *comScore*, not Plaintiffs, that sought to stave off merits discovery until now. (Dkt. 67.) To compel Plaintiffs to answer them now would simply result in wasted time and expense. As such, comScore's Motion should be denied.

//
//
//
//
//

## CONCLUSION

For the reasons stated above, comScore's Motion to Compel should be denied in its entirety.

                                                Respectfully submitted,

                                                **MIKE HARRIS** and **JEFF DUNSTAN**, individually and on behalf of a class of similarly situated individuals,

Dated: October 14, 2013                           By: s/ Benjamin S. Thomassen
                                                          One of Plaintiffs' Attorneys

                                                Jay Edelson
                                                Rafey S. Balabanian
                                                Ari J. Scharg
                                                Chandler R. Givens
                                                Benjamin S. Thomassen
                                                EDELSON LLC
                                                350 North LaSalle, Suite 1300
                                                Chicago, Illinois 60654
                                                Telephone: (312) 589-6370
                                                Facsimile: (312) 589-6378
                                                jedelson@edelson.com
                                                rbalabanian@edelson.com
                                                ascharg@edelson.com
                                                cgivens@edelson.com
                                                bthomassen@edelson.com

## **CERTIFICATE OF SERVICE**

      I, Benjamin S. Thomassen, an attorney, hereby certify that on October 14, 2013, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendant comScore, Inc.'s Motion to Compel***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 14th day of October 2013.

                                                s/ Benjamin S. Thomassen