IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>COMSCORE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:11-cv-5807<br><br>Hon. James F. Holderman<br><br>Magistrate Judge Young B. Kim |

**PLAINTIFF JEFF DUNSTAN'S RENEWED MOTION TO COMPEL COMSCORE, INC. TO RESPOND TO PLAINTIFF'S WRITTEN DISCOVERY**

Plaintiff Jeff Dunstan ("Dunstan"), by and through his undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2 for an Order compelling Defendant comScore, Inc. ("comScore") to produce all information within its possession or control that is relevant and responsive to Dunstan's outstanding Interrogatories and Document Requests and to otherwise supplement its document production so as to comply with Federal Rule of Civil Procedure 34. In support of this motion, Dunstan states as follows:

**INTRODUCTION**

On April 2, 2013, the Court certified a nationwide Class and Subclass of individuals who allege that Defendant comScore "improperly obtained and used personal information from [their] computers after they downloaded and installed comScore's [tracking software, OSSProxy.]" (Dkt. 186 at 1, 19–20.) Following certification, the Court ordered the Parties to proceed with merits discovery. (Dkts. 210, 211.) Accordingly, on July 31st Plaintiffs propounded their first merits-based interrogatories and requests for production. comScore's written responses and document production followed in August and September.

1

On October 10, 2013, this Court denied Dunstan's previously filed motion to compel without prejudice, with permission to file a more complete motion by November 1, 2013. Accordingly, Dunstan now moves the Court to compel comScore to produce further documents and respond to certain written discovery requests.

**BACKGROUND AND PROCEDURAL HISTORY**

**A.     Dunstan's Discovery Requests and comScore's Responses.**

After certifying a nationwide Class and Subclass, (Dkt. 186 at 19–20), Judge Holderman lifted the then-in-place stay of discovery, (Dkt. 207), and ordered that all fact discovery be noticed in time to be completed by December 20, 2013. (Dkt. 210.)

On July 31, 2013, Plaintiffs propounded on comScore Dunstan's First Set of Interrogatories and Requests for the Production of Documents and Harris's Second Set of Interrogatories. (*See* Declaration of Rafey S. Balabanian ["Balabanian Decl."] at ¶ 3, filed contemporaneously herewith; Ex A,[1] Plaintiff Jeff Dunstan's First Set of Requests for Production of Documents to comScore, Inc. ["Dunstan's Requests"]; Ex. B, Plaintiff Jeff Dunstan's First Set of Interrogatories to comScore, Inc. ["Dunstan's Interrogatories"]; Ex. C, Plaintiff Mike Harris's Second Set of Interrogatories to Defendant comScore, Inc. ["Harris's Interrogatories"].)

On August 30, 2013 comScore responded to Plaintiffs' written discovery. (Balabanian Decl. at ¶ 4.) On September 17, 2013, Plaintiffs received comScore's document production via a hard drive containing files Bates-labeled "CS0016909–CS0096420." (*Id.*)

**B.     The Current Status of Plaintiff Dunstan's Outstanding Discovery Requests.**

On September 26, 2013, the Parties met and conferred about Plaintiffs' discovery requests. (*Id.* at ¶ 5.) Thereafter, the Parties exchanged several letters outlining their positions on contested discovery issues. (*Id.*) comScore agreed to supplement certain of its responses and

---

[1]     All Exhibits ("Ex.") refer to exhibits attached to the Balabanian Decl.

production but refused to supplement others. (*Id*.) Accordingly, Dunstan moved to compel on October 7, 2013. (Dkt. 224.) On October 10, 2013, the motion was denied with leave to re-file on November 1st. (Dkt. 231.)

Following the October 10th hearing, the Parties continued to work through aspects of comScore's discovery responses. As a result, comScore provided Plaintiffs with selected Panelist complaints relating to OSSProxy, information concerning its insurance policies, and information about its arrangement with the "Trees For the Future" program. (Balabanian Decl. at ¶ 6.)

Plaintiffs also ramped up their review of comScore's latest document production so that, if necessary, they could file a more complete motion to compel on November 1, 2013. (*Id.* at ¶ 7.) To that end, the Parties met and conferred again on October 30, 2013 to address new issues uncovered by Plaintiffs' review since October 10th. (*Id.*) Because the Parties were unable to reach agreement on these issues, Dunstan now moves the Court to compel answers to certain outstanding discovery requests, some of which were addressed in his previous motion to compel, some of which are new. Additionally, Plaintiffs are in the process of evaluating the need for further written discovery requests based on their on-going review of comScore's production, and they will file a request for leave to propound new requests as soon as possible.[2]

## ARGUMENT

A party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverable information is not limited to admissible evidence. *MSTG, Inc. v. AT & T Mobility LLC*, 08 C 7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011). Instead, information is discoverable "if the discovery appears

---

[2] For example, Plaintiffs have found that comScore uses code words to internally refer to certain tasks (such as "█████████" in reference to this lawsuit) and Plaintiffs anticipate seeking a list of such terms and their meanings through additional discovery requests, to the extent comScore is not willing to provide the information informally. (Balabanian Decl. at ¶ 8.)

reasonably calculated to lead to the discovery of admissible evidence." *Id.* (citation omitted).

Courts have extremely broad discretion in controlling discovery, *see Zimnicki v. Gen. Foam Plastics Corp.*, 09 C 2132, 2011 WL 833601, at *3 (N.D. Ill. Mar. 3, 2011) (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005)), and may compel a party to respond to requests under Rule 37 of any matter that is relevant. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Wilstein v. San Tropai Condo Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999). Courts, for example, have compelled discovery "where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *Kodish*, 235 F.R.D. at 450 (citing Fed. R. Civ. P. 37(a)(2)-(3)). The burden rests on the objecting party to show why a particular request is improper. *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

## I. THE COURT SHOULD COMPEL COMSCORE TO SEARCH FOR AND PRODUCE *ALL* DOCUMENTS RESPONSIVE TO PLAINTIFFS' REQUESTS.

Plaintiffs' document review since October 10th has uncovered that comScore chose to withhold categories of documents from its overall production. To the extent such documents exist—and Plaintiffs have evidence showing that they do—they must be produced.

### A. Executive Communications and Documents.

Plaintiffs believe that comScore has withheld responsive documents and communications from members of its executive team that should be produced. Several emails from comScore employees have been discovered during Plaintiffs' review that, in turn, reference or forward emails from comScore executives. (Balabanian Decl. at ¶ 9.) Many of these forwarded emails involve executive discussions of matters centrally relevant to this case, such as one in which comScore CEO Magid Abraham discusses ████████████████████

4

███████████████████████████████████████████.[3] (*Id.*; Ex. D, CS0043028_Confidential--Attorney's Eyes Only.htm (email forwarded from VP of Panel Operations, John O'Toole, to his subordinate, Helena Barkman, with communications from CEO Magid Abraham reproduced inline).)[4]

The problem is that the aforementioned executive emails were only produced as a result of other employees referencing them, but weren't produced in original form. This led Plaintiffs to suspect that comScore opted to exclude them (and potentially others like them) from its production. (Balabanian Decl. at ¶ 10.) Because the emails Plaintiffs *have* seen are directly relevant to this case, (Balabanian Decl. at ¶ 9)—and come from the key decision-makers at comScore—*all* such emails should be produced. Not surprisingly, other courts have agreed that such documents and communications should be reviewed and produced where responsive. *See, e.g., In re iPhone Application Litig.*, 11-MD-02250-LHK, 2013 WL 1095456, at *2 (N.D. Cal. Mar. 7, 2013) (discussing defendant Apple Inc.'s failure to produce relevant emails from senior executives).

For its part, comScore claims that it is under no obligation to produce emails from the

---

[3] This precise type of data collection was discussed directly both by Plaintiffs in their class certification briefing and by Judge Holderman in his Memorandum, Opinion and Order granting certification, and is clearly relevant to this case. (Dkt. 154 at 31; Dkt. 186 at 4.)

[4] This is just one of many poignant examples. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

majority of its executive team because those individuals weren't selected—by comScore—as record custodians. (Balabanian Decl. at ¶ 11.) But Plaintiffs' review of executive correspondence (*i.e.*, the limited correspondence that leaked into comScore's document production) shows that comScore's position is incorrect. In this District, "the selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period."[5] *Kleen Prods. LLC v. Packaging Corp. of Am.*, 10 C 5711, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012) *objections overruled*, 10 C 5711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013) (citation omitted). Given that Plaintiffs know with certitude that comScore executives discuss matters of central importance to this case, and are involved in the decisions that went into them, (Balabanian Decl. at ¶ 9), they should've been selected as custodians.[6]

In the end, while Plaintiffs presume that comScore's decision not to include executive

---

[5] The Seventh Circuit's E-discovery Pilot Program encourages parties to discuss "potential methodologies," for e-discovery, including whether to "filter data" by custodian. Seventh Circuit Electronic Discovery Committee, *Principles Relating to the Discovery of Electronically Stored Information*, at 5 (http://www.discoverypilot.com/sites/default/ files/Principles8_10.pdf). Here, comScore unilaterally decided both to filter data by custodian and to select the employees that would serve as custodians. (Balabanian Decl. at ¶ 10.) comScore's position that Plaintiffs are only entitled to documents from those self-selected custodians is unreasonable. *Cf. Jones v. Bremen High Sch. Dist. 228*, 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010) ("It is unreasonable to allow a party's interested employees to make the decision about the relevance of such documents, especially when those same employees have the ability to permanently delete unfavorable emails from a party's system [and] … are often reluctant to reveal their mistakes or misdeeds.").

[6] Save for Chief Technology Officer Mike Brown and Chief Operating Officer Cameron Meierhoefer—who both became executives in 2011 or later (i.e., well after 2005, the beginning of the relevant Class period in this case as set by Judge Holderman's Certification Order)—there doesn't appear to be any other comScore executives designated as custodians. (Balabanian Decl. at ¶ 10.) Furthermore, certain of the custodians that comScore *did* select (out of 14 total) seem to have little or no connection to this lawsuit. For example, of the 30 documents produced from one custodian, a paralegal named Katherin Calloway, none are relevant or responsive to Plaintiffs' requests. (*Id.* at ¶ 10.)

communications was strategic, their exclusion is neither reasonable nor permissible.[7]

B.     **Communications and Documents Related to Revisions to comScore's ULA**.

Dunstan's Request Nos. 43–46, 48 and 49 target materials related to comScore's ULA drafting and revision process. Although comScore has produced *some* documents responsive to these requests, Plaintiffs believe that others have been withheld. (Balabanian Decl. at ¶ 12.) Specifically, comScore produced communications showing deliberations regarding and revisions to an early version of comScore's ULA in 2005, (Ex. H, CS0049035_Confidential--Attorney's Eyes Only.doc), but *no* other responsive communications or documents were produced related to later versions of the ULA. This time-gap and differences between the early and present versions of comScore's ULA suggest that other such communications and documents do exist. If so, then they should be produced, as comScore's ULA is central to this case.

comScore's stated position isn't that other ULA-related documents don't exist, but that they were "probably" identified as privileged and therefore weren't produced. (Balabanian Decl. at ¶ 13.) Presently, however, Plaintiffs have no way of evaluating that claim. comScore hasn't produced a complete privilege log for its latest document production.[8] (*Id.* at ¶ 13.) And even assuming comScore does assert a claim of privilege for those omitted documents, Plaintiffs fail to understand why comScore believes that the earlier ULA revision materials from 2005 weren't privileged—even though those documents included communications by and among comScore's in-house counsel—but later versions are. (*Id.* at ¶ 12.) In any event, without a privilege log Plaintiffs have no way of definitively knowing why the documents were withheld or, if they

---

[7]     In the event the Court finds that comScore wasn't required to produce these documents, Plaintiffs will request leave to propound additional document requests so as to ask for them specifically.

[8]     comScore did clawback one document on October 2nd that it claimed was subject to the attorney-client privilege and produced a privilege log several weeks later memorializing the same. (Balabanian Decl. at ¶ 14.)

7

were, whether withholding is proper. Absent proper assertions of privilege, those documents should be produced.

C. **Complaints outside of comScore's "complaint reporting system."**

Numerous discovery requests seek complaints lodged with comScore about its software and bundling program. (Dunstan's Request Nos. 74–77.) But comScore only produced complaints located within a pre-defined "complaint reporting system."[9] (Balabanian Decl. at ¶ 15.) Plaintiffs know that complaints exist outside of this system because they have seen direct references to them—*e.g.*, ▬▬▬▬▬ (Ex. I, CS0089875_Highly Confidential--Source Code.htm.) Likewise, Plaintiffs know that certain institutions, including prominent universities, have blocked comScore's software, yet no materials were produced showing instances where those institutions contacted comScore. (Balabanian Decl. at ¶ 16.)

comScore has acknowledged that complaints may exist outside of the complaint reporting system, but claimed it would be too burdensome to locate and produce them. (*Id.* at ¶ 17.) Complaints about OSSProxy are important for a number of reasons, including showing that comScore's conduct towards Panelists was knowing and willful. If they exist, the documents should be produced regardless of whether they were formally logged by a comScore employee in the complaint reporting system.

---

9   Presumably the "complaint reporting system" refers to grievances submitted to comScore through the email or telephone number listed on OSSProxy brand websites. Others were likely submitted directly to comScore (*i.e.*, through a survey "pop") although documents produced show ▬▬▬ (Ex. J, CS0042536_Confidential--Attorney's Eyes Only.htm (emphasis in original).)

## II. THE COURT SHOULD COMPEL COMSCORE TO PRODUCE DOCUMENTS RELATED TO MARKETING AND PROMOTING ITS PANELIST SOFTWARE.

To date, comScore has refused to answer Dunstan's Request Nos. 19, 21, and 22, which seek documents relating to comScore's marketing or promotion of its Panelist Software, and Dunstan's Request No. 26, which seeks communications between comScore and its bundling partners regarding the functionality of comScore's Panelist Software. (Balabanian Decl. at ¶ 18.) Rather, comScore responded with repeated, non-specific objections that the requests are overly broad, unduly burdensome, harassing and oppressive, and seek information not relevant to Plaintiffs' claims, without explaining any bases it has to assert them. (*See* Ex. K, Defendant comScore, Inc.'s Responses to Plaintiff Jeff Dunstan's First Set of Requests for Production of Documents to comScore, Inc., Resp. to Req. Nos. 19, 21, 22, and 26.) To be clear, such documents do exist and are in comScore's possession. Plaintiffs have reviewed several emails that address the marketing and promotion of comScore's Panelist Software to potential bundling partners. (*See*, *e.g.*, Ex. M, CS0073177_Confidential--Attorney's Eyes Only.htm) (███

███

███) Plaintiffs have also reviewed slides ███

███

███.
(*See*, *e.g.*, Ex. N, CS0046036_Confidential--Attorney's Eyes Only.pdf at 19, 20.)

When asked during the Parties' meet and confer on September 26th, comScore offered two explanations and one compromise regarding its refusal to respond. (Balabanian Decl. at ¶ 19.) First, comScore explained that it believes information relating to its marketing or promotion of the Panelist Software is not relevant to this case. (*Id.*) Second, comScore asserted that the Requests were overly broad because the only possibly relevant information would be

9

communications with bundling partners about actually bundling OSSProxy (*i.e.*, with the partners' software), along with marketing materials designed to recruit new bundling partners. (*Id.*) For the compromise, Plaintiffs understood that comScore then agreed to produce documents falling into the limited scope of what comScore took to be "possibly relevant" communications—but comScore later clarified that it viewed the "proposed 'narrowing' as an attempt to re-write [Dunstan's] Requests," and refused to supplement.[10] (*Id.*)

comScore's underlying position is wrong—information about the marketing and promotion of its Panelist Software is relevant to Plaintiffs' claims. That is, Plaintiffs are required to prove that comScore acted intentionally for each of their counts. *See* 18 U.S.C. § 2701(a); 18 U.S.C. § 2511(1)(a); 18 U.S.C. § 1030(a)(2)(c). And, here, there are a number of ways that the requested materials may demonstrate comScore's intent.

To start, the requested communications may show that comScore willfully deceived Class members by, for example, incentivizing prospective or current bundling partners to develop or use misleading installation processes, so as to increase the number of installations of OSSProxy and, in turn, increase the collection of data through bundled versions of OSSProxy. Indeed, comScore has already produced one document that suggests ███████████████ ███████████████████████████████████████████████ (*See* Ex. O, 0089762_Confidential-- Attorney's Eyes Only.htm (████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[10] It bears noting that Plaintiffs' offer is completely proper. In fact, offers of this nature are encouraged in this District. *See Bowden v. Kirkland & Ellis LLP*, 254 F.R.D. 542, 544 (N.D. Ill. 2009) ("compliance with the meet and confer requirements of Local Rule 37" contemplates the parties making "offers to narrow the range of the information sought by each document request or interrogatory . . . .").

[REDACTED].").)

Likewise, the communications sought may demonstrate comScore's understanding about the nature and scope of its authorization to collect data from Class members' computers. *See Cheng v. Romo*, CIV.A. 11-10007-DJC, 2012 WL 6021369, at *4 (D. Mass. Nov. 28, 2012) (holding that under the SCA, "it will be appropriate for a factfinder to consider evidence of whether [defendant] understood herself to be authorized or what she considered to be the scope of her authorization."). Namely, communications about the advertisement and/or promotion of its Panelist Software may reveal whether comScore understood the extent to which it was authorized to access Class members' computers. Likewise, communications regarding the conspicuousness of comScore's Panelist Software as offered in bundled form may point to whether comScore had a hand in contributing to a download and/or installation process where Class members were purposefully kept "blind" to the installations of OSSProxy.

Finally, comScore's advertisement and promotion practices may reveal that comScore utilized intentionally deceptive methods to drive-up installations. For example, documents exist showing [REDACTED].[12] Such evidence would help demonstrate that it was comScore's conscious objective to avoid negative publicity about OSSProxy so as to not affect its mass distribution.

In sum, while there are many ways the requested documents could be relevant to this case, Plaintiffs only have one way to access them: through comScore. Accordingly, comScore should be compelled to respond to Dunstan's Request Nos. 19, 21, 22, and 26.

---

[12] SEO, or search engine optimization, is a technique used by internet marketers to, *inter alia*, manipulate the order in which search results (*i.e.*, those on Google.com) are presented to users. Several documents produced so far have shown [REDACTED] (*See* Ex. P, CS0088697 Confidential--Attorney's Eyes Only.pdf) [REDACTED]

## III. COMSCORE SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO THE PURGING OF PERSONAL INFORMATION COLLECTED THROUGH ITS PANELIST SOFTWARE.

Plaintiff Dunstan's Document Request Nos. 34 and 36 seek documents and communications relating to "any occurrence where [comScore] did not Purge Personal Information Collected through [its] Panelist Software." comScore responded to these Requests with the same boilerplate objections discussed in Section II, and later explained that the Parties' definitions of "purge" were not in accord, but agreed to consider producing documents that explain its purging procedures. (Balabanian Decl. at ¶ 20.) More recently, however, comScore claimed that is "has no documents to produce responsive to these requests" because it "does not have any documents, including written policies, regarding any such purging." (*Id.*)

comScore's position—that it has *no* documents regarding its procedure for or actual purging of inadvertently collected personally identifiable panelist data—is untenable for at least two reasons. First, comScore has already produced documents responsive to—or at least showing that it has documents responsive to—these requests. For example, Plaintiffs have identified ███████████████████████████████████████████████ ███████████████████████████ ███████████████████. (*See, e.g.*, Ex. Q, CS0075487_Confidential—Attorney's Eyes Only.htm.) This document shows comScore's position that it has no responsive documents is wrong, and other documents like this one must be produced.

Second, and as has already been addressed in this case, comScore states outright in its Privacy Policy and User License Agreement that it "make[s] commercially viable efforts to purge [its] database of [inadvertently collected personal] information." (*See* Dkt. 154 at 18.) Assuming that comScore keeps, or attempts to keep, this promise, there's no way comScore possesses *no* documents or communications about such "commercially viable efforts to purge

[its] database[s]." What's more, comScore's collection and handling of "confidential personally identifiable information"—especially "unfuzzified" sensitive data collected from Class and Subclass members—is highly relevant and will inform whether comScore acted intentionally (*i.e.*, whether it did or did not attempt to purge inadvertently collected sensitive data) and allow Plaintiffs to calculate damages. *See United Labs., Inc. v. Rukin*, No. 98 C 602, 1999 WL 608712, at *6 (N.D. Ill. Aug. 4, 1999) (holding that the SCA allows for punitive damages where defendant's "conduct was constant and sustained over a lengthy period of time").

Accordingly, responsive documents must be produced.[13] comScore should be compelled to fully respond to Dunstan's Request Nos. 34 and 36.

## IV. COMSCORE SHOULD BE COMPELLED TO IDENTIFY THE REVENUE, MONIES, AND OTHER BENEFITS GENERATED THROUGH ITS USE OF THE CLASS'S AND SUBCLASS'S INFORMATION.

Dunstan's Request Nos. 56, 57, 58, 59, 60, and 61 seek documents relating to the revenue and monies generated through comScore's "sharing, selling, transmitting, and/or disclosing" of the Class and Subclass's personal information. (*See* Dunstan's Request No. 56.) Dunstan's Interrogatory Nos. 10–12 request similar information. For its part, comScore simply answered "None" to certain inquires (including Dunstan's Interrogatory Nos. 10 and 11). (Balabanian Decl. at ¶ 21; Ex. L, Defendant comScore, Inc.'s Answers to Plaintiff Jeff Dunstan's First Set of Interrogatories to comScore, Inc. ["comScore's Answers"].) And in others, comScore just responds with its boilerplate objections. Both responses are insufficient—comScore has no basis for responding "none" or objecting on relevancy grounds.

---

[13] Official data retention policies and guidelines for securing PII produced by comScore, along with other programs that seem to account for the identification and handling of PII collected from panelists (e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) militate towards the conclusion that these documents exist. (*See e.g.,* Ex. R, CS0074729_Confidential—Attorney's Eyes Only.doc (▮▮▮▮▮▮▮▮▮▮▮▮) and other draft guidelines, Ex. S, CS0048493_Confidential--Attorney's Eyes Only.doc (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).)

13

Regarding its "none" response, comScore has clarified that it answered "None" to Dunstan's Interrogatory Nos. 10 and 11 because Plaintiffs' definition of "Personal Information" didn't include "aggregated" and/or "anonymized" data. (*See* Balabanian Decl. at ¶ 21; Ex. T, September 30th Meet and Confer Follow Up Letter at 4.) But that position doesn't hold up because the requests specifically seek information relating to the sharing, selling, transmitting, and/or disclosing of the *Class's* and *Subclass's* Personal Information—*i.e.*, in the aggregate rather than for this or that Class member. What's more, various sources of evidence show that comScore *does* in fact share or sell Personal Information that isn't "aggregated" or "anonymized" at all. For instance, Plaintiffs have reviewed several communications where ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*See* Ex. U, CS0049415_Confidential—Attorney's Eyes Only.htm.) Likewise, comScore's Rule 30(b)(6) designee and Chief Technology Officer, Mike Brown, recently testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. V, October 3, 2013, Mike Brown Dep. Tr. at 93:7–94:6.)

And regardless of the above, comScore has indicated that even if Plaintiffs revised their definition of "Personal Information" to include aggregated information, it would object to the requests on relevance grounds. (Balabanian Decl. at ¶ 22.) That objection, however, is entirely without merit. The information sought (*i.e.*, profits derived from the unlawful collection of Class members' information) is directly and obviously relevant to this case, as two of the statutory claims certified in this action (the ECPA and SCA) explicitly state that profits made in violation of the laws are relevant in calculating damages. *See* 18 U.S.C. § 2520 ("[T]he court may assess as damages whichever is the greater of: (A) the sum of the actual damages suffered by the plaintiff and ***any profits made by the violator*** as a result of the violation . . . .") (emphasis added);

18 U.S.C. § 2707 ("(c) Damages. The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and ***any profits made by the violator*** as a result of the violation") (emphasis added). And while comScore suggested that Plaintiffs examine its publicly available "Quarterly and Annual Financial Reports" for financial information, (Balabanian Decl. at ¶ 22), that is not a workable substitute for information within comScore's possession. Simply put, Plaintiffs cannot draw any conclusions from the publicly available reports because they do not break out or classify the revenue related to the collection and sharing of Class and Subclass members' information. (*See* Ex. W, comScore, Inc. Form 10-Q (Quarterly Report) for the Period Ending 06/30/13.)

Accordingly, Plaintiff Dunstan requests that the Court compel comScore to provide responsive documents to Dunstan's Request Nos. 56, 57, 58, 59, 60 and 61 and to meaningfully answer Dunstan's Interrogatory Nos. 10, 11, and 12.

## CONCLUSION

For the foregoing reasons, Plaintiff Dunstan respectfully requests that the Court enter an order compelling comScore to produce all relevant information responsive to Dunstan's Request Numbers 19, 21, 22, 26, 34, 36, 43, 44, 45, 46, 48, 49, 56, 57, 58, 59, 60, 61, 74, 75, 76, and 77 and Dunstan's Interrogatory Numbers 10, 11, and 12, and providing such further relief that the Court deems equitable and just.

Respectfully submitted,

**MIKE HARRIS** and **JEFF DUNSTAN,**
individually and on behalf of all others similarly situated,

Dated: November 1, 2013

By: s/ Rafey S. Balabaian
       One of Plaintiffs' Attorneys

Jay Edelson
Rafey S. Balabanian
Chandler R. Givens
Benjamin S. Thomassen
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
cgivens@edelson.com
bthomassen@edelson.com

## L.R. 37.2 CERTIFICATION

       Pursuant to Local Rule 37.2, the undersigned certifies that the Parties met and conferred telephonically at 2:00 P.M. (C.D.T.) on September 26, 2013 and on October 30, 2013 at 11:00 A.M. (C.D.T.), and despite their good faith efforts to resolve the discovery issues now in dispute, were unable to reach an accord.

                                                s/ Rafey S. Balabanian

## CERTIFICATE OF SERVICE

   I, Benjamin S. Thomassen, an attorney, hereby certify that on November 1, 2013, I served the above and foregoing ***Plaintiff Jeff Dunstan's Motion to Compel comScore, Inc. to Respond to Plaintiff's Written Discovery*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF system on this 1st day of November 2013.

                     s/ Benjamin S. Thomassen