**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>COMSCORE, INC., a Delaware corporation<br><br>Defendant. | CASE NO. 1:11-cv-5807<br><br>Judge Holderman<br><br>Magistrate Judge Kim<br><br>**FILED PARTIALLY UNDER SEAL** |

**COMSCORE'S OPPOSITION TO PLAINTIFF JEFF DUNSTAN'S
RENEWED MOTION TO COMPEL COMSCORE, INC.
TO RESPOND TO PLAINTIFFS' WRITTEN DISCOVERY**

Defendant comScore, Inc. ("comScore") respectfully submits this brief in opposition to Plaintiff Jeff Dunstan's Renewed Motion to Compel comScore, Inc. to Respond to Plaintiffs' Written Discovery ("the Motion"). (Dkt. No. 247.)

**I.      INTRODUCTION**

Plaintiffs ask this Court to order comScore to produce irrelevant information and documents, information and documents that it does not possess, to perform a needle-in-a-haystack review every single email received or written by one of its nearly 1200 employees, and to produce documents duplicative of information already produced in this case. In so doing, Plaintiffs mischaracterize comScore's production and ignore the language of their own requests. They also seek to get "blood from a stone" by requesting information that comScore has already informed Plaintiffs it does not have and generally harass comScore by seeking to compel irrelevant information and conduct burdensome searches not contemplated by Rule 26. The Court should reject Plaintiffs' arguments and deny their motion to compel in its entirety.

## II. LEGAL STANDARDS

In accordance with Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Notably, however, the Court should limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see John Wiley & Sons, Ltd. V. McDonnell Boehnen Hulbert & Berghoff*, Case No. 12cv1446, 2013 WL 505252 at *5 (N.D. Ill. Feb. 12, 2013) (denying Plaintiff's motion to compel and holding that "Defendants need not search the hard drives of every lawyer, paralegal, law clerk, technical advisor, or secretary of the MBHB firm" because doing so would be unduly burdensome.) Moreover, "[t]he discovery rules are not a ticket . . . to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Sommerfield v. City of Chicago*, 613 F.Supp.2d 1004, 1020 (N.D. Ill 2009).

Rule 34 governs the production and inspection of documents and things. The rule makes clear that "[a] party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii). And, a responding party is only required to produce documents within its possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

## III. ARGUMENT

Plaintiffs propounded 88 Requests to Produce Documents and Things on August 30, 2013. (Dkt. No. 248-1, Plaintiff Jeff Dunstan's First Set of Requests for the Production of Documents to Defendant comScore, Inc. (hereinafter "Requests").) comScore initially agreed to produce, or stated that it already had produced, non-privileged documents relevant to 55 of these

Requests. During the meet and confer process, comScore agreed to respond to certain additional requests, and Plaintiffs did not seek documents responsive to certain other requests to which comScore had properly objected. Through this process, the Parties reached agreement regarding all but 12 of Plaintiffs' Requests, although Plaintiffs now claim comScore's responses to some Requests are incomplete. Additionally, Plaintiffs seek to compel comScore to respond to 3 interrogatories which seek information duplicative to several Requests that are also the subject of the Motion.

In its Memorandum Opinion and Order issued March 2, 2012, the Court certified a class and subclass defined as:

> **Class:** All individuals who have had, at any time since 2005, downloaded and installed comScore's tracking software onto their computers via one of comScore's third party bundling partners.
>
> **Subclass:** All Class members not presented with a functional hyperlink to an end user license agreement before installing comScore's software onto their computers.

(Dkt. No. 186 at p. 1.)

The parties have reached an agreement in principle that the defined Class should be redefined to include only panelists who are U.S. residents. (*See* Dkt. No. 252.) Thus, relevant information is information related to comScore's third party application program ("TAP") and U.S. resident panelists who downloaded comScore's software as part of that program.

### A. The Court Should Not Compel Production of Executive Communications and Documents[1]

Plaintiffs seek production of communications and documents from comScore executives, but point to nothing that suggests comScore has withheld relevant documents or

---

[1] Plaintiffs recently noticed depositions for comScore CEO Magid Abraham and General Counsel Chris Lin. comScore intends to object to these notices.

communications. Instead, Plaintiffs object to comScore's *method* for identifying responsive documents without providing any indication that comScore's procedure was insufficient. Plaintiffs motion should be denied.

Upon receiving Plaintiffs' extraordinarily broad Requests, comScore followed standard and accepted practice by identifying the employees responsible for the areas related to Plaintiffs' Requests ("document custodians"), collected documents and all communications from these employees, and then searched those collected documents for non-privileged, responsive documents to produce to Plaintiffs. For example, comScore identified, *inter alia*, Chief Technology Officer Mike Brown, Senior Vice President Yvonne Bigbee, and Randy McCaskill for issues related to software development and maintenance; Helena Barkman for the TAP program; and Richard Weaver and Demiko Groom for User License Agreement ("ULA") and audit issues. There is no basis in law to require comScore to go further and review every one of the many millions of documents in its possession on the off-chance that doing so will turn up a responsive document or two. Indeed, Plaintiffs specifically sought documents and communications from certain comScore employees—including Mike Brown, Randy McCaskill and Yvonne Bigbee (Request Nos. 4, 7, 44); and John O'Toole and Jennifer Kuropkat (Request Nos. 27, 44)—but did not specifically request documents or communications from comScore executives. Plaintiffs themselves understand where documents relevant to their claims are likely to be found.

The documents to which Plaintiffs point in their motion actually validate comScore's search. Exhibit D to Plaintiffs' Motion, for example, is an email that was sent to John O'Toole and Mike Brown, and forwarded to Helena Barkman. (Dkt. No. 248-4.) comScore's search methodology captured this communication three times. Similarly, Exhibit F was sent to Steve

Chase, Mike Brown, and John O'Toole, and was forwarded to Richard Weaver. (Dkt. No. 248-6.) comScore collected communications from all of these employees. Exhibit G is an email chain that was sent to Helena Barkman, Yvonne Bigbee, Mike Brown, and Tom Cushing. (Dkt. No. 248-7.) Once again, this document was collected multiple times.[2] In accordance with Rule 34, comScore is required only to produce one copy of an electronic document. Fed. R. Civ. P. 34(b)(2)(E)(iii). Plaintiffs' request that this Court order comScore to search every document in the email-boxes of comScore's executives would, if granted, be highly burdensome and would result overwhelmingly in the re-identification of documents that Plaintiffs have already been provided. Where, as here, the reviewing methodology has resulted in the identification of, as far as is known, all relevant documents, the producing party has met its burden. The order to compel Plaintiffs seek would result only in wasted time and money.

The Court should deny Plaintiffs' motion to compel executive communications and documents under Fed. R. Civ. P. 26(b)(2)(C)(iii) because Plaintiffs have already received the documents they sought, and the burden to comScore greatly outweighs any potential relevance to this matter.

**B. The Court Should Not Compel Production of Additional Communications and Documents Related to Revisions to comScore's ULA**

As Plaintiffs admit in their motion to compel, they have received documents related to revisions of comScore's ULA. (Motion at 7-8.) And, as they admit, additional documents related to revisions to comScore's ULA were withheld by comScore as privileged. *Id.* This is to be expected, given that Plaintiffs' document requests related to revisions of comScore's ULA are

---

[2] Exhibit E is an irrelevant document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is unclear to comScore why Plaintiffs consider this document relevant. Moreover, it appears the document is attached to a privileged communication that was inadvertently produced. comScore will seek to claw back this document and the related communication. (Dkt. No. 248-5.)

directed to likely privileged information. comScore will serve a privilege log no later than Nov. 8, 2013. It has no additional non-privileged documents relevant to Plaintiffs' requests to produce. The Court should deny Plaintiffs' motion to compel production of documents that do not exist, as they are not in comScore's possession.

### C. The Court Should Not Compel Production of Additional Complaints Outside comScore's Reporting System

comScore has contracted with a third party to provide a centralized system for receiving and responding to communications from its panelists, including complaints. In an attempt to resolve a dispute between the parties regarding Plaintiffs' request for all complaints that comScore received, comScore agreed to produce, and did produce, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Bowland Decl. at ¶ 2.) Additionally, to the extent comScore discovered complaints during its review of communications it collected, it produced those communications. (Ex. A, Nov. 1, 2013 Ltr. to Balabanian at 2-3.)

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are not enough for Plaintiffs. Plaintiffs now ask this Court to order comScore to manually review each and every document and email from 2005 maintained within the entire company—a company with close to 1200 employees—to determine whether or not the document or communication contains a "complaint." Such a request to search for a needle in a haystack is unduly burdensome and would likely result in significant delay in this case.[3] There is no way comScore could undertake such a review without hiring hundreds of contract reviewers for months, and comScore would therefore be compelled to seek an extension of the fact discovery deadline in this case.

---

[3] comScore had to hire approximately 40 contract reviewers to meet this Court's initial document production deadline. Significantly more reviewers and time would be required to manually review every document maintained by comScore.

To the extent Plaintiffs suggest that comScore has documents from universities after 2005 complaining about comScore's software, they are mistaken. As Plaintiffs were informed during the meet and confer process, these universities announced policies and made statements regarding comScore's software—they never contacted the company directly, rather they were contacted proactively by comScore. (Ex. A, Nov. 1, 2013 Ltr. to Balabanian at 3.) Typically these communications were by phone, but to the extent there were any written communications, it is highly unlikely after eight years that any such documents would still exist given comScore's document retention policy. The Court should reject Plaintiffs' breathtakingly burdensome request, especially in light of the miniscule likelihood of comScore discovering complaints outside its established procedures.

### D. The Court Should Not Compel comScore to Produce Additional Documents Related to the TAP Program

Plaintiffs complain that they have not received marketing materials related to recruitment of TAP providers, but fail to acknowledge the significant discovery Plaintiffs have already received related to comScore's recruitment of, and relationship with, TAP providers. Indeed, in response to Document Requests from Plaintiffs, comScore agreed to produce, and did produce, non-privileged documents responsive to the following:

> **Document Request No. 8:** Any and all contracts, amendments to contracts, agreements, and written understandings between You and any third party Relating To the design, creation, programming, maintenance, or deployment of Your Panelist Software.
>
> **Document Request No. 9:** All Documents and ESI Relating To any and all contracts, amendments to contract, agreements, and written understandings between You and any third party Relating To the design, creation, programming, maintenance, or deployment of Your Panelist Software.
>
> **Document Request No. 10:** All Communications Relating To any all contracts, amendments to contracts, agreements, and understandings between You and any third party Relating To the design, creation, programming, maintenance, or deployment of Your Panelist Software.

>**Document Request No. 16:** All Communications between You and any Person, Including Your Employees, Relating To the Collection of Personal Information through Your Panelist Software.
>
>**Document Request No. 17:** All Communications between You and any Person, Including Your Employees, Relating To the manner in which You designed Your Panelist Software to Collect Personal Information.
>
>**Document Request No. 20:** All Documents, Including training manuals, memoranda, handbooks, and/or other written instructions that You provided Your Employees Relating To the manner in which You recruit Persons to download and/or install Your Panelist Software.
>
>**Document Request No. 23:** Any and all contracts, amendments to contracts, agreements, and written understandings between You and Your Bundling Partners Relating To Your Panelist Software.
>
>**Document Request No. 24:** All Documents and ESI Relating To any and all contracts, amendments to contracts, agreements, and written understandings between You and Your Bundling Partners Relating To Your Panelist Software.
>
>**Document Request No. 25:** All Communications Relating To any and all contracts, amendments to contracts, agreements, and written understandings between You and Your Bundling Partners.
>
>**Document Request No. 27:** All Communications to, from, or among, John O'Toole and Jennifer Kuropkat Relating To any and all contracts, amendments to contracts, agreements, and written understandings between You and Your Bundling Partners.

(Dkt. No. 248-11, Defendant comScore, Inc's Responses to Plaintiff Jeff Dunstan's First Set of Requests for Production of Documents to comScore, Inc. at Response Nos. 9, 10, 16, 17, 20, 23-25, and 27.)

These documents already address Plaintiffs' purported need to "demonstrate comScore's intent." (Motion at 10.) For example, Plaintiffs claim that "the requested communications may show that comScore willfully deceived Class members by, for example, incentivizing prospective or current bundling partners to develop or use misleading installation processes . . . ." *Id.* However, this theory is already covered by documents comScore has already produced in response to at least Request Nos. 10, 16, 24, 25, and 27. In particular, comScore has produced documents ████████████████████████████████████████████

████████████████████████████████████████ (*See, e.g.* Ex. B, comScore Software Distribution Program Software Bundle Guidelines for New Partner, CS0016810, produced April 13, 2012.) And the document cited by Plaintiffs for the proposition that comScore knew bundling partners were not following these procedures—████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 248-15.)

Plaintiffs also speculate that the marketing communications they seek "may demonstrate comScore's understanding about the nature and scope of its authorization to collect data from Class members' computers." (Motion at 11.) This purported reasoning is also negated by documents already produced by comScore. Indeed, comScore has already produced documents and communications related to the ULA, and produced documents responsive to Request Nos. 16, 17, 23, 24, 25, and 27. Moreover, it is not at all clear that such information would be contained in the marketing materials Plaintiffs seek rather than comScore's internal documents which have already been produced.

Finally, Plaintiffs claim that "comScore's advertisement and promotion practices may reveal that comScore utilized intentionally deceptive methods to drive-up installations." (Motion at 11.) First, the document request itself seeks comScore's advertisement and promotion practices with respect to TAP partners, not panelists, so it would not bear on installations by panelists. Indeed, the only example Plaintiffs cite is Search Engine Optimization, a perfectly

---

[4] Plaintiffs also mischaracterize the contents of Exhibit O in their motion. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 248-14 at 2.)

legitimate process used by thousands of organizations and individuals worldwide, and one that does not involve marketing to TAP partners. (*See generally* Ex. C, Google Search Engine Optimization Starter Guide, available at http://static.googleusercontent.com/external_content/untrusted_dlcp/www.google.com/en/us/webmasters/docs/search-engine-optimization-starter-guide.pdf, accessed Nov. 6, 2013.)

Plaintiffs' claims regarding the relevance of comScore's advertising and marketing to TAP partners do not stand up against the significant amount of documents already produced related to their reasoning, and the failure of their reasoning to actually relate to advertising and marketing to TAP partners. The Court should deny their motion to compel.

### E. The Court Should Not Compel comScore to Produce Documents It Does Not Have Related to Purging of Personal Information

comScore has already produced all documents it has related to the purging of inadvertently collected personally identifiable panelist data—which is the information Plaintiffs claim to seek. For example, comScore agreed to produce and did produce non-privileged documents responsive to Request Nos. 37 and 38:[5]

> **Request No. 37:** All Documents that Relate To or Describe Your current and past protocols, processes, and/or procedures for identifying, processing, and/or documenting occurrences where You Collected Personal Information through Your Panelist Software that was not Filtered.
>
> **Request No. 38:** All Documents Relating To any occurrence where You Purged Your database(s) of the personal Information Identified in Your response to Document Request No. 37.

(Dkt. No. 248-11, Defendant comScore, Inc's Responses to Plaintiff Jeff Dunstan's First Set of Requests for Production of Documents to comScore, Inc. at Response Nos. 37 and 38.)

---

[5] Indeed, the document Plaintiffs cite claiming that comScore has these types of documents was likely produce in response to Request No. 38. (*See* Dkt. No. 248-17.)

To the extent Plaintiffs seek written policies regarding the purging of such inadvertently collected personally identifiable panelist data, comScore has already informed Plaintiffs they have no such written policies. (Ex. D, Oct. 3, 2013 Ltr. to Balabanian at 2.) Thus, comScore has nothing more to produce responsive to these requests.

Moreover, Request Nos. 34 and 36 are not, as suggested by Plaintiffs, limited to the purging of inadvertently collected personally identifiable panelist data—the requests seek documents and communications "Relating to **any occurrence** where You did not Purge Personal Information Collected through Your Panelist Software." (Requests at Request Nos. 34 and 36.) These requests are overbroad, so comScore properly objected to them and agreed to produce documents responsive to the more narrowly tailored Request Nos. 37 and 38. Moreover, comScore does not have additional documents to produce to comScore responsive to Request Nos. 34 and 36. Thus, the Court should deny Plaintiffs' motion to compel such documents.

### F. comScore Does Not Generate Revenue, Monies, or Other Tangible Benefits through the Use of the Class's and Subclass's Personal Information as Defined by Plaintiffs

Finally, Plaintiffs motion to compel and discovery requests related to financial information evidence a misunderstanding of comScore's business model. As counsel for comScore has repeatedly informed Plaintiffs, comScore does not sell individual-level non-aggregated data. comScore sells aggregated reports and subscriptions to a reporting tool which provides customizable aggregated data to customers. (Ex. D, Oct. 3, 2013 Ltr. to Balabanian at 2-3.) The document cited by Plaintiffs for the proposition that comScore sells non-aggregated data does not support that proposition. ███████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ (Dkt. No. 248-21.) comScore

does not sell individual level data, and therefore has no documents to produce responsive to Plaintiffs' requests for such data.[6]

Plaintiffs also argue that their requests seek data about revenues, monies, or tangible benefits from the sale of aggregated panelist information. However, by the plain meaning of their requests, they do not. Document Request Nos. 56-59 and Interrogatory Nos. 10 and 11 to Plaintiff Jeff Dunstan's First Set of Interrogatories to Defendant comScore, Inc., to which Plaintiffs seek to compel comScore to respond, seek information related to panelists' "Personal Information." (Requests at Request Nos. 56, 57, 58, and 59; Dkt. No. 248-2, Plaintiff Jeff Dunstan's First Set of Interrogatories to Defendant comScore, Inc. (hereinafter "Interrogatories") at Interrogatory Nos. 9 and 10.) In their Document Requests and Interrogatories, Plaintiffs define "Personal Information" as "an individual's name, address, age, zip code, phone number, username, password, Internet searches, website history, credit card numbers and any financial or other sensitive information, goods purchased online, specific advertisements clicked, or any other data that may personally identify an individual." (Requests at ¶ 25; Interrogatories at ¶ 15.) This definition does not encompass anonymized, aggregated data. Moreover, Request Nos. 60 and 61 and Interrogatory No. 12 seek information regarding comScore's total net worth, which is not limited to revenues from the sale of the Class's information and, as discussed more fully below, is publicly available. (Requests at Request Nos. 60 and 61; Interrogatories at Interrogatory No. 12.) Plaintiffs were required to make clear, unambiguous discovery requests. They did not, and the Court should not allow them to now re-write the Requests.

---

[6] To the extent Plaintiffs seek documents related to data matching, such documents have already been provided in Response Nos. 3 and 4 to Plaintiff Mike Harris's Second Set of Interrogatories, and any supplements thereto.

In an attempt to resolve the dispute between the parties on this issue, comScore has explained to Plaintiff that comScore's quarterly and annual financial reports are publicly available and suggested that Plaintiffs obtain the information they seek via these reports. (Ex. D, Oct. 3, 2013 Ltr. to Balabanian at 3.) In the Motion, Plaintiffs argue that these publicly available reports "do not break out or classify the revenue related to the collection and sharing of Class and Subclass members' information" and therefore do not provide the information they seek. (Motion at 15.) However, because comScore does not sell anonymized, aggregated research products limited to panelists who joined via the TAP process (i.e. members of the Class and Subclass), comScore has no information regarding the breakdown of revenue it receives due to the sale of only the Class and Subclass's anonymized, aggregated information. Such information does not exist in comScore's financial records. Thus, even if Plaintiffs had adequately requested this financial information, comScore would have nothing to produce.

Plaintiffs seek financial information that comScore does not have, and with respect to anonymized, aggregated data, information that Plaintiffs did not even request. The closest financial information to the information Plaintiffs seek from comScore is publicly available, and therefore just as accessible to Plaintiffs as it is to comScore. The Court should deny Plaintiffs' motion to compel information comScore does not have.

### IV. CONCLUSION

For the foregoing reasons, comScore respectfully requests that the Court deny Plaintiffs' Motion to Compel comScore, Inc. to Respond to Plaintiff's Written Discovery.

DATED:  November 6, 2013         QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                                   */s/  Andrew H. Schapiro*
Andrew H. Schapiro
andrewschapiro@quinnemanuel.com
Stephen Swedlow
stephenswedlow@quinnemanuel.com
Robyn Bowland
robynbowland@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois  60661
Telephone:   (312) 705-7400
Facsimile:    (312) 705-7499

Paul F. Stack
pstack@stacklaw.com
Stack & O'Connor Chartered
140 South Dearborn Street
Suite 411
Chicago, IL  60603
Telephone:  (312) 782-0690
Facsimile:  (312) 782-0936

*Attorneys for Defendant comScore, Inc.*

-15-

**<u>CERTIFICATE OF SERVICE</u>**

   I, the undersigned, hereby certify that a true and correct copy of COMSCORE'S OPPOSITION TO PLAINTIFF JEFF DUNSTAN'S RENEWED MOTION TO COMPEL COMSCORE, INC. TO RESPOND TO PLAINTIFFS' WRITTEN DISCOVERY has been caused to be served on November 6, 2013 to all counsel of record via the Court's ECF filing system and via electronic mail.

                               */s/ Robyn Bowland*
                                 Robyn Bowland