# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals, | Case No. 1:11-cv-5807 |
| Plaintiffs, | Hon. James F. Holderman |
| v. | Magistrate Judge Young B. Kim |
| COMSCORE, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO DISMISS UNDER RULE 12(B)(3)**

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. BACKGROUND .............................................................................................................3

III. ARGUMENT...................................................................................................................7

    A. **The ULAs dictate that comScore cannot enforce the forum selection clauses**................................................................................................................7

    B. **comScore waived any right to invoke the forum-selection clause by failing to promptly seek its enforcement, and participating in extensive and costly litigation** ...............................................................................9

        *i. comScore waived any right to challenge venue by failing to diligently pursue, support, and renew its motion*........................................10

        *ii. Granting comScore's untimely motion would prejudice the Class* ...........13

        *iii. Like every other Class member, Plaintiffs clicked the "accept" button during the download process, but never assented to any contract with comScore*................................................................................14

III. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Goldlawr, Inc v. Heiman*, 369 U.S. 463 (1962) ................................................................14

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012) ................................7, 8, 9

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004) .................10

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613 (7th Cir. 2009) ..........................................13

*Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 2009) ....................13

*Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293 (7th Cir. 1993) ......................................................10, 11

*Dunstan v. comScore*, No. 13-8007 (7th Cir. May 8, 2013) ..............................................................6

*Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995) ..................................................................11, 13

*Golden v. Barenborg*, 53 F.3d 866 (7th Cir. 1995)......................................................................7, 8

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*,
    660 F.3d 988 (7th Cir. 2011) .......................................................................................................10

*Midwest Window Sys., Inc. v. Amcord Indus., Inc.*, 630 F.2d 535 (7th Cir. 1980) .........................13

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006).......................................................13

**UNITED STATES DISTRICT COURT CASES:**

*Applied Indus. Meterials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934 (N.D. Ill. 2000) .........7

*Bensinger v. Denbury Res. Inc.*, No. 12-cv-6968
    2011 WL 3648277 (E.D.N.Y. Aug. 17, 2011)................................................................................9

*Casville Invs., Ltd. v. Kates*, 2013 WL 3465816 (S.D.N.Y. July 8, 2013) ...............................7, 8, 9

*McCoy v. Gamesa Tech. Corp., Inc.*, No. 11-c-592
    2012 WL 245162 (N.D. Ill. Jan. 26, 2012) ............................................................................10, 12

*Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39 (D. Mass. 2006) ...................................10

## I. INTRODUCTION

After more than two years of motion practice and discovery, Defendant comScore, Inc. ("comScore") moves to dismiss the claims of Plaintiffs Mike Harris, Jeff Dunstan ("Plaintiffs"), and the Class and Subclass (collectively the "Class") under Rule 12(b)(3). comScore's motion—effectively seeking transfer to the Eastern District of Virginia—should be denied for two principal reasons. First, comScore has no right to enforce the forum clause on which it relies to argue in favor of transfer. Second, even if comScore could enforce the clause, it long ago waived that right by repeatedly foregoing opportunities to develop and present its venue challenge.

On the first point, comScore's entire motion relies on a forum clause contained in User License Agreements ("ULAs") which comScore is not party to. Indeed, the ULAs themselves make clear that the contracting parties are the consumers (termed "Panelists") and comScore's separately incorporated subsidiaries (called "Sponsors"), which distribute the branded versions of comScore's OSSProxy software to Panelists. The ULAs plainly state that they constitute the entire agreement between the Panelists and Sponsors, and that no third parties have rights to enforce the forum clause. Accordingly, as a third-party that has no right to seek enforcement of the ULAs' forum-selection clause, comScore's motion can be denied on this basis alone.

On the second issue, the renewed motion to dismiss is untimely as comScore long ago waived any right it may have had to seek transfer. Indeed, in denying comScore's first Rule 12(b)(3) motion over two years ago, the Court recognized comScore's right to develop the record and renew its motion with evidence that it could seek to enforce the forum clause. But comScore chose not to do that. Instead, it defended the case on the merits and passed up multiple opportunities—at the beginning of the case and at several other points along the way—to present the facts supposedly demonstrating that the case should be sent to Virginia. comScore tries to

ignore its failure to act until now and argues its renewed motion is timely because supposedly "new facts" only recently came to light through briefing on the class certification issue (Dkt. 243 [cited as "Def. Br."] at 3.). That argument is flawed for at least two reasons:

- Since its position has always been that it could enforce the forum clause, comScore supposedly already had the facts necessary to support transfer, but for whatever reason, chose never to present them; and

- Even assuming *arguendo* such facts only recently came to light in the class certification briefing (they didn't), then a more appropriate time for comScore to renew its motion would have been in January (when Plaintiffs moved for class certification), or April (when the Court issued its Certification Order), or June (when the Seventh Circuit declined to hear comScore's 23(f) Petition), or July, August, or September. Yet comScore sat on these "new facts" for almost a year, making its motion untimely and, if granted, the cause of severe prejudice to Plaintiffs and the Class.

Ultimately, comScore's arguments flow from the fundamental misapprehension that Plaintiffs have changed their story by supposedly arguing on certification that they accepted its ULA. But that's not what Plaintiffs argued. Rather, Plaintiffs' position is that while they accepted the Sponsors' Downloading Statements[1] (which do not contain the forum clause) and ULA in the case of Dunstan, comScore is not party to those agreements and had no right to collect any data pursuant to their terms (or enforce the forum clause for purposes of its renewed motion). Thus, while comScore cries afoul about how the Second Amended Complaint supposedly contradicts Plaintiffs' arguments on certification by alleging they never consented to comScore's ULA, in reality, no conflict exists—the ULA is between Plaintiffs (and the Class) and the brand Sponsors. Although that argument may be lost on comScore, the Court understands its import. (*See e.g.*, Dkt. 186 at 9.) (finding that one of the common issues in the case is whether comScore altogether lacked consent to collect the data from the Class since

---

[1] As laid out in the certification briefing, Harris was never presented with a hyperlink to the ULA, so could have only accepted the Downloading Statement, making him part of the Subclass. While Dunstan does not specifically recall clicking on the hyperlink to the ULA and reading its terms, he does not dispute that he clicked the "Accept" button, agreeing to the ULA.

Plaintiffs allege it is not a party to the ULA governing the software's download and installation).

comScore's motion to dismiss should be denied.

**II.    BACKGROUND**

***comScore grabs troves of data from consumers through separately incorporated subsidiaries who bundle comScore's monitoring software with free online content.***

comScore makes its money by collecting and analyzing data about individuals' Internet behavior, measuring their activities, and selling that information to its clients. (*See* Dkt. 180 at ¶¶ 1 – 3; Dkt. 156-1 at 140:12 – 25.) To gather the data, comScore developed proprietary software, known as OSSProxy, that continuously collects and sends data obtained from consumers (the Panelists) back to comScore. (*See id.* at 9:5 – 15; Dkt. 156-3 at 3 – 6.)

Rather than distribute OSSProxy itself, comScore uses separately incorporated subsidiaries (known as "Sponsors"). (*See* Ex. A,[2] Transcript of Rule 30(b)(6) Deposition of Michael Brown ("Brown Tr."), at 74:9 – 79:22.) Those Sponsors then distribute their own (functionally identical) "brands" of OSSProxy to consumers. (*See* Dkt. 156-4 at 6.) As far as the brands relevant to this litigation are concerned, the Sponsors don't offer OSSProxy directly to consumers. (*See* Dkt. 154 at 12 – 17.) Instead, they distribute the software through third party "bundling partners," who package OSSProxy with numerous types of free "bundled software," such as video file conversion programs, photo editors, and more. (*See* Dkts. 156-4, 156-5.)

Once a user has downloaded the bundled software and has agreed to the bundled software's terms, the user is presented with the "Downloading Statement" for a Sponsor's brand of OSSProxy, which is described as necessary "in order to provide this free download." (Dkt. 154 at 14 – 15.) The Downloading Statement contains a brief description of the relevant OSSProxy brand, requires the user to select "Accept" before OSSProxy is installed, but never

---

[2]    Throughout this Response, citations to exhibits refer to the exhibits attached to the Declaration of Rafey S. Balabanian ("Balabanian Decl."), filed concurrently herewith.

indicates whether installation of the bundled software can proceed if "Decline" is selected. (*Id.*)

None of the Downloading Statements contain the full terms governing OSSProxy's download, installation, or use, and none contain the venue clause at issue here. (*See* Dkt. 156-5.) Instead, each Downloading Statement contains a hyperlink to the relevant *Sponsor's* ULA and privacy policy. To view the ULA, a user is required to—while installing the bundled software—navigate to the separate website containing the ULA. Subclass members, however, did not have that same opportunity—their Downloading Statements lacked any functional hyperlink to the full ULA or any instructions for accessing it. (*See* Dkt. 180 at ¶ 37.)

On the off chance a user locates a Sponsor's ULA, he or she would see no mention of comScore as a party. That's because each of the "materially identical" ULAs, (Dkt. 156-4 at 6), make clear that the only contracting parties are the Panelist and the Sponsor. (*See* Ex. B (ULA stating "ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between sponsor and you with respect to the subject matter contained in the Agreement."), *see also* Dkt. 156-1 at 128:16 – 129:6 (Rule 30(b)(6) designee agreeing that the ULAs are agreements "between the [users] and the brand that they signed up for."); Dkt. 186 at 9 (recognizing that comScore "is not listed as a contracting party.").) For example, for RelevantKnowledge—the "brand" most central to this case—the ULA provides that "[t]he program sponsor is *TMRG, Inc.*, a Delaware U.S.A. corporation," asserts that *TMRG* complies with various privacy requirements, welcomes users to direct "questions about the [ULA]" to *TMRG's* "Privacy Office," and offers a *TMRG* email address "for any support issues." (*See* Ex. B at 7 – 8 (emphasis added.).)[3] What's

---

[3] Before telling the user to "review and agree to the terms and conditions below," the ULA mentions that information collected by OSSProxy might be "used" by comScore, but the actual collection, protection, and management of such information is the *Sponsor's* responsibility. (*See* Ex. B at 2.) The Downloading Statement does not mention that comScore is involved in the collection process at all, even though discovery has shown that *only* comScore collects information through OSSProxy. (Brown Tr. at 74:9 – 80:6.)

more, each ULA includes a "Third Party Rights" clause, stating that "[t]his agreement shall not create any rights or remedies in any parties other than the parties to the agreement and no person shall assert any rights as a third party beneficiary under this agreement." (*Id.* at 7.) As such, while each ULA included a forum selection clause, those clauses do not reference third parties, were only binding on customers in disputes with "the brand that they signed up for," and are not enforceable by any third parties, including comScore. (*See* Dkt. 156-1 at 128:16 – 129:6.)

### ***Plaintiffs sued to end comScore's conduct and the Court certified a Class to assess the existence and scope of panelists' contractual relationships with comScore.***

While installing bundled software, Plaintiffs each installed branded versions of OSSProxy and clicked "Accept" when prompted by the Downloading Statements. (*See* Dkt. 156-16, No. 1; Dkt. 156-17, No.1.) After discovering that OSSProxy was installed on their computers and siphoning data about them, Plaintiffs filed their class action complaint alleging violations of the Stored Communications Act, the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, the Illinois Consumer Fraud Act, and unjust enrichment. (Dkt. 1.)

Immediately after filing their initial complaint, Plaintiffs sought leave to conduct expedited discovery, to prevent the destruction of relevant information possessed by comScore's then-unknown third party partners. (Dkt. 6.) After reaching an agreement with Plaintiffs on the expedited discovery, comScore filed its first Rule 12(b)(3) motion, arguing, as it does here, that Plaintiffs and all Class members assented to "comScore's [ULA]" as part of OSSProxy's installation, which contained a forum selection clause. (*See* Dkt. 15 at 5.) The Court denied comScore's motion, holding that Plaintiffs' complaint alleged that the forum clause would not have been apparent to a reasonable consumer downloading the bundled software. Crucially, though it denied the motion, the Court invited comScore to provide it with "further factual development" showing that it could seek to enforce the forum clause. (*See* Dkt. 31 at 4 – 5.)

5

Rather than immediately producing evidence to support its venue challenge, though, comScore proceeded to defend the litigation on the merits, moving to bifurcate discovery and compiling evidence to oppose Plaintiffs' forthcoming motion for class certification. (*See* Dkts. 66, 87.) When Plaintiffs moved for certification (when comScore says Plaintiffs conceded their assent to its terms), comScore again chose not to challenge venue, and even acknowledged that it was a dead issue. (*See* Dkt. 175 at 29 n.14 ("[T]he court has already refused to enforce the forum selection clause in the ULA.").)

In its Certification Order, the Court identified several predominating common issues, including: "whether comScore is a party to the ULA and the Downloading Statement in light of the fact that it is not identified as a contracting party," "what rights comScore has under the ULA and the Downloading Statement as a third-party beneficiary to use the information OSSProxy collects," and "the scope of the consent plaintiffs granted to comScore by agreeing to the ULA and the Downloading Statement." (*Id.* at 9.) comScore then sought appeal to the Seventh Circuit, arguing that, *inter alia*, the Certification Order's references to and use of the ULA (i.e., that it "applies to all members of the primary class") meant that comScore should be able to enforce the forum clause and compel arbitration by a Virginia court. (*See Dunstan v. comScore*, No. 13-8007, Dkt. No. ("App. Dkt.") 8-2, at ¶ 10 (7th Cir. May 8, 2013).) Not persuaded by comScore's argument, the Seventh Circuit declined to accept its 23(f) Petition.

The case was sent back to this Court in June of this year, but comScore chose not to raise its venue challenge for another four months. Instead, and as set forth in the Parties' Rule 26(f) planning conference report and in the jointly filed Civil Form 52, comScore agreed that discovery should "commence . . . immediately." (Dkt. 209 at § 3.) Accordingly, comScore produced tens of thousands of documents, engaged in substantive motion practice and almost a

6

dozen motion-related hearings (and status conferences), conferred numerous times over various discovery issues, and otherwise continued toward trial in this Court. At no point during any of that did comScore indicate that it planned to renew its venue challenge.

Eventually, more than two years after the case was filed and nearly a year after it claims the facts supporting transfer came to light, on October 30, 2013, comScore renewed its Rule 12(b)(3) motion to dismiss. In its motion, comScore again argues the case should be dismissed based on the forum clause in the ULA requiring litigation in Virginia.

## III. ARGUMENT

### A. The ULAs dictate that comScore cannot enforce the forum selection clauses.

comScore's motion fails because it relies on a forum clause that it cannot enforce. That is, each Sponsor's ULA, on its face, is strictly between that Sponsor and a user. Each also contains a full integration clause and a clause precluding the claim or enforcement of third party rights, meaning that comScore—as a non-party—has no right to litigate in Virginia. "Under Illinois law, the fundamental principle of contract interpretation is to give effect to the intent of the parties, which is determined by examining the language of the contract." *Applied Indus. Meterials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 939 (N.D. Ill. 2000). Where a contract "expressly states that it confers no rights on any party not a party to the contract," that intent is given effect. *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995).

That axiom extends to forum-selection clauses—if the contracting parties agree that a contract confers no third party rights, the forum clause is binding only among the parties unless it specifically states otherwise. *See Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012) (Contracting parties can "decide in the contract whether to limit the forum selection clause to the named entities."); *see also Casville Invs., Ltd. v. Kates*, No. 12-cv 6968

7

RA, 2013 WL 3465816, at *6 (S.D.N.Y. July 8, 2013) ("As the Agreement clearly states that no rights or remedies are conferred to nonparties, Plaintiffs cannot rely on the forum selection clause in the Agreement as a basis for finding that jurisdiction or venue is proper in this Court.").

comScore casually asserts—in one sentence and without citation to any provision in the ULAs—that it is obviously party to those agreements. (*See* Dkt. 243 at 9). comScore is wrong as the ULAs themselves expressly state otherwise. Indeed, each ULA identifies the contracting parties as *only* the users and the Sponsors, (*see* Ex. B at 7; *see also* Dkt. 186 at 9 (recognizing that comScore "is not listed as a contracting party.")), and holds the Sponsors out as distinct entities, (*see id.* at 7 – 8 ("The program sponsor is TMRG, Inc.")), contracting independently from comScore. (*See* Dkt. 156-1 at 128:16 – 129:6 (stating that each ULA is an agreement "between the [users] and the brand that they signed up for").) And, comScore went to great lengths to ensure that it was *not* named as a party to the ULAs or treated as such. (*See, e.g.*, CS0071631, Ex. C ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CS0042536, Ex. D ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis in original). The ULAs even go further, with full integration clauses limiting both the scope of and parties to the agreements, (*see* Ex. B at 7 (recognizing that "ENTIRE AGREEMENT" is "between the sponsor and you")), and a clause waiving third party rights, (*Id.*), evincing an intent to limit the contracting parties to the users and the Sponsors.

Thus, by naming *only* the user and the Sponsor as parties to the ULA, and including a "no third party rights" clause, the ULAs preclude comScore from enforcing the forum clause. *See Adams*, 702 F.3d at 442; *Golden*, 53 F.3d at 870; *Casville Invs., Ltd.*, 2013 WL 3465816, at *6 (disclaimer of third party rights "excludes shareholder from the agreement and from the reach of

the forum clause specifically") (discussing *Bensinger v. Denbury Res. Inc.*, No. 10-cv-1917 JG, 2011 WL 3648277, at *5 – 6 (E.D.N.Y. Aug. 17, 2011).)

Nor can comScore enforce the forum clause simply because the Sponsors are its subsidiaries. (*See* Def. Br. at 7.) Although corporate parents generally are able to enforce their subsidiaries' forum clauses, the law "let[s] the parties decide in the contract whether to limit the forum selection clause to the named entities." *Adams*, 702 F.3d at 442. Because the ULAs only list the Sponsors and users as parties and exclude *any* third party from enforcing the forum clause, comScore's status as a corporate parent doesn't give it any right to litigate in Virginia. *See Adams*, 702 F.3d at 442; *Casville Invs., Ltd.*, 2013 WL 3465816, at *6 (shareholder (i.e., an owner, like comScore) could not enforce subsidiary's forum clause); *Bensinger*, 2011 WL 3648277, at *5 – 6 (same).

In the end, comScore is precluded from enforcing the ULAs' forum selection clauses and its motion to dismiss should be denied on that basis alone.[4]

**B.     comScore waived any right to invoke the forum-selection clause by failing to promptly seek its enforcement, and participating in extensive and costly litigation.**

comScore waived any right to seek transfer by committing to litigation in this Court, rather than promptly developing its venue challenge. When determining whether a defendant's delay has waived its right to challenge venue, "[t]he relevant factors include whether the allegedly defaulting party acted diligently, participated in litigation or discovery, substantially

---

[4] Regardless of comScore's status as a party or non-party under the ULA, it has no colorable argument that it could enforce the forum clause against Harris and the Subclass because discovery has confirmed—and comScore does not dispute—that they were never presented with a functional hyperlink to the ULA (which included the forum selection clause) or with instructions for viewing the ULA. (*See* Dkt. 186 at 3 n.2.). As the Court explained the first time it ruled on comScore's Rule 12(b)(3) motion, "a click-through agreement is not enforceable if its terms are not reasonably apparent to the user," and where "the location of the license agreement [is] not readily apparent . . . the forum-selection clause [is] not reasonably communicated." (Dkt. 31 at 4.) Thus, as to the Subclass, there is no question that the forum clause is unenforceable.

9

delayed the request to enforce the forum selection clause, or caused prejudice to the other party." *McCoy v. Gamesa Tech. Corp., Inc.*, No. 11-cv-592, 2012 WL 245162, at *2 (N.D. Ill. Jan. 26, 2012) (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)). On each front, comScore has waived its venue challenge. It substantially delayed its request and failed to diligently pursue and present it; it participated extensively in litigation and discovery, foregoing multiple opportunities to renew its motion; and its untimely motion, if enforced, would substantially prejudice the Class. As such, comScore has waived any right to enforce the forum clause and its motion should be denied.

> i. *comScore waived any right to challenge venue by failing to diligently pursue, support, and renew its motion.*

Since the Court denied comScore's first 12(b)(3) motion, comScore has foregone repeated opportunities to develop and reassert its venue challenge resulting in waiver. Even where (as here) a defendant raises a venue defense in its answer, nominally avoiding waiver under Rule 12(h), it may still waive that defense "by submission through conduct." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296 – 97 (7th Cir. 1993); *see also Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 41 – 42 (D. Mass. 2006) (collecting cases).

Submission through conduct occurs where the defendant "by words or actions misleads the plaintiff into thinking [venue is appropriate] or the court into becoming involved in the case so that there would be wasted judicial effort were the case dismissed into another forum." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887 – 88 (7th Cir. 2004). Thus, although they "literally [may] compl[y] with Rule 12(h)," where defendants "participate in lengthy discovery, file various motions and oppose a number of motions," they do "not comply with the spirit of the rule, which is to expedite and simplify proceedings in Federal Courts," and the Court can "properly conclude that the defendants' delay in urging this threshold issue

manifests an intent to submit to the Court's jurisdiction." *Cont'l Bnk,* 10 F.3d at 1297.[5]

comScore first challenged venue in its initial Rule 12(b)(3) motion, arguing that as a part of OSSProxy's installation process, each panelist must have assented to comScore's ULA which contained a forum selection clause. (*See* Dkt. 15 at 1.) The Court denied the motion, holding that Plaintiffs alleged that the terms of the ULA were not reasonably accessible and that none of the extrinsic evidence produced by comScore disproved Plaintiffs' allegations. (Dkt. 31.) As part of its ruling, though, the Court invited comScore to conduct discovery and develop the facts necessary to support its challenge if it wished to renew its motion. (*Id.* at 4 – 5.) Instead of heeding the Court's advice, comScore proceeded with litigation, moving to bifurcate discovery and then engaging in extensive discovery relevant to class certification. (*See* Dkts. 67, 175, 176.) In fact, during the 15 months between the denial of its Rule 12(b)(3) motion and Plaintiffs' filing of their class certification brief, comScore completely abandoned its venue challenge, even filing another Rule 12 motion, but on different grounds. (*See* Dkt. 52.)

After class discovery ended on January 15, 2013, Plaintiffs moved for class certification, where according to comScore, they supposedly made clear for the first time that they assented to the forum clause. (Dkt. 154.) But despite its contention that Plaintiffs' motion conceded assent, comScore raised no such challenge at that time. Instead, comScore—in 30 pages of briefing and 23 attached exhibits—argued that: consent to its data collection is an individualized issue, (Dkt. 175 at 20), actual collection would vary from person to person, (*id.* at 22), statute of limitations defenses would be individualized, (*id.* at 27 – 28), damages would be individualized, (*id.* at 28), computers running OSSProxy are not "facilities" under the SCA's definition, (*id.* at 32), and more. (*See Id.* at 32 – 36.) What comScore didn't challenge, either as part of or along with its

---

[5] *Cf. Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995) (recognizing that forum-clause based venue challenges are subject to Rule 12(h)(1)'s requirements, and must be asserted "at the earliest possible opportunity.")

11

opposition to certification, was that venue is proper in this Court, even though it was undoubtedly aware of the defense. (*See Id.* at 29 n.14.) It wasn't until comScore sought appeal to the Seventh Circuit that it hinted about its venue challenge. (*See* App. Dkt. 8-2, at ¶ 10.)

But when comScore's petition to appeal was denied and it found itself back in this Court, it again abandoned its venue challenge. Rather than renewing its motion, i.e., by relying on the supposed new information that showed it could enforce the forum clause, comScore chose to prepare for trial. It engaged in a second Rule 26(f) planning conference and prepared a joint Civil Form 52 statement, wherein it agreed that merits discovery should "commence . . . immediately," (Dkt. 209 at § 3.),[6] and thereafter produced tens of thousands of documents, a half dozen witnesses for deposition, filed and responded to substantive motions, including to compel, and engaged in dozens of hearings with the Court (*see* Dkts. 200-279). Throughout this process, comScore never once suggested delaying class or merits discovery pending resolution of a renewed venue challenge. Instead, comScore gave every indication—through both words and conduct—that it intended to proceed with the litigation in this Court.

In light of its actions, comScore has not only stalled in reasserting its venue challenge, it has done so while engaging in litigation and discovery consistent with tacit approval of this forum. *See McCoy*, 2012 WL 245162, at *2. The Court made clear that if comScore wanted to challenge Plaintiffs' choice of forum, it was to present the Court with evidence that Plaintiffs' allegations are incorrect and the forum clause is enforceable. (*See* Dkt. 31 at 5 – 6.) Instead, comScore, as was and is its right, chose to focus its efforts on certification and the merits. By doing so, however, comScore demonstrated that its venue strategy has been to wait and "see how

---

[6] Indeed, comScore had a *duty* to raise its venue challenge during the June 19th Rule 26(f) planning conference, where comScore agreed *without limitation* "to commence merits-based discovery on [Plaintiffs'] claims immediately, pending the Court's lifting of the stay [that was] in place in the case," (Dkt. 209 at §§ 3, 3(b)), and omitted its intention to, once it was ready, challenge venue again when reporting "Other Matters" relevant to setting a discovery, motion, and trial schedule. (*Id.* at § 4(k)).

the case was going in [this] federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose." *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 2009); *see also Frietsch*, 56 F.3d at 830 (venue must be challenged "at the earliest possible opportunity."). That's not appropriate.

      *ii.*      *Granting comScore's untimely motion would prejudice the Class.*

Enforcing comScore's venue challenge after it has repeatedly chosen to proceed in this forum would prejudice the Class and waste scarce judicial resources. As it relates to venue, "[p]rejudice may be found . . . in delay or by reason of extensive discovery," *Midwest Window Sys., Inc. v. Amcord Indus., Inc.*, 630 F.2d 535, 537 (7th Cir. 1980), and requires no harm "beyond what is inherent in an effort to change forums in the middle . . . of a litigation." *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).[7]

Here, because of comScore's repeated decisions to litigate in this Court, Plaintiffs have already engaged in (and the Court has overseen) substantial motion practice and discovery. If comScore's motion succeeds, the Parties will need to expend considerable time, effort and expense to resume the proceedings, including setting a new schedule for the remainder of the case, engaging in duplicative motion practice, and more generally just getting the transferee court up to speed on the case. Undoubtedly, these efforts will delay the proceedings and increase the expense to all parties, which will certainly cause prejudice.[8] *See Omega Patents, LLC v. Lear*

---

[7] Although both *Midwest Window Systems* and *Cabinetree* analyzed waiver of the right to compel arbitration, both apply here because an arbitration clause is simply a "species of forum selection clause." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009).

[8] Further still, as comScore foreshadowed in its Rule 23(f) petition, if the case is transferred to Virginia, it will likely move to compel arbitration. (*See* App. Dkt. 1 at 7.) And if the class is forced to arbitrate, it is unclear whether the (effectively unappealable) arbitration would take place on a class-wide basis, or whether the millions of absent class members would lose their only opportunity to feasibly litigate their claims. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (recognizing, for claims seeking $1,000 in statutory damages, that "Rule 23(b)(3) was designed for situations such as

13

*Corp.*, 607-CV-1422-ORL35DAB, 2009 WL 1513392, at *4 (M.D. Fla. May 27, 2009) (noting that the delay inherent in transfer, while the transferee court receives the case, reviews it and fits it in to its docket).

Thus, dismissing the case in favor of transfer would substantially prejudice the Class.

> iii. *Like every other Class member, Plaintiffs clicked the "accept" button during the download process, but never assented to any contract with comScore.*

comScore's final argument, that Plaintiffs exclude themselves from the Class by challenging comScore's ability to enforce the forum clause, is disingenuous at best, and relies on two falsities: (i) that Plaintiffs have changed their stories about whether they agreed to comScore's ULA, and (ii) that the Certification Order held that "every member of the class did agree to comScore's terms." (Def. Br. at 11.) Neither happened.

Since filing, Plaintiffs have maintained that OSSProxy's installation process is deceptive, that they had no idea they were installing OSSProxy, and that they clicked "Accept" when prompted by the Downloading Statements, but nevertheless, did not assent to any agreement with comScore. (*See* Dkt. 1 at ¶¶ 38 – 40, 69; Dkt. 169 at ¶¶ 37 – 39, 66.) Such allegations are consistent with the theory that Plaintiffs and the Class didn't consent to comScore monitoring their computers and instead, that any agreement was with—and only with— the Sponsors. Plaintiffs' position remained constant throughout their certification briefing. (*See* Dkt. 154 at 13 – 16, 28 – 30; Dkt. 184 at 8 – 12.)

The Court understood and agreed with Plaintiffs' position. Nowhere in its 20-page opinion did the Court hold that Class members assented to contracts with *comScore*, much less that Class membership was contingent on contracting with comScore. (*See id.* at 20.) In fact, two of the central, common questions identified by the Court recognize that comScore was written

---

this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.").

14

out of the ULAs. (*Id.* at 9 (common questions include "whether comScore is a party to the ULA and the Downloading Statement *in light of the fact that it is not listed as a contracting party*" and "what rights comScore has under the ULA and Downloading Statement.") (emphasis added).) Thus, there is no conflict between Plaintiffs' position (i.e., that they clicked "Accept" when presented with the Downloading Statements, but never contracted with comScore) and the Certification Order, which recognized a common question *open for resolution on the merits* of whether comScore was a party to any agreement with the Class.

Hence, Plaintiffs' reasoning underlying their denial of comScore's request to admit that "they accepted comScore's [ULA]" is clear. (Def. Br. At 6.) As Plaintiffs' counsel explained to comScore's attorneys during the referenced September 26, 2013 meet and confer, (*Id.* at 4), Plaintiffs' position is that comScore is not party to the ULAs that they accepted. Interestingly, while comScore points out that Plaintiffs "advised that they would not revise their responses," it fails to mention that Plaintiffs' counsel actually suggested that if comScore were to issue a more precise request asking whether Plaintiffs assented to the *Sponsors'* ULAs, the answer would be different. (*See* Balabanian Decl. at ¶¶ 2-7.). For whatever reason, comScore chose not to propound any new request (*Id.* at ¶ 7), which is its prerogative. The record should be abundantly clear, though, that Plaintiffs have been have been straightforward all along.

comScore's attempt to present a false choice between transfer and class membership fails. Plaintiffs are Class members, and they never contracted with comScore.

III.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny comScore's renewed motion to dismiss, and award such other and further relief as it deems equitable and just.

15

Respectfully submitted,

**MIKE HARRIS** and **JEFF DUNSTAN**, individually and on behalf of a class of similarly situated individuals,

Dated: November 22, 2013   By: s/     Rafey S. Balabanian
  One of Plaintiffs' Attorneys

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
Benjamin S. Thomassen
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
cgivens@edelson.com
bthomassen@edelson.com

**CERTIFICATE OF SERVICE**

       I, Benjamin S. Thomassen, an attorney, hereby certify that on November 22, 2013, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendant's Renewed Motion to Dismiss Under Rule 12(b)(3)***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 22nd of November, 2013.

                                                    s/ Benjamin S. Thomassen