IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals, | Case No. 1:11-cv-5807 |
| Plaintiffs, | Hon. James F. Holderman |
| v. | Magistrate Judge Young B. Kim |
| COMSCORE, INC., a Delaware corporation, | |
| Defendant. | |

**PLAINTIFFS JEFF DUNSTAN'S AND MIKE HARRIS'S
MOTION TO COMPEL THE DEPOSITION OF MAGID ABRAHAM**

Plaintiffs Jeff Dunstan and Mike Harris (together, "Plaintiffs") through their undersigned counsel, respectfully move this Court pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2 to enter an order compelling comScore Inc.'s ("comScore") President, Co-Founder, and Chief Executive Officer, Magid Abraham, to appear and give testimony at a deposition. In support of this motion, Plaintiffs state as follows:

**I.  INTRODUCTION**

Plaintiffs' allegations in this case center on comScore's unauthorized collection of personal information from a certified nationwide Class and Subclass of consumers through its tracking software, OSSProxy. To support certain aspects of their case, Plaintiffs seek testimony from Magid Abraham, a comScore executive whose long-term and high-level involvement with the development of OSSProxy and comScore's Third Party Application Provider ("TAP") recruitment program uniquely qualify him to speak about a broad range of topics relevant to Plaintiffs' claims. As President, co-founder and CEO of comScore, Mr. Abraham had a central role in, *inter alia*, comScore's decisions to (i) target and collect certain categories of personal

1

information from panelists, (ii) "fuzzify" personally identifiable information ("PII") collected by OSSProxy, and (iii) utilize the TAP recruitment process to distribute OSSProxy to consumers—all of which are directly relevant to Plaintiffs' claims. To date, comScore has refused to produce Mr. Abraham, asserting that he does not possess any unique or personal knowledge relevant to Plaintiffs' allegations, and deserves protection from Plaintiffs' purported "harassment" due to his executive status.

comScore's position is flawed for three principal reasons. First, Mr. Abraham's status as an executive does not exempt him from testifying in this matter, nor does it shift the burden to Plaintiffs to demonstrate why his testimony is necessary. Second, comScore's assertion that Mr. Abraham lacks any relevant knowledge disregards the reality reflected by the available evidence, which shows that Mr. Abraham participated (and continues to participate) in important decisions regarding the development, maintenance, and marketing of OSSProxy. Third, comScore's document production, along with the testimony of its own employees (including testimony from its Chief Research Officer and Vice President of Panel Operations) unmistakably demonstrates that Mr. Abraham is the *only* employee at comScore who can testify as to certain matters centrally relevant to this case.

As such, comScore's refusal to produce Mr. Abraham is improper, and Plaintiffs—along with the Class of consumers they represent—are entitled to his testimony. Plaintiffs therefore ask this Court to compel Mr. Abraham's appearance.

## II. FACTUAL BACKGROUND

### A. Plaintiffs Notice—But comScore Refuses to Produce—comScore's CEO, Magid Abraham, For Deposition.

On April 2, 2013, the Court certified a nationwide Class and Subclass of individuals who assert claims against comScore for alleged violations of the Stored Communications Act

2

("SCA"), the Electronic Communications Privacy Act ("ECPA"), and the Computer Fraud and Abuse Act ("CFAA") relating to its data collection practices using OSSProxy and the TAP program. (Dkt. 186 at 1, 19–20.) Following certification of the Classes, the Court instructed the Parties to proceed with merits discovery, and ordered that "[a]ll fact discovery shall be noticed in time to be completed by [December 20, 2013]." (Dkt. 210.)

Following their initial review of comScore's document production, Plaintiffs scheduled (and took) the depositions of five key comScore employees, including certain senior officers. (Declaration of Rafey S. Balabanian ("Balabanian Decl."), filed concurrently herewith, at ¶ 2.) Based on Plaintiffs' further review of comScore's document production—and later confirmed through testimony obtained during this first round of depositions on merits issues—Plaintiffs noticed the depositions of four more comScore employees, including Magid Abraham, on November 1, 2013. (*See* Ex. A to the Balabanian Decl.[1]). Of these, comScore produced two of the four witnesses for depositions—Richard Weaver, comScore's Deputy Privacy Officer, and Joshua Chasin, comScore's Chief Research Officer—but indicated its intention to object to Mr. Abraham's deposition. (*See* Balabanian Decl. at ¶ 3; *see also* Dkt. 254 at 3, n.1.)

Through a letter dated November 18, 2013, comScore formally objected to the noticed deposition of Mr. Abraham, and stated that it would not produce him for deposition. (*See* Balabanian Decl. at ¶ 5; *see also* Ex. B to the Balabanian Decl.) As grounds for its objection, comScore cited Mr. Abraham's executive status, stated that he was not involved in "the day-to-day development and maintenance of the comScore software" and lacked any "unique or personal knowledge" of the issues surrounding Plaintiffs' claims, and then concluded, without further explanation or discussion with Plaintiffs' counsel, that his deposition was apparently noticed "for no purpose other than harassment." (Ex. B at 1).

---

[1]     All references to Exhibits in this Motion refer to Exhibits attached to the Balabanian Decl.

3

Through a letter dated November 27, 2013, Plaintiffs responded and outlined the reasons why Mr. Abraham's testimony was necessary for the prosecution of their case. (*See* Ex. E to the Balabanian Decl.) There, Plaintiffs explained that (i) Mr. Abraham played a central role in comScore's decisions to fuzzify and collect certain categories of Panelist data, (ii) these early and ongoing decisions are crucial to their claims, and (iii) Mr. Abraham was therefore best suited to testify about such decisions at comScore. (*Id.*) Shortly thereafter, on December 4, 2013, the Parties met and conferred regarding Mr. Abraham's deposition. (Balabanian Decl. at ¶ 9.) During that call, Plaintiffs explained that Mr. Abraham's deposition was necessary because, among other reasons, comScore had refused to produce *any* individuals capable of testifying to the "decision-making" processes at the company regarding its data collection practices—despite Plaintiffs' intent to seek such testimony, as reflected by their Rule 30(b)(6) deposition notice on merits issues—and that such testimony was relevant to proving comScore's intent under the SCA, ECPA, and CFAA. (*Id*; *see also* Ex. F to the Balabanian Decl.) Through an email dated December 6, 2013, comScore reiterated its objections to Mr. Abraham's deposition, but agreed to produce Rule 30(b)(6) designees capable of testifying to Plaintiffs' "decision-making topics." (*See* Ex. G to the Balabanian Decl.)

> **B.**   **The Depositions of comScore's Chief Research Officer, Josh Chasin and Vice President of Panel Operations, John O'Toole Demonstrate Mr. Abraham's Unique Knowledge Relating to Plaintiffs' Claims.**

On December 13, 2013, Plaintiffs deposed Joshua Chasin, comScore's Chief Research Officer. (Balabanian Decl. at ¶ 11.) During his deposition, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.*) Specifically, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

4



(*See* Ex. H to the Balabanian Decl.) During his deposition, Mr. Chasin testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Balabanian Decl. at ¶ 11.)

Similarly, on November 21, 2013, Plaintiffs deposed John O'Toole, comScore's Vice President of Panel Operations. (*Id.* at ¶ 7.) Mr. O'Toole was asked about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*; *see also* Ex. C to the Balabanian Decl.) For his part, Mr. O'Toole explained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . (*Id.* at ¶ 7; *see also* Ex. D to the Balabanian Decl.)

**C.    The Parties Met and Conferred, But Were Unable to Resolve Their Disputes.**

Through a letter dated December 17, 2013, Plaintiffs' counsel expressed to comScore's counsel that they believed the Parties had exhausted their meet and confer obligations pertaining to the noticed deposition of Mr. Abraham, and intended to move the Court to compel his testimony. (Balabanian Decl. at ¶ 12; *see also* Ex. I to the Balabanian Decl.)

**III.   ARGUMENT**

comScore lacks any basis for avoiding relevant discovery by refusing to produce Mr.

5

Abraham for a deposition. It is well settled that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Thus, Rule 30(a)(1) provides that "a party may, by oral questions, depose *any* person, including a party, without leave of court." Fed. R. Civ. P. 30(a)(1) (emphasis added); *cf. Wilson v. O'Brien*, No. 07 C 3994, 2010 WL 1418401, at *2 (N.D. Ill. Apr. 6, 2010) (noting "general permissiveness" of Rule 30(a)(1) with regard to persons who may be deposed). In ruling on motions to compel discovery, courts consistently adopt a liberal interpretation of the discovery rules, "as the mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Spano v. The Boeing Co.*, No. 306-cv-00743-DRH-DGW, 2007 WL 4390366, at *1 (S.D. Ill. Dec. 14, 2007). Courts look unfavorably upon restrictions placed by litigants upon the discovery process, and the burden is upon the objecting party to show why a discovery request is improper. *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

As outlined below, Mr. Abraham's status as a comScore executive does not somehow place a burden on Plaintiffs to show that his testimony may lead to the discovery of admissible evidence. And even if it did, there is ample evidence showing that Mr. Abraham has personal knowledge about the central issues in this case and is uniquely situated to testify about critical issues regarding comScore's TAP recruitment program and the data collection practices of OSSProxy.

> **A.** **Mr. Abraham's Executive Status Neither Shields Him From the Discovery Process, Nor Places a Burden on Plaintiffs to Show Why His Deposition is Necessary.**

Although it admits Mr. Abraham is not "exempt from the discovery process," comScore implies that his status as an executive weighs in favor of precluding his deposition. (*See* Ex. B at

1.) As such, comScore suggests that Plaintiffs should demonstrate that Mr. Abraham has "unique or personal knowledge of the situation" before obtaining his testimony. (*Id.* (quoting *Last Atlantis Capital, LLC v. AGS Specialist Partners*, No. 04-C-0397, 2013 WL 4759581 (N.D. Ill. Sept. 4, 2013).) Any attempt by comScore to shift its burden to Plaintiffs fails at the outset.

To start, there is no rigid rule that imposes a burden on the *proponent* of a deposition to demonstrate an "apex" official's personal knowledge. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002). Rather, absent a showing by the objecting party, "[h]ighly placed executives are not immune from discovery." *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 469 (N.D. Ill. 2007). Though courts sometimes limit the depositions of high-level executives in order to protect them from harassment and abuse, *see Last Atlantis Capital,* 2013 WL 4759581, at *4, those considerations do not create a presumption against allowing executive depositions. Rather, they amount to a protective tool employed by courts that are applied to the particular circumstances of each case. *See In re Bridgestone*, 205 F.R.D. at 536. And while high-level executives might be occasionally subject to repetitive and harassing depositions, "the burden remains on [the objecting party] to demonstrate that a protective order is warranted." *Meharg v. I-Flow Corp.*, No. 108-CV-0184-DFH-TAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (internal citation omitted).

Unsurprisingly, courts that have excused executives from depositions generally do so on grounds that the executive was remote from the situation at issue. *See Perius v. Abbott Labs*, No. 07 C 1251, 2008 WL 3889942, at *9 (N.D. Ill. Aug. 20, 2008) (collecting cases in which protective orders were granted to "to [restrict] depositions of high-ranking officials . . . where the official was remote from the situation at issue."). But, as explained below, Mr. Abraham has been identified as (i) having personal knowledge of several key pieces to Plaintiffs' case (*see*

7

*supra*, § III.B) and (ii) being uniquely situated to answer certain of Plaintiffs' questions (*see supra*, § III.C), and—as the high-level executive with the longest tenure at comScore—can certainly speak to the actual policies instituted at/by comScore that are directly challenged by this case (e.g., comScore's decision to collect certain data from the Class, utilize its TAP program to do so, etc.).

In short, Plaintiffs need not rely on comScore's self-serving and unsupported contentions regarding Mr. Abraham's knowledge or lack thereof. Rather, they are entitled to test Mr. Abraham's knowledge for themselves—and should be granted the opportunity to do so.

### B. Mr. Abraham Has Personal Knowledge About the General Development and Deployment of OSSProxy and comScore's TAP Recruitment Process.

Even if Mr. Abraham was entitled to special protection from the Court, comScore's document production and testimony from its employees confirm that Mr. Abraham has unique, personal knowledge relevant to Plaintiffs' claims. Discovery has revealed that, given his tenure and position at comScore, Mr. Abraham is in a unique position to testify regarding key decisions about the development and operation of OSSProxy and comScore's TAP process. Indeed, because Mr. Abraham has been the key decision maker at comScore since its inception (and certainly since comScore's implementation of the TAP program and use of OSSProxy to collect data from the Class), he is the best possible individual to testify to these issues. As such, Plaintiffs are entitled to take his deposition.

Where, as here, a witness participated in corporate decision-making processes directly relevant to the claims at issue, courts generally find that the witness's knowledge justifies a deposition. *See In re Bridgestone*, 205 F.R.D. at 536 (allowing deposition where knowledge at high corporate levels was relevant to issues in the action); *see also Rock River Commc'ns, Inc.*, No. CV 08-635 CAS, 2009 WL 3841874, at *6 (C.D. Cal. Nov. 16, 2009) (allowing deposition

8

of executive who "was actively involved" in business decision central to the action); *see also In re Nat'l W. Life Ins. Annuities Litig.*, No. 05-cv-1018, 2011 WL 1304587, at *3 (S.D. Cal. Apr. 6, 2011) (allowing deposition where the witness made central decisions and had "ultimate authority" to take relevant actions). It's intuitive that "[w]here the motives behind corporate action are at issue," an opposing party usually must depose those officers who approved and administered the particular action because "individuals with greater authority may have the final word on why a company undertakes certain actions, and the motives underlying those actions." *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 97 (S.D. Iowa 1992).

The "motives" underlying comScore's decision to collect panelists' personal information (e.g., what data to collect, how to collect it, how to communicate that collection to Class members, what to do with the collected information, etc.) are at the heart of this case and precisely what Plaintiffs seek to uncover from Mr. Abraham's testimony. An understanding of these motives—and the business decisions that resulted therefrom—is critical because comScore's "intent" must be proven under the SCA, ECPA, and CFAA. *See* 18 U.S.C. § 2701(a); 18 U.S.C. § 2511(1)(a); 18 U.S.C. § 1030(a)(2)(c).

Next, and apart from these higher-level "decision-making" processes, comScore contends that Mr. Abraham is currently "not involved in the day-to-day development and maintenance of the comScore software." (*See* Ex. B.) But that's just not true, especially as it relates to his participation with the management and deployment of OSSProxy during the early- to mid-Class period (i.e., from 2005-2010). For example, comScore has produced documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. J to the Balabanian Decl.

9

( ).) This active management even extends to the finer details of OSSProxy. (*See, e.g.* Ex. D at 51:10–17 ( ).)

Likewise, discovery has shown . (*See* Ex. K to the Balabanian Decl. ( ); Ex. D at 53:8-11 ( ).) This involvement is, in itself, sufficient to establish that his knowledge is relevant. *See Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 103 (S.D.N.Y. 2001) (deposition allowed where CEO attended board meetings that were relevant to the litigation).

And if any additional evidence was needed, discovery has also revealed . (*See* Ex. L to the Balabanian Decl.) *See, e.g.*, *Google Inc. v. Am. Blind & Wallpaper Factory*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006) (allowing deposition of Google founder where a Google witness disclosed that a policy change "was the result of a concern that 'I think…came from Larry Page'").



In short, the available evidence hardly portrays Mr. Abraham as a detached executive who is occasionally "kept in the loop." Rather, it shows that Mr. Abraham has been very "hands on" with respect to comScore's data collection methodology throughout the Class period. His deposition testimony is, thus, both necessary and appropriate.

### C. comScore's Own Witnesses Have Identified Mr. Abraham as Having Unique Knowledge of comScore's TAP Program and the Development of OSSProxy.

Separate from his general and high-level involvement with comScore's data collection efforts, multiple deponents in this litigation have identified Mr. Abraham as the *sole* source of information regarding key aspects of comScore's TAP program and OSSProxy. The fact that Mr. Abraham has been *expressly* identified as the only individual at comScore with such unique knowledge shows that his deposition is warranted.

For example, during his December 13, 2013 deposition, Joshua Chasin—comScore's Chief Research Officer—was asked ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. (*See* Ex. H.) ████████████████████████████████████████████ ██████████████████████████████████████:

- ████████████████████████████
- ████████████████████████████████████████ ████████████████████████
- ████████████████████████████████████████ ████████████████████████
- ████████████████████████████████████ ████████████

11

- 

When Plaintiffs asked about the circumstances giving rise to the above-referenced email

. (Balabanian Decl. at ¶ 11.) When asked about who Plaintiffs should speak with at comScore regarding these same points,

. (*Id.*) And since

(*Id.*)

In another example, Plaintiffs' questioned John O'Toole, comScore's Vice President of Panel Operations, about an

███████████████████████████████████████

(*See* Ex. C.) In response to Plaintiffs' questions, Mr. O'Toole testified ██████████ ███████████████████████████████████████ ████████████████████████████ (Ex. D at 125:6–9.) Simply put, ██████████ ███████████████████████████████████████ ████████████████ And ████████████████████████████████ ███████████████████████████████████████ ████████████ as Plaintiffs' case challenges, *inter alia*, comScore's practice of surreptitiously installing OSSProxy on panelists' computers in order to collect and sell personal information to its clients. To the extent such practices were a conscious goal of comScore (████████ ████████████████████████████████████████), Plaintiffs deserve the chance to ask about them.

As shown by the above examples, Mr. Abraham is a clear source of unique information relevant to Plaintiffs' claims. He alone can offer testimony ████████████████████ ████████████████████████ (and subject of this lawsuit), or ████████████████ ███████████████████████████████████████ ████████████████████████████████████. His deposition should be compelled.

//

//

13

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully requests that the Court enter an order compelling the appearance and testimony of Magid Abraham at a deposition, and providing such other and further relief as the Court deems equitable and just.

                                                      Respectfully submitted,

                                                      **MIKE HARRIS** and **JEFF DUNSTAN,**
                                                      individually and on behalf of all others similarly situated,

Dated: December 20, 2013                    By: /s/_____
                                                          One of Plaintiffs' Attorneys

                                                      Jay Edelson
                                                      Rafey S. Balabanian
                                                      Chandler R. Givens
                                                      Benjamin S. Thomassen
                                                      EDELSON LLC
                                                      350 North LaSalle Street, Suite 1300
                                                      Chicago, Illinois 60654
                                                      Tel: (312) 589-6370
                                                      Fax: (312) 589-6378
                                                      jedelson@edelson.com
                                                      rbalabanian@edelson.com
                                                      cgivens@edelson.com
                                                      bthomassen@edelson.com

## L.R. 37.2 CERTIFICATION

  Pursuant to Local Rule 37.2, the undersigned certifies that the Parties met and conferred telephonically at 4:00 P.M. (C.D.T.) on December 20, 2013. Rafey S. Balabanian and Benjamin S. Thomassen were present for Plaintiffs, and Andy Schapiro and Robyn Bowland were present for comScore. Following that meet and confer teleconference, the Parties exchanged several emails and letters in additional attempts to resolve the discovery issues now in dispute, but, despite their good faith efforts, were unable to reach an accord.

                /s/ Rafey S. Balabanian

## CERTIFICATE OF SERVICE

  I, Benjamin S. Thomassen, an attorney, hereby certify that on December 20, 2013, I served the above and foregoing ***Plaintiffs' Motion to Compel the Deposition of Magid Abraham*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF system on this 20th day of December 2013.

                       /s/ Benjamin S. Thomassen