# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MIKE HARRIS and JEFF DUNSTAN,
individually and on behalf of a class of
similarly situated individuals,

           Plaintiffs,

      v.

COMSCORE, INC., a Delaware corporation,

           Defendant.

Case No. 1:11–cv–05807

Hon. James F. Holderman

Magistrate Judge Young B. Kim

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................2

      A.    comScore mines troves of data from consumers through separately
            incorporated subsidiaries. ................................................................................2

      B.    comScore failed to timely re-raise its venue challenge. .....................................4

III.  ARGUMENT ......................................................................................................5

      A.    This Court should deny comScore's motion to transfer because it has
            no right to enforce the forum clause it relies on. ..............................................6

            1.    The Subclass cannot be transferred to Virginia because the
                  Subclass members did not agree to any forum selection clause. ...........7

            2.    comScore cannot transfer this case simply because its
                  subsidiary agreed to a forum selection clause. .....................................8

            3.    comScore is not an intended third party beneficiary of the
                  ULA, and cannot enforce the forum selection clause as one. ..............10

      B.    Even if comScore *had* a right to enforce the forum clause, it cannot be
            enforced now ................................................................................................12

            1.    Transferring this case to Virginia would waste judicial time
                  and resources, and result in a delayed road to trial ............................13

            2.    Granting comScore's motion would only encourage litigants to
                  sit on a purported right to seek transfer as a litigation tool,
                  which would result in increased delays and inefficiencies .................14

III.  CONCLUSION ................................................................................................15

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tx.*,
134 S. Ct. 568 (2013)................................................................................5, 7, 9, 12

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012) ....................................8, 9

*A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952 (7th Cir. 2002) ..........10, 12

*Atl. Mut. Ins. Co. v. Metron Engineering and Const. Co.*, 83 F.3d 897 (7th Cir. 1996) ...............11

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004) ..................8

*Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921 (7th Cir. 2003)...................10, 11

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 522 F.3d 613 (7th Cir. 2009).........................................15

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995)............15

*Chicago, Rock Island & P. R.R. Co. v. Igo*, 220 F.2d 299 (7th Cir. 1955)....................................13

*Coffey v. Von Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ....................................................12

*Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908 (7th Cir. 1989).............11

*Hugel v. Corp. of Lloyd*, 999 F.2d 206 (7th Cir. 1993) ................................................................9

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 (7th Cir. 2010) ......13

**UNITED STATES DISTRICT COURT CASES:**

*Business Sys. Engineering v. Int'l Business Machines Corp.*,
520 F. Supp. 2d 1012 (N.D. Ill. 2007) ....................................................................12

*ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*,
No. 09-cv-922, 2009 WL 2244468 (S.D. Tex. July 27, 2009) .................................7

*F.T.C. v. American Tax Relief LLC*,
No. 10-cv-6123, 2011 WL 2893059 (N.D. Ill. July 20, 2011) ................................14

*Jarmillo v. DineEquity, Inc.*, 664 F.Supp.2d 908 (N.D. Ill. 2009) ................................................12

*Productive People, LLC v. Ives Design*,
   No. 09-cv-1080, 2009 WL 1749751 (D. Ariz. June 18, 2009) ................................................9

*Vandeveld v. Christoph*, 877 F. Supp. 1160 (N.D. Ill. 1995) ..........................................................7

*Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*,
   10-cv-6896, 2011 WL 307617 (N.D. Ill. Jan. 28, 2011)..........................................................11

# I. INTRODUCTION

After more than two years of motion practice and discovery, Defendant comScore, Inc. ("comScore") now seeks an eleventh-hour transfer of the claims of Plaintiffs Jeff Dunstan and Mike Harris, along with the Class and Subclass (collectively, the "Class") they represent, to the Eastern District of Virginia. To support its request, comScore relies on the forum selection clause contained in the User License Agreements ("ULAs") that accompanied the distribution of its monitoring software, and cites recent Supreme Court authority affirming the enforceability of forum clauses between contracting parties. comScore's motion fails for two primary reasons.

First, comScore isn't a party to the ULAs, and has no right to enforce the forum selection clause contained therein. The ULAs, by their plain and explicit terms, *only* purport to bind the users of the software (i.e., Class members), and the independently-incorporated distributors of comScore's software (known as "Sponsors"). The ULAs even include a clause unambiguously stating that they create *no* "rights or remedies" in *any* party other than the users and Sponsors. (Dkt. 281-2 at 7.) Thus, there is no argument that the ULAs give *comScore* an enforceable right to transfer. Still, comScore suggests that it can enforce the forum clause because it is the corporate parent of each Sponsor and because the ULAs supposedly give it rights as a third party beneficiary, but again, comScore's arguments are foreclosed by the plain terms. The ULAs confer rights and obligations *only* on the users and Sponsors, and unequivocally state that "*no person* shall assert *any* rights as a third party beneficiary under this agreement." (*Id.* (emphasis added).) And comScore's motion is particularly defective as to the Subclass, which was never presented with the ULA, never received notice of the forum clause, never assented to litigate in Virginia, and instead exercised its privilege to choose this Court as its venue.

Second, even if comScore had some right under the ULA to enforce the forum clause, it

cannot do so now. This case has been pending for two-and-a-half years. The Court has overseen the evolution of three complaints and three answers. It has ruled on three motions to dismiss, certified a Class and Subclass, seen the Seventh Circuit deny interlocutory review of the certification decision, resolved countless discovery disputes, and presided over months of settlement negotiations. And as the Court invested itself in the case, comScore sat on its supposed right to seek transfer, deciding to "wait and see" how the case progressed in this Court. Now, comScore has decided it would rather be in Virginia and finally seeks transfer—but its motion presents no new facts and could have been asserted at any point after the filing of Plaintiffs' initial complaint over two years ago. Transferring this case at this stage—after substantial delay by comScore, after the close of fact discovery, and with summary judgment motions approaching—would, at minimum, require another court to invest countless hours to match this Court's level of familiarity with the highly technical facts of this case.

comScore asks this Court to enforce an agreement that on its face grants it no rights, and that—if enforced—would waste the time and resources of this Court and the Eastern District of Virginia. Its motion has no justification, and should be denied.

## II.     BACKGROUND

### A.     comScore mines troves of data from consumers through separately incorporated subsidiaries.

comScore makes its money by collecting and analyzing data about consumers' Internet behavior, measuring their online activity, and selling that information to its clients. (*See* Dkt. 180 at ¶¶ 1 – 3.) To gather that data, comScore developed proprietary software called OSSProxy that continuously collects and sends data obtained from consumers (the "Panelists") back to comScore's servers. (*See* Transcript of Rule 30(b)(6) Deposition of Michael Brown ("Brown Tr.") at 9:5 – 15, attached as Exhibit A to the Declaration of Rafey S. Balabanian, filed

concurrently herewith; Dkt. 156-3 at 3 – 6.)

Rather than distribute OSSProxy itself, however, comScore uses the Sponsors—its separately-incorporated subsidiaries. (Brown Tr. at 74:9 – 79:22.) The Sponsors then distribute their own (functionally identical) "brands" of OSSProxy to consumers.[1] (*See* Dkt. 156-4 at 6.) During OSSProxy's download and installation, the user is presented with the "Downloading Statement"—a "pop-up" dialog window presenting an abbreviated statement relating to the Sponsor's brand of OSSProxy. (*See* Dkt. 154 at 14 – 15.) None of the Downloading Statements contain the full terms governing OSSProxy's download, installation, or use, and none contain the venue clause at issue here. (*See* Dkt. 156-5.) Instead, each Downloading Statement contains a hyperlink to the relevant *Sponsor's* ULA and privacy policy. A user must navigate to the Sponsor's website in order to view the ULA.[2] Subclass members, however, were never provided with any such opportunity—their Downloading Statements lacked any functional hyperlink to the ULA or any instructions for accessing it. (*See* Dkt. 180 at ¶ 37.)

On the off chance a user could locate a Sponsor's ULA, he or she would have seen no mention of comScore as a contracting party. That's because each of the "materially identical" ULAs, (Dkt. 156-4 at 6), made clear that the only contracting parties were the users and the Sponsor. (*See* Brown Tr. at 128:16 – 129:6 (Rule 30(b)(6) designee testifying that the ULAs are agreements "between the [users] and the brand they signed up for."); Dkt. 186 at 9 (recognizing that comScore "is not listed as a contracting party.").) What's more, each ULA includes a "Third Party Rights" clause, stating that "[t]his agreement shall *not* create *any* rights or remedies in *any* parties other than the parties to the agreement and *no person shall assert any rights as a third*

---

[1]     The Sponsor and brand most relevant to this case are "TMRG, Inc." and "RelevantKnowledge," respectively. (*See* Dkt. 281-2 at 2, 7.)

[2]     TMRG, Inc.'s website for the RelevantKnowledge ULA is http://www.relevantknowledge.com/RKPrivacy.aspx (last accessed January 28, 2014).

*party beneficiary under this agreement*." (Dkt. 281-2 at 7 (emphasis added).) As such, while

each ULA included a forum selection clause, they only govern disputes between users and "the

brand they signed up for" and, per the ULA's "Third Party Rights" clause, are not enforceable by

any third parties, including comScore. (*See* Brown Tr. at 128:16 – 129:6.)

**B.  comScore failed to timely re-raise its venue challenge.**

Shortly after Plaintiffs filed their class action complaint, comScore filed its first Rule

12(b)(3) motion, arguing, as it does here, that Plaintiffs and all Class members assented to

"comScore's [ULA]" as part of OSSProxy's installation, which contained a forum selection

clause. (*See* Dkt. 15 at 5.) The Court denied comScore's motion, holding that Plaintiffs'

complaint adequately alleged that the forum clause would not have been apparent to a reasonable

consumer downloading the bundled software. And although it denied the motion, the Court

invited comScore to provide it with "further factual development" showing that it could enforce

the forum clause. (*See* Dkt. 31 at 4 – 5.) But instead of immediately producing evidence to

support its venue challenge, comScore proceeded with litigation, moving to bifurcate discovery

and compiling evidence to oppose Plaintiffs' forthcoming class certification motion. (*See* Dkts.

66, 87.) When Plaintiffs moved for class certification, comScore again didn't challenge venue.

After this Court certified the Class and Subclass, comScore sought—but was denied the

opportunity to—appeal the Certification Order to the Seventh Circuit. (*See* Dkt. 199.) The case

was sent back to this Court in June of last year, but rather than seek transfer, comScore chose not

to raise its venue challenge for another four months. Instead, comScore agreed that discovery

should "commence . . . immediately," (Dkt. 209 at 3), produced tens of thousands of documents,

engaged in substantive motion practice and almost a dozen motion-related hearings (and status

conferences), conferred repeatedly over discovery issues, and otherwise continued toward trial in

this Court. comScore did not, however, indicate that it planned to renew its venue challenge.

Eventually, more than two years after the case was filed and nearly a year after comScore claims the facts supporting transfer came to light, on October 30, 2013, comScore renewed its Rule 12(b)(3) motion to dismiss. (Dkt. 242.) On December 23, 2013, following a recent Supreme Court decision, comScore withdrew its motion to dismiss and moved for leave to file its motion to transfer under 28 U.S.C. §1404(a). (Dkts. 302, 309.)

## III.    ARGUMENT

comScore's newest motion claims to arise from the Supreme Court's recent *Atlantic Marine* decision. (*See* Dkt. 302-1 (cited as "Def. Br.") at 2 (citing *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tx.*, 134 S. Ct. 568 (2013)).) In *Atlantic Marine*, the Court held that when contracting parties negotiate a forum selection clause and one of the parties files suit in a different jurisdiction, the "private interests" of the parties are irrelevant when evaluating a motion to transfer to the district designated by the forum clause. 134 S. Ct. at 581. The rationale for this rule is straightforward: while plaintiffs normally have the privilege of choosing where to sue, by "agree[ing] by contract to bring suit only in a specified forum—*presumably in exchange for other binding promises by the [other contracting party]*—[plaintiffs can] effectively exercise [their] 'venue privilege' before a dispute arises." *Id.* at 582 (emphasis added). On this basis, comScore contends that (i) the Class agreed to the forum clauses included in the ULAs, and (ii) the Court may only consider the public interest—which, according to comScore, (iii) always favors enforcement of forum clauses.

In rushing to latch on to *Atlantic Marine*, however, comScore misses two important points. First, it has no right to enforce the forum selection clause it relies on. It is not a party to the contract, and it has no third party right (as either a parent or an intended beneficiary) to

enforce the forum clause. And as to the Subclass, *nobody* has a right to force transfer, as the Subclass neither received notice of, nor assented to, the forum clause. Second, even if comScore had an enforceable right under the forum clause, transfer at such a late stage in this litigation— after considerable and unjustified delay by comScore—would waste judicial resources and harm the public interest. As such, comScore's motion should be denied and this Court should be allowed to oversee this litigation through to its end.

**A.    This Court should deny comScore's motion to transfer because comScore has no right to enforce the forum clause it relies on.**

comScore provides three reasons for why it it is entitled to enforce the forum selection clause: (i) it's a party to the ULAs, (ii) it's the parent of a subsidiary that is a party to the ULAs, and (iii) it's a third party beneficiary to the ULAs. (Def. Br. at 7 – 8.) The first is easily dispatched. Although comScore once again asserts it is "plainly" a party to the ULA, it offers neither facts nor law in support of that assertion. (Def. Br. at 7.). To the contrary, the ULA expressly states that the only contracting parties are the users and the Sponsors, and comScore is never identified or referred to as a party, while the actual parties to the contract—the users and the Sponsors—are. (*See*, *e.g.*, Dkt. 281-2 at 7 ("ENTIRE AGREEMENT" clause identifying contracting parties.) comScore has even admitted it isn't a party to the contract. (*See* Brown Tr. at 128:16 – 129:6 (Rule 30(b)(6) designee testifying that the ULAs are agreements "between the [users] and the brand they signed up for.").) Thus, comScore's argument that it can assert the forum clause as a contracting party fails.

comScore's other two arguments are also unavailing. The ULA expressly precludes comScore from enforcing any rights as a corporate parent (*especially* against the Subclass), and comScore isn't an intended third party beneficiary of the contract. Because comScore advances no justification for transfer other than the forum selection clause that it has no right to enforce,

this court should deny its motion.

1.    **The Subclass cannot be transferred to Virginia because the Subclass members did not agree to any forum selection clause.**

First and foremost, there is no question that comScore cannot enforce the forum selection clause against the Subclass. It is undisputed that before they installed comScore's monitoring software, Subclass members were *never* presented with *any* hyperlink to comScore's ULA or instructions for how to access it. (*See* Dkt. 14 at ¶ 6; Dkt. 186 at 3 n.2.) Without an opportunity to view and accept the ULA, Subclass members could not have assented to the forum clause (and, by extension, could not have bargained away their venue privilege) because the clause was *only* present in the full ULA. (Dkt. 31 at 4.) *See Atl. Marine Constr.*, 134 S. Ct. at 582. Neither comScore nor the contracting Sponsors can enforce the forum clause against the Subclass.

Absent the forum clause, comScore offers no basis for transferring the Subclass, nor can it. The Subclass is represented by Mike Harris, an Illinois resident who chose to file his case in this Court. (Dkt. 1 at ¶ 20.) And absent a compelling reason, Mr. Harris's "choice of forum is entitled to substantial weight under Section 1404(a), particularly [because] it is also the plaintiff's home forum." (*See* Dkt. 31 at 5 (quoting *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)).) Thus, because the forum clause cannot be enforced against the Subclass, Mr. Harris's choice to sue in this District should be honored, and his claims, along with those of the Subclass, should not be transferred.

Additionally, if the Subclass isn't transferred, the larger Class shouldn't be either. Transferring the larger Class while leaving the Subclass in this District would harm the public interest by wasting judicial resources, and risking inconsistent rulings and results. *See ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. 09-cv-922, 2009 WL 2244468, at *7 (S.D. Tex. July 27, 2009). Thus, because the Subclass can't be transferred, the Court should ensure that the

litigation proceeds as efficiently and uniformly as possible—by denying comScore's motion.

**2.     comScore cannot transfer this case simply because its subsidiary agreed to a forum selection clause.**

comScore claims that even if it isn't a party to the contract, it can enforce the forum selection clause because, as the Sponsors' corporate parent, it supposedly wields unlimited power to enforce its subsidiaries' contracts. (Def. Br. at 6.) Not true. While corporate parents can enforce their subsidiaries' forum clauses in many instances, here the ULAs explicitly preclude any such parental right. (*See* Dkt. 281-2.)

comScore misreads the Seventh Circuit's decision in *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), in arguing that its rights as a parent trump the ULA's plain language. (Def. Br. at 6.) Although the Seventh Circuit noted that a parent *can* enforce certain forum clauses binding its subsidiaries, the Court also recognized that the right is a qualified one—namely, because all contracting parties (including contracting subsidiaries) can "decide in the contract . . . to limit the forum selection clause to [only] the named entities." *Adams*, 702 F.3d at 442. And that's exactly what happened here. Every ULA includes a "Third Party Rights" clause that prohibits "*any* parties other than the parties to the agreement" from asserting *any* rights under the ULA. (Dkt. 281-2 at 7 (emphasis added.)[3] Per *Adams*, then, comScore's attempts to enforce the ULA are foreclosed.

Notwithstanding the ULA's plain limitation, comScore insists that the analysis offered by

---

[3]     comScore argues that *Adams* reflects the idea that a plaintiff shouldn't be able to avoid the effects of a forum clause by picking and choosing which subsidiaries or parents to sue based on which was a direct party to the clause. (*See* Def. Br. at 6 (citing *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004).) The Court should not be concerned by this. Rather than suing comScore as a way to punish the contracting Sponsors without being subject to the forum clause, Plaintiffs sued comScore because it was *comScore* that designed the OSSProxy software, *comScore* that controlled and updated OSSProxy while installed on Class members' computers, and *comScore* that directly monitored and collected information from the Class. (*See* Brown Tr. at 71:21 – 92:9, 112:9 – 115:8, 152:25 – 153:14.) Thus, not only did the Parties specifically contract themselves out of the *Adams* rule (a choice that *Adams* anticipated), none of the justifications for the rule apply here.

*Productive People*—a district court opinion from Arizona—also shows that it can enforce the

ULA's forum clause. (Def. Br. at 7 (citing *Productive People, LLC v. Ives Design*, No. 09-cv-

1080, 2009 WL 1749751 (D. Ariz. June 18, 2009)).) That reliance is also misplaced because,

unlike here, the contract in *Productive People* expressly and specifically anticipated that third

parties *could* enforce the relevant forum selection clause for specific disputes because:

> **First**, as comScore recognizes, "[t]he Agreement [contained] a clause stating that
> [it] was not intended to confer any rights . . . on a third party *unless otherwise*
> *provided for in the agreement*," (*id.* (quoting *Productive People*, 2009 WL
> 1749751 at *3, n. 4)) (emphasis added)); and

> **Second**, the contract contained *two* forum selection clauses, one of which was
> expressly limited to disputes "arising out of [the contract]" and the other of which
> "[did] not apply to only disputes between the parties over rights and obligations in
> the Agreement," *Productive People*, 2009 WL 1749751 at *2.

Thus, although the *Productive People* plaintiffs were third parties to the contract, they *could*

enforce the forum clause against the defendant (a party to the contract) because their claims were

contemplated by, and fell under, the contract's second (and broader) forum clause. *Id.* at *2 – 3.

Here, in contrast, there is **no** carve-out (not even a qualified one, like in *Productive*

*People*) for third party rights in either the ULA's "Third Party Rights" or forum selection

clauses, and comScore cannot enforce them as a non-party. (Dkt. 281-2 at 7.) These same facts

also doom comScore's reliance on *Hugel v. Corp. of Lloyd*, 999 F.2d 206 (7th Cir. 1993)—a case

that didn't involve a limitation on third party rights. (Def. Br. at 7 (citing *Hugel*, 999 F.2d at 210

n.7).) In fact, given that the ULA expressly excludes *any* third party rights, (Dkt. 281-2 at 7),

*Hugel* is even more off-point than *Productive People*. *See Adams*, 702 F.3d at 442 (Parties may

contract "to limit the forum selection clause to [only] the named entities.").

Accordingly, because it is explicitly precluded from enforcing "any" rights under the

ULA, comScore cannot negate Plaintiffs' venue privilege. *See Atl. Marine*, 134 S. Ct. at 582.

### 3. comScore is not an intended third party beneficiary of the ULA, and cannot enforce the forum selection clause as one.

Finally, comScore claims that it is a third party beneficiary to the ULA, and can therefore enforce the forum selection clause. (Def. Br. 7 – 8.) But comScore forgets that "[t]hird parties, that is, persons who are not parties to a contract, are permitted to enforce the contract *if and only if* the parties made *clear* in the contract an intention that they be permitted to do so." *A.E.I. Music Network, Inc. v. Business Computers, Inc.*, 290 F.3d 952, 955 (7th Cir. 2002) (emphasis added). Here, the ULA's contracting parties certainly made their intentions crystal clear: that the "agreement shall not create any rights or remedies in any parties other than the parties to the agreement and no person shall assert any rights as a third party beneficiary under the agreement." (Dkt. 281-2 at 7.) Simply put, comScore cannot claim it has a right to enforce the forum clause as a third-party beneficiary because the ULA includes two clear statements to the contrary.

Faced with the ULA's unambiguous "Third Party Rights" clause, comScore suggests that because it is mentioned in the ULA's preamble (which, as explained below, is non-binding), the "Third Party Rights" clause is rendered ineffective and, thus, comScore "is entitled to assert the forum selection clause" as a third party beneficiary. (Def. Br. at 7 – 8 (citing *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003).) But comScore's reliance on *American United* is misplaced. In that case, the relevant "third party rights" clause (Section 17.1.8 of the subject tenant lease) stated only that it was not "intended to create any third party benefit," but another clause (Paragraph 15 of the lease) clearly gave a third party (the appellant) an enforceable right to a benefit of the contract (there, operating a warehouse). *Am. United Logistics, Inc.*, 319 F.3d at 930 – 31. The ambiguity showed that, at least, the appellant was contemplated to "receive a benefit from the contract," *id.* at 931, and therefore could enforce the clause against a party that had knowingly negotiated and agreed to the contract.

Here, in contrast, the ULA could not be clearer. The "Third Party Rights" clause states "no person shall assert any rights as a third party beneficiary under [the] agreement." (Dkt. 281-2 at 7.) Since no binding section of the ULA even mentions comScore, no ambiguity is created and, thus, *American United*—which dealt with contradictory *terms* in a contract—is off point.

Apparently, comScore hopes that because it is mentioned in the ULA's non-binding *preamble*,[4] the ULAs suffer from the same kind of ambiguity found in *American United*—but there's no reason to stir up ambiguity where none exists. While the preamble mentions that comScore may use the data that is collected pursuant to the ULA's terms, nothing in the ULA suggests an intent to give comScore an enforceable third party right against the Parties, as "introductory language or recitals are not binding obligations 'unless so referred to in the operative portion of the instrument as to show a design that they should form a part of it.'" *See Atl. Mut. Ins. Co. v. Metron Engineering and Const. Co.*, 83 F.3d 897, 899 (7th Cir. 1996) (internal citation omitted). And as noted, the terms of the ULA contain no such reference and instead unambiguously state that they create no third party rights whatsoever, thus establishing the Parties' intent and controlling over any equivocation comScore can manufacture from the preamble.[5] (Dkt. 281-2 at 7); *see Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*, 10-CV-

---

[4]     To be clear, comScore is mentioned *only* in the preamble to the the ULA, which appears *before* the "PRIVACY POLICY [AND] USER LICENSE AGREEMENT" header, and *before* language advising users to "review and agree to the terms and conditions *below*[.]" (Dkt. 281-2 at 2 (emphasis added).) There is, in contrast, no requirement that users were required to "review and agree" to the preamble (or any language contained therein) found above the "PRIVACY POLICY [AND] USER LICENSE AGREEMENT" section header—thus writing comScore out of the ULA's binding terms.

[5]     In any event, that entities other than the Sponsor (and not just comScore) are identified in the preamble as companies that "use" the data collected and anonymized pursuant to the ULA's terms (i.e., from the Class by TMRG, Inc.) is no reason to dole out enforceable third party rights—especially given the ULA's unequivocal "Third Party Rights" provision. *Cf. Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 911 – 13 (7th Cir. 1989) (explaining that even "the fact that a third party is named in the contract, or that performance is to run directly to the third party, is not conclusive.") Indeed, the ULA's preamble lists comScore *amongst many other* "downstream" users of the same data. (Dkt. 281-2 ("The information that you contribute is used by comScore . . . and is extensively used by the largest

6896, 2011 WL 307617, at \*6 (N.D. Ill. Jan. 28, 2011) ("Generally, the recognized rule is that the obligations and promises of the parties in the operative portion of a contract prevail over a preliminary recital or preamble.") (internal citation omitted). Thus, there is no ambiguity in the "Third Party Rights" clause—it controls, and comScore has no third party rights under the contract. *See A.E.I. Music Network*, 290 F.3d at 955; *see also Business Sys. Engineering v. Int'l Business Machines Corp.*, 520 F. Supp. 2d 1012, 1015 (N.D. Ill. 2007) (explaining that where "no third party rights" clause is unambiguous, it controls). And although comScore claims it needn't be a third party beneficiary to enforce the forum clause, (Def. Br. at 8), its other arguments in favor of enforcement—status as either a party or a corporate parent—fail as well. comScore's motion to transfer should be denied.

**B.      Even if comScore *had* a right to enforce the forum clause, it cannot be enforced now.**

Even if comScore could have enforced the ULA's forum clause at some point, allowing it to do so *now* would only harm the public interest and reward comScore for its "wait and see" approach to this case. Per *Atlantic Marine*, a District Court deciding a Section 1404(a) transfer motion in light of an enforceable forum selection clause must "weigh the relevant [public interest] factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine Constr*, 134 S. Ct. at 581 – 82 (internal quotation marks omitted). Such factors include, *inter alia*, the waste of judicial time and resources, as well as the likely speed to trial in the present versus potential transferee forum. *See Jarmillo v. DineEquity, Inc.*, 664 F.Supp.2d 908, 915 (N.D. Ill. 2009) (quoting *Coffey v. Von Dorn Iron Works,* 796 F.2d 217, 220 – 21 (7th Cir. 1986)) (when

---

Internet services companies and scores of Fortune 500 companies.").) That "[o]thers may benefit if the [ULA] is performed . . . [does not mean that] they [can] sue to enforce it just by virtue of benefiting from it." *See A.E.I. Music Network,* 290 F.3d at 955 (contrasting *direct* third party beneficiaries, who can "enforce a contract **if and only if** the parties made clear in the contract an intention that they be permitted to do so," with *indirect* beneficiaries, "who have no rights") (emphasis added) (citing collected cases).

considering the interests of justice, courts should look to "the public's interest in conserving scarce judicial resources"); *see also Chicago, Rock Island & P. R.R. Co. v. Igo*, 220 F.2d 299, 303 (7th Cir. 1955) (explaining that courts have considered "the congested state of their calendars" in considering a motion to transfer). Here, because neither factor favors transfer, this case should stay with this Court, where it has been actively litigated since August 23, 2011. And given comScore's extreme delay in asserting its supposed right to transfer, granting its motion would only encourage similar dilatory tactics. The motion should be denied.

1.  **Transferring this case to Virginia would waste judicial time and resources, and result in a delayed road to trial.**

Over the course of more than two years, both the Northern District of Illinois and the Seventh Circuit have dedicated valuable judicial time and resources to this case. The Parties have filed and this Court has decided three motions to dismiss along with other fact-intensive motions, including Plaintiffs' motion for class certification, comScore's PLA under Rule 23(f), and numerous discovery disputes. (*See*, *e.g.*, Dkt. 12, 39,152, 224, 226, 242, 293.) On top of that, the Court has ordered, overseen, and directed extensive settlement efforts (including two in-person conferences) between the Parties. (*See*, *e.g.*, Dkts. 286, 292.) At the same time, if transferred, the Eastern District of Virginia would need substantial time to familiarize itself with the facts of this case—and given that the Parties will soon be prepared to file summary judgment motions, the requisite time will almost certainly result in the (unnecessary) delay of trial. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). As an exercise in waste, therefore, comScore's proposed transfer is inappropriate.

### 2. Granting comScore's motion would only encourage litigants to sit on a purported right to seek transfer as a litigation tool, which would result in increased delays and inefficiencies.

As Plaintiffs explained in their Opposition to comScore's second Rule 12(b)(3) motion, comScore's desire to move this case to Virginia is a result of unnecessary delay—a true "wait and see" approach to litigation. (*See* Dkt. 280 at 9 – 15.) Granting its motion now would only encourage other litigants to sit on forum clauses, try out a particular forum, and then move to enforce (even after years of litigation) only when it seems advantageous. Encouraging and rewarding such unnecessary delay is not in the public interest and necessarily would lead to increased delays and wasting of judicial resources. *See F.T.C. v. American Tax Relief LLC*, No. 10-cv-6123, 2011 WL 2893059, at *7 (N.D. Ill. July 20, 2011) (explaining that public interests factors include practical considerations such as preventing waste of judicial time and money).

comScore's first challenge to venue was made on September 28, 2011, when it argued (as it does here) that the forum selection clause compelled transfer. (*See* Dkt. 15 at 1.) Since then, and even though the Court encouraged comScore to adduce the facts necessary to support a renewed venue challenge, (Dkt. 31), comScore sat on its supposed right to transfer for over two years—only moving again under Rule 12(b)(3) on October 30, 2013, (Dkt. 242). And regardless of whether or not comScore actively sought to elicit a factual basis to support its transfer position, comScore has explained its right to seek transfer was made clear via Plaintiffs' class certification briefing, where "Plaintiffs declared that 'Rule 23 commonality and typicality exist because Plaintiffs and each Class member . . . was presented with a form ULA, [and] each **accepted** the ULA through the same online process . . .'" (Dkt. 243 at 3 (quoting Dkt. 184 at 1 – 2).) But even though Plaintiffs made that purported admission on March 19, 2013,[6] comScore

---

[6] More accurately, this "admission" was first made at least as early as January 15, 2013, where, through their opening supplemental class certification briefing, Plaintiffs detailed how the common ULA

waited until October 30th to do anything about it.

In the meantime, comScore continued to litigate, even representing to the Court that merits discovery should proceed, (Dkt. 209 at § 3),[7] and then engaging in further discovery. And given the information then-available to comScore (i.e., that Plaintiffs argued that they agreed to the Sponsors' ULA), its conduct was done with tacit approval of this forum and should not be rewarded by having its last-minute motion granted. By continuing to litigate (instead of transferring and *then* litigating in its preferred venue) comScore demonstrated that its strategy has been to wait and "see how the case was going in [this] federal district court before" looking for a new venue. *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).[8] Such game-playing wastes the Court's—and, by extension, the public's—time and resources, while only benefitting comScore. Thus, transfer should not be allowed at this point.

Ultimately, because comScore cannot enforce the forum clause, and would not be entitled to transfer even if it could, the Court should deny the motion and retain control over this case.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs Mike Harris and Jeff Dunstan respectfully request that the Court deny comScore's motion to transfer and award such other and further relief as it deems equitable and just.

---

gave rise to common questions affecting the Class. (*See* Dkt. 154 at 23 – 24.)

[7]    Indeed, comScore should have raised its venue challenge during the Parties' June 19th Rule 26(f) planning conference, where comScore agreed *without limitation* "to commence merits-based discovery on [Plaintiffs'] claims immediately, pending the Court's lifting of the stay [that was] in place in the case." (Dkt. 209 at §§ 3, 3(b)), and omitted its intention to, once it was ready, challenge venue again when reporting "Other Matters" relevant to discovery, motion, and trial schedule. (*Id.* at § 4(k).)

[8]    Although *Cabinetree* analyzed waiver of the right to compel arbitration, it applies here because an arbitration clause is simply "a species of forum selection clause." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009).

Respectfully submitted,

**MIKE HARRIS** and **JEFF DUNSTAN**, individually and on behalf of a class of similarly situated individuals,

Dated: January 28, 2014

By: s/ Rafey S. Balabanian
    One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Chandler R. Givens
cgivens@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs, the Class, and the Subclass*

## CERTIFICATE OF SERVICE

I, Benjamin S. Thomassen, an attorney, hereby certify that on January 28, 2014, I served the above and foregoing ***Plaintiffs' Response in Opposition to Defendant's Motion to Transfer Under 28 U.S.C. §1404(a)*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, the 28th day of January, 2014.

s/ Benjamin S. Thomassen