**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals<br><br>             Plaintiff,<br><br>             v.<br><br>COMSCORE, INC., a Delaware corporation<br><br>             Defendant. | CASE NO. 1:11-cv-5807<br><br>Judge Holderman<br><br>Magistrate Judge Kim |

**COMSCORE, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................................1

ARGUMENT..........................................................................................................................................1

I.     comScore May Enforce Its Agreement With Plaintiffs As A Party Thereto ........................1

II.    Alternatively, comScore May Enforce The Forum Selection Clause As A Parent Corporation Or Third Party Beneficiary ...............................................................................2

III.   The Subclass Should Be Transferred To Virginia ................................................................6

IV.   Supreme Court Precedent Compels The Transfer Of This Litigation To Virginia..............7

CONCLUSION.......................................................................................................................................9

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adams v. Raintree Vacation Exch., LLC*,
   702 F.3d 436 (7th Cir. 2012) ................................................................................................2

*Am. United Logistics, Inc. v. Catellus Dev. Corp.*,
   319 F.3d 921 (7th Cir. 2003) .....................................................................................2, 3, 4, 5

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
   134 S. Ct. 568 (2013) .........................................................................................................1, 7

*comScore, Inc. v. Dunstan, et al.*,
   No. 13-8007, Dkt. No. 1 (7th Cir. April 16, 2013) ...............................................................8

*Hill v. Gateway 2000, Inc.*,
   105 F.3d 1147 (7th Cir. 1997) ..............................................................................................6

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ................................................................................................3

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ................................................................................................6

*Productive People, LLC v. Ives Design*,
   No. CV-09-1080, 2009 WL 1749751 (D. Ariz. June 18, 2009) ...................................2, 3, 4

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................................................9

## INTRODUCTION

Plaintiffs' response to comScore's motion to transfer this litigation fails to address one very important point—*Plaintiffs agreed to the Terms of Service, which require them to litigate this case in Virginia.*[1] (Pl. Br.) Given the United States Supreme Court's recent holding that "a valid forum-selection clause should be given *controlling weight* in all but the most exceptional cases," comScore's motion to transfer should be granted. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 581 (2013) (emphasis added) (internal citations omitted). The issue for resolution before the Court is straightforward—Plaintiffs have agreed to the forum selection clause, and comScore is entitled to enforce that agreement as a party to the agreement, as a parent corporation to a subsidiary's agreement, *and* as a third party beneficiary of the agreement. Because comScore is entitled enforce the forum selection clause, and because Plaintiffs have made no showing that this case is "exceptional" within the meaning of *Atl. Marine*, this litigation must proceed in Virginia.

## ARGUMENT

### I.  comScore May Enforce Its Agreement With Plaintiffs As A Party Thereto

Plaintiffs' argument that comScore is not a party to the Agreement has no merit. *Plaintiffs themselves* allege in their Second Amended Complaint (as well as their Complaint and First Amended Complaint) that comScore is in fact a party to the agreement, referring to the Terms of Service as "comScore's" or "Defendant's" throughout. (Dkt. No. 169 at ¶¶ 16,

---

[1] Although Plaintiffs' Second Amended Complaint inexplicably continues to allege that Harris and Dunstan did not agree to the Terms of Service, (Dkt. 169 at ¶¶ 66, 70), Plaintiffs obtained class certification by insisting that "each Class member . . . was presented with a form ULA, [and] each **accepted** the ULA through the same online process . . ." (Dkt. No. 184 at pp. 1-2 ). *See also* Dkt. No. 280 at p. 17 (conceding that all plaintiffs clicked "Accept" when presented with the Downloading Statement, which states that they have read and agree to the Terms of Service.) Indeed, if that were not the case, then—as Plaintiffs appear to recognize—class certification would need to be reconsidered.

35-37, 39, 48-50, 79(c), 100.) Plaintiffs have to do so, because their case (both on the merits and as to class certification) rests in large part on the claim that comScore went beyond its agreement with the plaintiffs. Having affirmatively alleged that comScore is a party to the Agreement, plaintiffs cannot now turn around and argue otherwise simply to avoid transfer.

In any event, as we noted in our opening brief and as the plaintiffs barely acknowledge, the *very first sentence* of the Downloading Statement identifies the Sponsor of the agreement as "**a comScore, Inc. company**." (Dkt. No. 176-4 at pp. 45-73 (emphasis added).) And the Terms of Service state that the information provided will be used "**by comScore, Inc.**" (Dkt. No. 281-2 at p. 2 (emphasis added).) comScore has every right to enforce the forum selection clause against the Plaintiffs as a contracting party thereto.

II.   **Alternatively, comScore May Enforce The Forum Selection Clause As A Parent Corporation Or Third Party Beneficiary**

The analysis should end with the conclusion that comScore is a party to the Agreement, but even if the Court disagrees, comScore may still enforce the forum selection clause. Plaintiffs admit (as they must) that pursuant to Seventh Circuit precedent—*see Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012) and *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003)—non-parties are entitled to enforce forum selection clauses. (Pl. Br. at p. 8.) However, Plaintiffs contend that comScore is precluded from asserting its rights as a parent corporation because of the third party rights clause in the Terms of Service. (Pl. Br. at p. 8.) That argument is specious. Plaintiffs cite no authority (from the Seventh Circuit or otherwise) in which a non-party was disallowed from enforcing a forum selection clause on the basis of a third party rights clause. (Pl. Br. at pp. 8-12.) And Plaintiffs' attempts to distinguish *Productive People, LLC v. Ives Design*, No. CV-09-1080, 2009

WL 1749751 (D. Ariz. June 18, 2009) and *Am. United Logistics*, two cases cited by comScore that address third party rights clauses, are not persuasive.

In *Productive People*, the defendants had entered into an agreement with GoDaddy.com—not a party to the litigation—that contained a forum selection clause. 2009 WL 1749751, at *1. The clause provided that "[f]or the adjudication of disputes concerning the use of any domain name registered with Go Daddy, You agree to submit to jurisdiction and venue in the U.S. District Court for the District of Arizona located in Phoenix, Arizona." (*Id.* at *2.) A separate clause in the contract identified the parties thereto as GoDaddy.com and the defendants. *Id.* The plaintiff, *a non-party to the contract*, sought to enforce the forum selection clause over the defendants' objections. (*Id.* at *1.) The court held that "being bound parties, the [] Defendants cannot escape the forum selection clause. Nor does the fact that Plaintiff is not a signatory to the contract render the forum selection clause unenforceable . . . Non-parties may enforce forum selection clauses. As a party with a dispute concerning the use of a domain name registered on GoDaddy.com . . . Plaintiffs may enforce the clause against the [] Defendants." (*Id.* at *3 (internal citations omitted).) The court further held, pursuant to the Seventh Circuit's decision in *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993), that the third party rights clause did not preclude the plaintiff from enforcing the forum selection clause. (*Id.* at *4, n.4.) The third party rights clause stated that the Agreement was "not intended to confer any rights, remedies, obligations, or liabilities on a third party unless otherwise provided for in the agreement." (*Id.*) The court reasoned that it "need not determine whether the [] forum selection clause was intended to fall under the exception of [the third party rights clause], however, because 'third-party beneficiary status is not required' for non-parties to benefit from or be bound by forum selection clauses." (*Id.* (quoting *Hugel*, 999 F.2d 206, 210 n.7).)

3

The forum selection clause and third party rights clause in *Productive People* are on all fours with the clauses to which the class Plaintiffs agreed. But Plaintiffs attempt to distinguish *Productive People* on two grounds. First, Plaintiffs argue that there is no exception in the third party rights clause in this case, as there was in *Productive People*, precluding third party rights "unless otherwise provided for in the agreement." (Pl. Br. at p. 9.) But as Plaintiffs are aware, the "exception" language in *Productive People* was not relevant to the court's reasoning. In fact, the court explicitly stated that it "*need not determine whether the forum selection clause was intended to fall under the exception of [the third party rights clause]*." *Productive People, LLC*, 2009 WL 1749751, at *4, n.4. Second, Plaintiffs argue that the forum selection clause in *Productive People* "[did] not apply to only disputes between the parties over rights and obligations in the Agreement." (Pl. Br. at p. 9.) But neither does the forum selection clause in this case. Plaintiffs agreed to litigate "*any* non-arbitral action or proceeding *arising out of or related to this program* or this agreement" in Virginia. (Dkt. No. 281-2 at pp. 6-7 (emphasis added).) Even if Plaintiffs argue that their suit does not arise from the Agreement because comScore is not a party, it is plainly related to the "program." Plaintiffs concede this fact. "Plaintiff sued comScore because it was *comScore* that designed OSSProxy software, *comScore* that controlled and updated OSSProxy while installed on Class members' computers, and *comScore* that directly monitored and collected information from the Class." (Pl. Br. at p. 8, n.3 (emphasis in original).)

In addition to being able to enforce the forum selection clause as a non-party, comScore is also entitled to enforce the forum selection clause as a third party beneficiary pursuant to *Am. United Logistics*. In that case, a third party asserted its rights as a beneficiary of a contract in which the third party's name appeared in the contract alongside an intended benefit—as the

4

operator of the warehouse space leased in the agreement. *Am. United Logistics, Inc.*, 319 F.3d at 931. The Seventh Circuit held that the third party was a direct beneficiary under the contract, *despite* language in the contract stating that "nothing herein is intended to create any third party benefit." (*Id.*) Like the third party in *Am. United Logistics*, comScore is identified *by name* as a beneficiary to the Agreement in both the Downloading Statement and the ULA. (Dkt. No. 176-4 at pp. 45-73; Dkt. No. 281-2 at p. 2.) Further, the Agreement grants comScore an intended benefit—the use of class members' information. (Dkt. No. 281-2 at p. 2.)

Plaintiffs make a weak attempt to distinguish *Am. United Logistics* by arguing that the third party rights clause in the Agreement in this case is "clearer" than the third party rights clause in *Am. United Logistics*. (Pl. Br. at pp. 10-11.) But the clauses are virtually identical.[2] Plaintiffs also argue that the benefit conferred on comScore does not count because it appears in a preamble. (Pl. Br. at p. 11.) In support of its argument, Plaintiffs state that "comScore is mentioned *only* in the preamble to the ULA." (Pl. Br. at p. 11, n.4 (emphasis in original).) This is incorrect—comScore is also mentioned in the Downloading Statement, which this Court has held to be part of the contractual agreement. (Dkt. No. 186 at p. 9 ("[m]ost obviously, each Class member agreed to a form contract (made up of the ULA and the Downloading Statement), as has each Subclass member (the Downloading Statement only)").) But further, the Seventh Circuit held in *Am. United Logistics* that "[t]o decide whether a party is a . . . beneficiary, we must determine *the intent of the parties based on the contract as a whole*." 319 F.3d at 930 (emphasis added). Notice to Plaintiffs in the "preamble" that "[t]he information that you contribute is used by **comScore, Inc.**" demonstrates the parties' intent, regardless of where it

---

[2] *Compare Am. United Logistics, Inc.*, 319 F.3d at 931 ("[N]othing herein is intended to create any third party benefit") *with* dkt. No. 281-2 at p. 7 ("[N]o person shall assert any rights as a third party beneficiary under this agreement.").

appears. (Dkt. No. 281-2 at p. 2.) Because the clear intent of the Agreement was to provide comScore with the benefit of the use of the information provided, comScore is entitled to enforce the forum selection clause as a third party beneficiary.

### III. The Subclass Should Be Transferred To Virginia

comScore is also entitled to enforce the forum selection clause against the members of the Subclass. Plaintiffs' argument that the Subclass could not have assented to the forum selection clause "[w]ithout an *opportunity to view and accept the ULA*" is without merit. (Pl. Br. at p. 7 (emphasis added.).). The Seventh Circuit has rejected the idea that a party to a contract must have the opportunity to view the contract prior to acceptance where the party is on notice it is subject to a contractual agreement. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997) (enforcing a contract contained in a box shipped to customers' home when the customers purchased by telephone because the customers "knew before they ordered the computer that the carton would include *some* important terms, and they did not seek to discover these in advance.") (emphasis in original); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1450-51 (7th Cir. 1996) (holding that a contract contained inside of a retail software box that the consumer did not have an opportunity to view prior to purchase was enforceable because there was notice of the contract on the outside of the box). The members of the Subclass had notice that comScore's software was subject to a contractual agreement. *Each* member of the Subclass clicked "Accept" to comScore's Downloading Statement, affirmatively stating that he had "read [and] agree[d] to . . . the terms and conditions of the Privacy Statement and User License Agreement." (Dkt. No. 14 at ¶ 4.) Plaintiffs provide no authority for their position that the contract is not enforceable because the Subclass was not presented with a functioning hyperlink. (Pl. Br. at p. 7.) The Downloading Statement clearly identified the software as "PremierOpinion software" and the full text of the contract was available at all times on the PremierOpinion website. (Dkt. No. 14 at

¶ 6.) Thus, members of the Subclass had an opportunity to view the ULA prior to clicking "Accept," and every member of the Subclass affirmatively confirmed that he or she had in fact read and agreed to the terms. And if there is any doubt as to whether every Subclass member did in fact do so, then class certification must be reconsidered.

Even if the forum selection clause were not independently enforceable against the Subclass, the Court should nonetheless transfer the Subclass to Virginia. Plaintiffs argue that "if the Subclass isn't transferred, the larger Class shouldn't be either" because transferring one class and not the other is a waste of judicial resources. (Pl. Br. at p. 7.) But the Class *must* be transferred to Virginia as a matter of law pursuant to *Atl. Marine*. Therefore the Subclass should be transferred as well. It would be an improper exercise of discretion for the court to keep *millions* of class members in the Northern District of Illinois, despite the fact that *each* class member agreed to litigate in Virginia, simply to allow trial of the claims of a small subset of the Class in this district. Because the Class must be transferred to Virginia, the Subclass should be transferred as well.

## IV. Supreme Court Precedent Compels The Transfer Of This Litigation To Virginia

Plaintiffs have not met their burden of showing that this litigation should not be transferred to the forum previously agreed to by the Plaintiffs—Virginia. *Atl. Marine Constr. Co., Inc.*, 134 S. Ct. at 581 ("[P]laintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.") Plaintiffs argue that because neither the conservation of "judicial time and resources" or the "likely speed to trial in the present versus the transferee forum" favors transfer, the case should remain in the Northern District of Illinois. (Pl. Br. at pp. 12-13.) But Plaintiffs apply the wrong standard. The public interest factors are not required to "favor[] transfer"—rather, "a district court should transfer the case unless extraordinary circumstances . . . *clearly disfavor a transfer*." *Atl. Marine Constr. Co., Inc.*, 134

S. Ct. at 575 (emphasis added). Because the enforcement of a forum selection clause "protects [the parties'] legitimate expectations and furthers vital interests of the justice system," public-interest factors "will rarely defeat a transfer motion." (*Id.* at 582-83.)

Plaintiffs' public interest argument amounts to nothing more than an unfounded accusation that comScore has employed a "wait and see" approach to this litigation. (Pl. Br. at p. 14.) Plaintiffs filed their Complaint on August 23, 2011. (Dkt. No. 1.) Barely one month into the litigation, on September 28, 2011, comScore filed a 12(b)(3) motion to dismiss for improper venue and asserted its right to litigate in Virginia—hardly a "wait and see" approach. (Dkt. No. 12.) comScore's motion was denied because Plaintiffs' alleged in their Complaint that they did not agree to the forum selection clause. (Dkt. No. 31 at p. 5 ("At this stage, however, the court must take plaintiffs' word for it.").) Even after its 12(b)(3) motion to dismiss was denied, comScore *repeatedly* asserted its right to proceed in Virginia. comScore asserted the forum selection clause in its Answer to the Complaint filed on December 13, 2011, in its Answer to the Amended Complaint filed on November 15, 2012, in its Answer to the Second Amended Complaint filed on February 28, 2013, in its appeal of the class certification order to the Seventh Circuit on May 8, 2013, in its renewed motion to dismiss on October 30, 2013, and in its present motion to transfer. (Dkt. No. 59 at p. 50; Dkt. No. 140 at p. 45; Dkt. No. 180 at p. 45; *comScore, Inc. v. Dunstan, et al.*, No. 13-8007, Dkt. No. 1 at 7 (7th Cir. April 16, 2013); Dkt. No. 242.) To suggest that comScore slept on its rights in this regard is absurd.

To the extent that there has been any delay or waste of resources, it is entirely attributable to the Plaintiffs, who have made their agreement or non-agreement to the Terms of Service a wildly moving target. They alleged in their Complaint and First Amended Complaint—and continue to assert in their Second Amended Complaint—that they did not agree to the Terms of

8

Service. (Dkt. No. 1 at ¶¶ 69, 73; Dkt. No. 136 at ¶¶ 66, 70; Dkt. No. 169 at ¶¶ 66, 70.) And yet they have represented to the Court—contrary to the allegations in their Complaint—that "Rule 23 commonality and typicality exist because Plaintiffs and each Class member . . . was presented with a form ULA, [and] each **accepted** the ULA through the same online process . . . ." (Dkt. No. 184 at pp. 1-2 (emphasis added).) The Court accepted those representations. (*See, e.g.*, Dkt. No. 186 at p. 9 ("[m]ost obviously, each Class member agreed to a form contract (made up of the ULA and the Downloading Statement), as has each Subclass member (the Downloading Statement only)").) Plaintiffs have subsequently refused to amend their Second Amended Complaint to reflect their representations to the Court, and to bring their allegations into accord with the Court's certification order. Again, the Second Amended Complaint *still alleges* that Plaintiffs' did not agree to the ULA despite the fact that Plaintiffs have abandoned that position. (Dkt. No. 169 at ¶¶ 66, 70.) comScore cannot be deemed to have lost its right to transfer where the Plaintiffs have refused to take a consistent position about whether they agreed to the Terms that include the transfer provision. Plaintiffs may not cite the *very delay that they have thereby caused* as a public interest reason clearly disfavoring transfer to Virginia. If the law were otherwise, then every party attempting to avoid a forum selection clause would simply waver on whether they agreed to the forum selection clause at all, as Plaintiffs have here—thereby wasting the court's and opposing party's time. The public interest is not served by depriving comScore of its contractual rights under the forum selection clause agreed to by Plaintiffs.

## CONCLUSION

comScore respectfully requests that this action be transferred to Virginia pursuant to 28 U.S.C. § 1404(a).

DATED: February 4, 2014        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                      */s/ Andrew H. Schapiro*
Andrew H. Schapiro
andrewschapiro@quinnemanuel.com
Stephen Swedlow
stephenswedlow@quinnemanuel.com
Robyn Bowland
robynbowland@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7499

Paul F. Stack
pstack@stacklaw.com
Stack & O'Connor Chartered
140 South Dearborn Street
Suite 411
Chicago, IL 60603
Telephone: (312) 782-0690
Facsimile: (312) 782-0936

*Attorneys for Defendant comScore, Inc.*

**CERTIFICATE OF SERVICE**

  I, the undersigned, hereby certify that a true and correct copy of COMSCORE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) has been caused to be served on February 4, 2014 to all counsel of record via the Court's ECF filing system.

               */s/ Robyn Bowland*
               Robyn Bowland