IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals<br><br>Plaintiff,<br><br>v.<br><br>COMSCORE, INC., a Delaware corporation<br><br>Defendant. | CASE NO. 11 C 5807<br><br>Judge Holderman<br><br>Magistrate Judge Kim |

**COMSCORE, INC.'S FINAL REPLY IN SUPPORT OF
ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

In their Surreply, Plaintiffs struggle to make a mountain out of a molehill. Moreover, it is a molehill they themselves created in their increasingly convoluted and complicated attempts to both defeat the valid and enforceable venue provision in comScore's User License Agreement ("ULA") by claiming the class is not bound by the ULA while maintaining a certified class based on the class accepting the ULA. As is obvious from Plaintiffs' latest briefing, accomplishing both is impossible.

First, Plaintiffs overstate comScore's position on the terms of the Downloading Statement. It is incontrovertible that the Court ruled that (1) each Class Member agreed to a form contract made up of the ULA and Downloading Statement and that (2) each Subclass Member agreed to a form contract made up of at least the Downloading Statement. (Dkt. No. 186 at 9.) Indeed, the passage Plaintiffs apparently take issue with directly quotes the Court's Class Certification Order language for this point. (Surreply at 2.) Moreover, the Representative Downloading Statement the Court relied on for that ruling includes comScore in the first line.

1

(Dkt. No. 186 at 3.) At no point in its Reply Brief (Dkt. No. 317) does comScore affirmatively state that every member of the subclass viewed a Disclosure Statement containing the word "comScore." comScore's statement is entirely consistent with the Court's class certification ruling.

Plaintiffs also bizarrely take issue with comScore labeling the Downloading Statement as "comScore's." (Surreply at 2.) This is incomprehensible given the number of times Plaintiffs' themselves have labeled the Downloading Statement as comScore's. (*See, e.g.*, Dkt. No. 137 at 1-2.)[1] Moreover, as should be clear from the multitude of briefings the Court has already received on this issue, comScore believes the Downloading Statement *is* comScore's Downloading Statement and therefore labeled it as such during its briefing. Plaintiffs should not have burdened the Court with an extra round of briefing on such a trivial and obvious matter.

More disappointing is that Plaintiffs' Surreply misstates the record with respect to the contents of the Downloading Statement. In their Surreply, Plaintiffs make the claim that "[t]he Downloading Statement viewed by Subclass members *only* referenced one entity—VoiceFive, Inc., the 'Sponsor' for the PremierOpinion tracking software." (Surreply at 1 (emphasis in original).) However, Plaintiffs cite their Complaint for this proposition, and fail to acknowledge to the Court that they have no idea what Downloading Statement each member of the subclass

---

[1] Given Plaintiffs' repeated reliance on allegations from their Second Amended Complaint in the Surreply, Plaintiffs statement "That comScore tries to rely on Plaintiffs' allegations to claim that it's a party to the ULAs—rather than on the actual *terms* of the agreements themselves—speaks volumes about the weakness of its overall argument" is laughable. (Surreply at 3.) comScore's argument rests on significantly more than Plaintiffs' allegations—although the constant evolution of Plaintiffs' claims, and Plaintiffs' consistent attempts to distance themselves from their previous allegations to convince the Court to certify a class or deny comScore's transfer motion—does speak volumes about the weakness of Plaintiffs' overall case. Indeed, at this point comScore is no longer sure what Plaintiffs actually allege.

saw.² Indeed, the Exhibit to Dr. Tamassia's expert report that Plaintiffs rely on in their Surreply includes a VoiceFive Disclosure Statement that *does* identify VoiceFive as a comScore company. A copy of this Disclosure Statement follows:



(Dkt. No. 176-4 at 71.)³ And Mike Harris, the sole representative of the Subclass, has testified that he has no memory of whether he read *any* Disclosure Statement, let alone what it said. (Dkt.

---

² The subclass consists of "All Class members not presented with a functional hyperlink to an end user license agreement before installing comScore's software onto their computers." (Dkt. No. 186 at 1.) comScore does not have a complete set of Disclosure Statement screenshots for the Mac software, although comScore did produce all of the screenshots it had. To the best of comScore's knowledge, neither party knows with specificity which Disclosure Statements did not include a functional hyperlink, nor the exact timeframe in which this error occurred.

³ Plaintiffs fail to point out that the Subclass is not limited to the Class members who viewed Ex. A to Plaintiffs' Second Amended Complaint, which is Plaintiffs' support for their arguments about the contents of the Downloading Statement. For example, Subclass

3

No. 176-16 – Harris Dep. Tr. at 93:14-96:6 (Harris stating he had a "strong feeling" he did not see the Disclosure Statement before downloading the Secret Land Screensaver, but did not remember one way or the other).) At best, Plaintiffs can say only that some of the subclass may have viewed Downloading Statements that referenced only VoiceFive.[4] Moreover, Plaintiffs in their Reply Brief on Class Certification (Dkt. No. 184) affirmatively argued the *opposite* proposition, titling one of their sub-arguments "Consent is a common issue as comScore used *uniform dialog boxes* and ULAs." (Dkt. No. 184 at 3 (emphasis added).) In that section, Plaintiffs also stated:

> Whether any consumer consented to monitoring requires a purely objective analysis of the written disclosures and/or ULA supposedly presented to every installer of OSSProxy. These written documents are *uniform*—both in terms of their content and presentation—and comScore has offered no other explanation for how one might consent to monitoring (because there isn't any).

(Dkt. No. 184 at 3-4 (emphasis in original).) Based on these representations by Plaintiffs, the Court granted class certification, in part because "the question of whether comScore is a party to the ULA and the Downloading Statement in light of the fact that it is not listed as a contracting party can be resolved consistently for the entire class." (Dkt. No. 186 at 9.) If the factual question of whether or not comScore is named in the Downloading Statement is material to this issue—as Plaintiffs believe it is—then the question of whether comScore is a party to the Downloading Statement cannot be resolved consistently for the entire class.

---

Representative Mike Harris testified that he downloaded the "Secret Land Screensaver" onto his i-Mac—but Ex. A to the Amended Complaint is a Disclosure Statement for a Color Therapy Clock screensaver. (Dkt. No. 176-16 – Harris Dep. Tr. at 70:22-71:18.) Whether Harris, the sole representative of the subclass, saw a Downloading Statement which identified VoiceFive as a comScore company is unknown. As noted in earlier pleadings, Harris states he discarded his computer and claims he cannot locate his external back-up hard-drive.

[4] Plaintiffs likely did not point out that they cannot prove what the purported members of the Subclass saw when they viewed the Downloading Statement because it would undermine the arguments they already made to the Court with respect to class certification.

4

Finally, at the end of the day, Plaintiffs' Surreply brief should not change the Court's analysis with respect to comScore's Motion to Transfer Venue. Plaintiffs cannot avoid that the class members agreed to the ULA (however labeled) and that the ULA included a reference to comScore. Plaintiffs cannot avoid *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012) which holds that a parent corporation such as comScore may enforce a venue provision. Plaintiffs cannot avoid that the purpose of the ULA, as stated in the ULA, is to benefit comScore, making comScore at least a third party beneficiary. Plaintiffs cannot avoid that the members of the Subclass affirmatively stated that they had "read [and] agree[d] to . . . the terms and conditions of the Privacy Statement and User License Agreement" and that only notice of a contract, not the opportunity to view the terms of such contract, is necessary prior to acceptance of a contract. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1150 (7th Cir. 1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1450-51 (7th Cir. 1996). And finally, Plaintiffs cannot avoid the fact that the Subclass makes up a tiny subset of the overall Class in this matter—and that, according to *Atlantic Marine*, the Class's claims must be transferred to Virginia as a matter of law.

DATED: February 13, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

  */s/ Andrew H. Schapiro*
Andrew H. Schapiro
andrewschapiro@quinnemanuel.com
Stephen Swedlow
stephenswedlow@quinnemanuel.com
Robyn Bowland
robynbowland@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois  60661
Telephone:  (312) 705-7400

        Facsimile:   (312) 705-7499

        Paul F. Stack
        pstack@stacklaw.com
        Stack & O'Connor Chartered
        140 South Dearborn Street
        Suite 411
        Chicago, IL 60603
        Telephone:  (312) 782-0690
        Facsimile:  (312) 782-0936

        *Attorneys for Defendant comScore, Inc.*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that a true and correct copy of COMSCORE, INC.'S FINAL REPLY IN SUPPORT OF ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) has been caused to be served on February 13, 2014 to all counsel of record via the Court's ECF filing system.

          */s/ Robyn Bowland*
          Robyn Bowland