**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

MIKE HARRIS and JEFF DUNSTAN,
individually and on behalf of a class of
similarly situated individuals,

        Plaintiffs,

      v.

COMSCORE, INC., a Delaware corporation,

        Defendant.

Case No. 1:11-cv-5807

Hon. James F. Holderman

Magistrate Judge Young B. Kim

**PLAINTIFFS JEFF DUNSTAN'S AND MIKE HARRIS'S
LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56.1(a) of the Local Rules of the Northern District of Illinois and in support of their Motion for Partial Summary Judgment, Plaintiffs Jeff Dunstan and Mike Harris ("Plaintiffs") submit this statement of undisputed material facts:

**Parties, Jurisdiction, and Venue**

1.    comScore, Inc. ("comScore") is a Delaware corporation with its headquarters located in Reston, Virginia. (Dkt. 180 at ¶ 21.)

2.    Plaintiff Jeff Dunstan is a citizen of California. (Dkt. 169 at ¶ 20.)

3.    Plaintiff Mike Harris is a citizen of Illinois. (Dkt. 169 at ¶ 19.)

4.    Through their Second Amended Complaint, Plaintiffs allege violations of three federal statutes: the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*., the Electronic Communications Privacy Act, 18 U.S.C. § 2510–22, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. (Dkt. 169 at ¶¶ 81–110.)

5.      comScore transacts business in the Northern District of Illinois and throughout the United States. (Dkt. 180 at ¶¶ 21, 23.)

**comScore and its Panelist Software, OSSProxy**

6.      comScore is an Internet market research company that designs and distributes software to measure the online activity of Internet users. comScore refers to Internet users that have its software installed on their computers as "panelists," who together comprise comScore's "panel." (Dkt. 180 at ¶ 1; Dkt. 14 at ¶ 3; Transcript of November 21, 2013 Deposition of John O'Toole ("O'Toole Nov. 21, 2013 Dep. Tr."), Ex. 1[2] at 7:14–17; Transcript of November 20, 2013 Deposition of Yvonne Bigbee ("Bigbee Nov. 20, 2013 Dep. Tr."), Ex. 2 at 9:11–16.)

7.      comScore refers to its panelist software as "OSSProxy," but publicly distributes it using "brand" names, including RelevantKnowledge and PremierOpinion. (Transcript of August 15, 2012 Rule 30(b)(6) Deposition of Michael Brown ("Brown Aug. 15, 2012 R. 30(b)(6) Dep. Tr."), Ex. 3 at 9:8–15; Dkt. 180 at ¶¶ 4, 34.)

8.      All "brands" of OSSProxy are functionally identical. (Brown Aug. 15, 2012 R. 30(b)(6) Dep. Tr. at 91:3–92:8.)

9.      TMRG, Inc. ("TMRG") is a Delaware corporation with its "Privacy Office" located in Reston, Virginia. TMRG is the "program sponsor" for the RelevantKnowledge brand of OSSProxy. (Ex. 4 at 7–8.).

10.     VoiceFive Networks, Inc. ("VoiceFive") is a Delaware corporation with its "Privacy Office" located in Reston, Virginia. VoiceFive is the "program sponsor" for the PremierOpinion brand of OSSProxy. (Ex. 5 at 8.)

---

[2]      All references to Exhibits ("Ex.") refer to Exhibits attached to the Declaration of Benjamin S. Thomassen, filed concurrently with the filing of this Statement of Facts.

11.     comScore generates revenue by selling different product lines—such as Media Metrix, Plan Metrix, and QSearch—that utilize panelist data collected through OSSProxy. (Transcript of January 24, 2012 Rule 30(b)(6) Deposition of Scott Mitchell ("Mitchell R. 30(b)(6) Dep. Tr."), Ex. 6 at 22:6–25:5, 26:19–27:12, 40:14–42:15; Dkt. 180 at ¶¶ 2–3, 5; Brown Aug. 15, 2012 R. 30(b)(6) Dep. Tr. at 63:22–66:7.)

12.     comScore currently measures the online behavior of over two million people worldwide and, through its website, claims to capture "well over 1.5 trillion interactions" on a monthly basis, equal to almost forty percent of the monthly page views of the entire Internet. (Dkt. 176-1 at 2; *accord* Dkt. 180 at ¶¶ 25, 30.)

**comScore's Online Recruitment of Panelists**

13.     comScore recruits panelists using two different methods: (i) its "affiliate program," where users can download OSSProxy directly through a comScore-controlled website (e.g., PermissionResearch.com or OpinionSquare.com) and (ii) its "Third-Party Application Provider Program" (the "TAP Program"), where users can download OSSProxy from a third party application provider (a "TAP partner") as a part of a software "bundle." (Transcript of January 24, 2014 Rule 30(b)(6) Deposition of John O'Toole ("O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr."), Ex. 7 at 9:8–10:10; Dkt. 14 at ¶ 4; CS0081903_Confidential--Attorney's Eyes Only.pptx, Ex. 8 at 15.)

14.     Through the affiliate program, comScore recruits panelists by partnering with a network of "small-audience web entities" to host banner advertisements that, once clicked on, direct users to a comScore-controlled website (e.g., www.permissionresearch.com) where OSSProxy can be installed after a user (i) agrees to a ULA; (ii) creates a membership profile by entering certain information into website text fields (first and last name, address, email, gender,

birthdate, etc.); (iii) sets up a household profile (providing information about household members' gender, "head of household" status, employment, along with the user's household's race and annual income, etc.); and (iv) downloads the installer package for OSSProxy. (O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. at 10:15–11:1, 25:4–27:13; CS0081903_Confidential – Attorney's Eyes Only.pptx at 15; Thomassen Decl. at ¶¶ 11-15.)

15.     Panelists recruited through the TAP program, on the other hand, are recruited exclusively through third party software developers that "bundle" OSSProxy with their own freeware's installer package, such that the installation process for the downloaded freeware will also prompt the user to install OSSProxy. (Dkt. 180 at ¶¶ 12, 32; CS0081903_Confidential – Attorney's Eyes Only.pptx at 15.)

16.     comScore pays third party application developers to offer OSSProxy with their applications ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ (Dkt. 180 at ¶ 53; O'Toole Nov. 21, 2013 Dep. Tr. at 77:11–19; O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. at 71:5–72:16; (Transcript of December 13, 2013 Deposition of Joshua Chasin ("Chasin Dep. Tr."), Ex. 9 at 87:6–13.)

17.     ████████████████████████████████████

███████████████████████████. (Chasin Dep. Tr. at 39:7–13; O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. at 12:2–13:13.)

18.     ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

 (O'Toole Jan. 24, 2014 R.

30(b)(6) Dep. Tr. at 49:9–16.)

19.

. (O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. at 44:9–16; Chasin Dep. Tr. at 51:6–

17.)

**The TAP Installation Process**

20.     RelevantKnowledge and PremierOpinion

(Transcript of September 12, 2012 Deposition of Yvonne

Bigbee ("Bigbee Sept. 12, 2012 Dep. Tr."), Ex. 10 at 50:14–51:20.)

21.     The installation process for OSSProxy is materially identical for every Panelist

recruited through comScore's TAP program. (*See* Dkt. 40 at ¶ 14; Expert Witness Report of

Colin O'Malley ("O'Malley Rpt."), Ex. 11 at 6.)

22.     The TAP installation process for OSSProxy begins when an Internet user finds a

website that offers a TAP partner's bundled freeware (a free software application such as a

screensaver, game, CD copying software, greeting card template, etc., that has been bundled with

OSSProxy) and elects to download the bundled installer package. (*See* O'Malley Rpt. at 6; Dkt.

180 at ¶ 32; Dkt. 158 at ¶ 2.)

23.     TAP partners are not required to disclose that the bundled freeware they offer has

been bundled with OSSProxy—i.e., in most instances, before downloading the freeware, a user

would be unaware that by downloading the freeware installer package, they are also

downloading the installation files for OSSProxy. comScore's own expert, Colin O'Malley,

testified that he would be "surprised to see" a reference to OSSProxy on the third party application developer websites that offer bundled freeware. (*See* O'Malley Rpt. at 6; Transcript of December 13, 2012 Deposition of Colin O'Malley ("O'Malley Dep. Tr."), Ex. 12 at 125:10–126:1.)

24.     For those TAP panelists that downloaded and installed OSSProxy, each was presented with a "Downloading Statement"—a dialog window displaying an abbreviated statement relating to a particular "brand" of OSSProxy. (Dkt. 14 at ¶¶ 4, 6; O'Malley Rpt. at 9–10; Transcript of December 3, 2013 Deposition of Richard Weaver ("Weaver Dep. Tr."), Ex. 13 at 14:7–15:7; Dkt. 156-5.) Over the course of the bundled freeware's installation process, the Downloading Statement is the first explicit indication that OSSProxy may be installed along with the TAP partner's freeware. (*See* O'Malley Rpt. at 6–9.)

25.     For a user to successfully install OSSProxy through the TAP method, the user must initialize the bundled freeware's installation process and then click past the installation windows until OSSProxy's Downloading Statement is displayed. (O'Malley Rpt. at 9–10; Dkt. 40 at ¶ 6, 14(b); Dkt. 14 at ¶ 4.)

26.     Unlike the affiliate program, which requires that users provide personal and other demographic information *before* downloading OSSProxy, *see supra* ¶ 14, Panelists recruited through the TAP program are not required to provide any personal or demographic information to either comScore, the sponsor, or the TAP partner before or following the installation of OSSProxy. (O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. at 45:8–22, 67:10–20.)

27.     Each of the Downloading Statements identified the brand of OSSProxy being offered for installation (e.g., RelevantKnowledge), explained that the branded OSSProxy was included in the software package "in order to provide this free download," and represented that

OSSProxy was "provided by" a named program sponsor (i.e., either TMRG or VoiceFive). (Dkt. 156-5; Dkt. 156-7 at 7; O'Malley Rpt. at 9–10.)

28.     The Downloading Statement does not explain that most users were not required to install OSSProxy in order to install and use the freeware provided by the TAP partner. (*See* Dkt. 156-5; O'Malley Rpt. at 10 ("If the consumer elects to decline, RelevantKnowledge will not be installed, and MP3 Cutter will remain on their machine. They are not forced to agree to RelevantKnowledge terms to obtain MP3 Cutter."); CS0081903_Confidential--Attorney's Eyes Only.pptx at 15; Weaver Dep Tr. at 213:4–19, 217:2–218:17 ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

29.     Each Downloading Statement asked users to acknowledge that they have "read, agreed to, and have obtained the consent of all . . . users to the terms and conditions of the Privacy Statement and User License Agreement," and then provided most users (with the exception of Subclass members) with a functional hyperlink to the relevant sponsor's User License Agreement and Privacy Statement ("ULA"). (Dkt. 14 at ¶¶ 4, 6; O'Malley Rpt. at 10; Dkt. 40 at 3 n.1; Weaver Dep. Tr. at 17:7–12, 19:14–20.)

30.     When clicked on, the hyperlink presented in the Downloading Statement directs users to a comScore-controlled website that contains the ULA in its entirety. (Dkt. 14 at ¶ 6, Dkt. 40 at 3 n.1.)

31.     Before clicking past the Downloading Statement, users are required to acknowledge—by filling in a radio button or some equivalent activity—that they had "read [and]

agreed to . . . the terms and conditions of the [ULA] in order to download and install OSSProxy."
(Dkt. 14 at ¶ 4.)

32.     Though each member of the Class was presented with a functional hyperlink to
the full ULA, members of the Subclass viewed a Downloading Statement that lacked a hyperlink
to the ULA, or any instructions for accessing it. (Dkt. 180 at ¶ 37; Dkt. 14 at ¶ 6; O'Malley Rpt.
at 10 n.6).

33.     None of the windows presented during the installation process (including the
installation screens for the freeware and OSSProxy's Downloading Statement) bore a title header
that referenced RevelantKnowledge, TMRG, or comScore. (Dkt. 156-5.) Instead, references in
the window titles were to the freeware provider or the freeware itself.  (Dkt. 156-5; Dkt. 156-7;
O'Malley Rpt. at 8–10.)

**The User License Agreement**

34.     All of the ULAs presented to panelists were and are materially identical,
regardless of which bundler or sponsor provided the software. (Dkt. 186 at 3–4; O'Malley Rpt. at
6.)

35.     The RelevantKnowledge ULA—a version of which was attached to Plaintiffs'
Supplemental Motion for Class Certification and shows the RelevantKnowledge ULA as it
existed on September 15, 2010, (Dkt. 158 at ¶¶ 5–9)—is currently accessible at http://
www.relevantknowledge.com/RKPrivacy.aspx.

36.     The RelevantKnowledge ULA lists "TMRG, Inc." as the "program sponsor" for
the RelevantKnowledge brand of OSSProxy. (Ex. 4 at 7.)

37.     Under the heading "PRIVACY POLICY & USER LICENSE AGREEMENT,"
the ULA provides that "[b]efore joining our program, enjoying the benefits of this program, and

installing our application, you must review and agree to the terms and conditions below and provide and obtain consent to this agreement from anyone who will be using the computers on which you install this application." (Ex. 4 at 2.) The ULA does not reference "terms and conditions" before this sentence, or before the "PRIVACY POLICY & USER LICENSE AGREEMENT" header.

38.     In the short portion of the ULA appearing before the "terms and conditions below" language, the ULA references entities other than the program sponsor:

> [T]he data collected is used as part of anonymous market research reports that help shape the future of the Internet. The information you contribute is used by **comScore, Inc**., a U.S.-based market research company that is a nationally-recognized authority on Internet and general economic trends, whose data are routinely cited by major media outlets such as the **New York Times, the Wall Street Journal, and CNBC**, and is extensively used by **the largest Internet service companies and scores of Fortune 500 companies**.

None of these entities are mentioned after the "terms and conditions below" language, and none are referenced by the ULA using a personal pronoun (i.e., each is identified either by name or group). (Ex. 4 at 2 (emphasis added).)

39.     In a section labeled "What information is collected?" the ULA outlines the types of information OSSProxy collects, and states that:

> [W]e make commercially viable efforts to automatically filter confidential personally identifiable information such as UserID, password, credit card numbers, and account numbers. Inadvertently, we may collect such information about our panelists; and when this happens, we make commercially viable efforts to purge our database of such information.

(Ex. 4 at 2–3.) The terms "confidential personally identifiable information" and "automatically filter" are not otherwise defined by the ULA, but do appear one additional time under the header "How is the collected information used?" after the ULA explains that "[f]or certain commercial customers, we may provide individual-level information." (Ex. 4 at 4.)

40.    Under other headings, the ULA generally discusses (i) what information is collected by "our application," (ii) how the information is collected, (iii) how the collected information is used, (iv) how the collected information is secured, (v) the participants (i.e., panelists') obligations, (vi) the program sponsor's commitment to participants, (vii) other legal terms and conditions, and (viii) who to contact with additional questions. (Ex. 4.)

41.    Nowhere in the ULA is the "software" or "application" referred to or identified as belonging to or being operated by comScore. Instead, throughout the ULA, the software or application is referred to as "our software," "the software," "our application," or "the application." (Ex. 4.)

42.    The only point of contact provided for users and/or panelists (i.e., "[i]f [they had] any questions about the above Privacy Statement & User License Agreement, our practices, [their] interactions with this site and this program," or "support issues") is the program sponsor's "Privacy Office," for which the ULA provides mailing and email addresses (e.g., "Privacy Office, 11950 Democracy Drive, Suite 600, Reston, VA 20910;" and "privacy@tmrginc.com" / "support@tmrginc.com"). (Ex. 4.)

43.    The ULA's terms and conditions provide that "[the] Agreement constitutes the entire agreement between sponsor and you with respect to the subject matter contained in the Agreement," and explains that "[the] agreement shall not create any rights or remedies in any parties other than the parties to the agreement and no person shall assert any rights as a third party beneficiary under this agreement." (Ex. 4 at 7.)

**Panelist Data Collected by OSSProxy**

44.     OSSProxy collects data from panelists' computers and transmits the data to comScore's servers. (Dkt. 180 at ¶¶ 5, 25; Brown Aug. 15, 2012 R. 30(b)(6) Dep. Tr. at 153:10–14, 195:3–14.)

45.     The data collected from panelists' computers by OSSProxy includes, but is not limited to: POST data (i.e., information typed into an input form by a panelist on a website); PAGE data (i.e., information displayed on a website viewed by a panelist, especially during "secure" sessions); other aspects of a panelist's online activity, such as what advertisements they click on and how long they are online; data concerning the files stored on, software installed on, and the configuration of panelists' computers. (Dkt. 180 at ¶¶ 7, 9, 43; Bigbee Nov. 20, 2013 Dep. Tr. at 53:5–14, 64:18–65:17; Transcript of November 14, 2013 Deposition of Glenn Marchione ("Marchione Dep. Tr."), Ex. 14 at 28:1–24.)

46.     comScore established a panel in order to collect behavior data about Macintosh users (the "Mac Panel"), and developed Macintosh-compatible software specifically for that purpose. The Mac Panel software was publicly available beginning on September 29, 2009. (Dkt. 180 at ¶ 10.)

**Filtering versus Fuzzification**

47.     comScore programmed OSSProxy with the ability to (i) collect data in raw, plaintext form; (ii) filter data from OSSProxy's collection, and (iii) obfuscate (i.e., "fuzzify") data collected by OSSProxy. (*See infra*, ¶¶ 48-62.)

48.     By using technology comScore refers to as ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████ (*See* Marchione Dep Tr. at 74:11–75:12;

CS0035637_Confidential--Attorney's Eyes Only.htm, Ex. 15.)

49.     Using similar technology, comScore programmed OSSProxy to exclude certain

categories of websites from OSSProxy's collection. (Bigbee Sept. 12, 2012 Dep. Tr. at 44:4–

46:17 ("Q: Give me an example of HTML information that OSSProxy would not capture. A:

Information from dot-edu sites, university sites; information from a personal Google mail contact,

we don't collect that.").)

50.     comScore also utilizes "fuzzification"—a proprietary method of (i) identifying

certain panelist-inputted data, (ii) "obfuscating"/"fuzzifying" it, and then (iii) delivering the

obfuscated/fuzzified value to comScore's servers. (Brown Aug. 15, 2012 R. 30(b)(6) Dep. Tr. at

147:16–148:2; Bigbee Sept. 12, 2012 Dep. Tr. at 40:20–41:3 ("[Fuzzification is] a system that

we have in place to look for patterns in the data, to make sure that we either X out or hash any

data that we deem to be sensitive to the user."); Transcript of December 14, 2012 Deposition of

Roberto Tamassia ("Tamassia Dep Tr."), Ex. 16 at 51:14–52:4 ("Q: When you write in your

report that sensitive data is transformed through the obfuscation process, what do you mean by

transformed? A: What I mean is that there is a matter that takes as input data and could use as

output some other data; that is the transformation process . . . The software tries to identify the

presence of various types of sensitive data including Social Security numbers and credit card

numbers. And once they are discovered, the software either removes completely the data or

transforms it so that the new output data cannot be used to reconstruct the original data.").)

51.     comScore considers OSSProxy's "filtering" and "fuzzification" as separate and

distinct processes, and uses each to accomplish different goals. (Brown Aug. 15, 2012 R.

30(b)(6) Dep. Tr. at 219:13–16 ("Q: Filtering and fuzzifying are two different things? A: In my

opinion, filtering and fuzzifying are two different things."), 214:9–19 

Bigbee Nov. 20, 2013

Dep. Tr. at 54:5–21

."); 66:12–23

) (emphasis added).)

    52.    comScore uses OSSProxy's "filtering" programming to identify and then exclude

data from OSSProxy's collection that it *doesn't* want to collect, such as in cases where the

filtered data is not a part of comScore's business model. (Bigbee Sept. 12, 2012 Dep Tr. at 44:4–

14 ("Q: . . . Why would comScore not collect HTML page data information from dot-edu sites?

A: It's not part of our business model to collect activities from universities . . . .")

53.     comScore uses OSSProxy's "fuzzification" programming to identify, obfuscate, and then include data in OSSProxy's collection that it *does* want to collect, such as in cases where the identified data is part of comScore' business model. (Brown Aug. 15, 2012 Dep. Tr. at 218:22–219:12 ("A: We collect fuzzified data because we don't want to collect data that would be harmful or identify who that panelist is, you know. The last thing we want to have is a list of credit card numbers from panelists. That's an exposure for the panelist and exposure for us. Q: It's important to filter the information? A: In this case, we're not talking about filtering the information, we're talking about changing the information. . . we're changing the information in a one-way manner that's not reversible; that is the goal of fuzzification."); Tamassia Dep Tr. at 52:24–53:14 ("Q: My understanding of the way the comScore software works is that it uses regular expressions to detect some certain information like a credit card or Social Security number? A: Yes. Q: Then it collects that information and transforms it; those are your words? A: Yes.), 53:5–54:3 (". . . My understanding of the comScore business is that they're the one to provide aggregate statistical data to their customers about, for example, the use of certain credit cards for transactions. So that's one of the reasons that they will track credit card usage across the economy, across the users of the software.").) Transcript of October 25, 2012 Deposition of Don Waldhalm ("Waldhalm Dep. Tr."), Ex. 17 at 92:23–93:12 ██████████████

████████████████████████████████████████████████████████

██ )

█████████████████████████

54.     ██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

14



Marchione Dep. Tr. at 30:24–31:19

”); Bigbee Nov. 20, 2013 Dep. Tr. at 118:24–119:10

55.

(Bigbee Nov. 20, 2013 Dep. Tr. at 121:3–122:1; CS0017688_Confidential--Attorney's Eyes Only.pdf, Ex. 18; CS0076561_Confidential--Attorney's Eyes Only.htm, Ex. 19.)

56.

). (Marchione Dep Tr. at 43:14–48:23

); Bigbee Sept. 12, 2012 Dep. Tr. at 110:12–111:18



”).)

57.

(Bigbee Nov. 20, 2013 Dep. Tr. at

121:3–122:1

.”).)

58.

(CS0081698_Confidential.htm, Ex. 20; CS0081713_Confidential.htm, Ex. 21.)

59.



(CS0081698_Confidential.htm.)

60. 

(CS0081698_Confidential.htm.)

61. 

(*See* CS0081698 Confidential.htm; Thomassen Decl. at ¶¶ 3-9.)

62. 

(CS0081698_Confidential.htm; Thomassen Decl. at ¶¶ 7-9.)

**Deleting/Modifying Personally Identifiable Profile Information**

63. 

Transcript of November 22, 2013 Deposition of Latoya Peterson-Renfrow

("Renfrow Dep. Tr."), Ex. 22 at 101:3–17; O'Toole Jan. 24, 2014 R. 30(b)(6) Dep. Tr. 123:21–

124:9 ██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████).)

**Adherence to comScore's Disclosed PII Practices**

64.    comScore's Director of Software Engineering, Steven Chase testified that ███████

████████████████████████████ Transcript of November 13, 2013 Deposition of

Steven Chase ("Chase Dep. Tr."), Ex. 23 at 90:18–20 ███████████████████████

██████████ 96:18–23 ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████).)

65.    Michael Brown, comScore's Chief Technology Officer, responsible for the source

code and technology that allows for fuzzification and testifying for comScore pursuant to Rule

30(b)(6), ████████████████████████████████████████████

████████████. (Transcript of January 23, 2014 Rule 30(b)(6) Deposition of Michael Brown

("Brown Jan. 23, 2014 R. 30(b)(6) Dep. Tr."), Ex. 24 at 80:5–81:5.)

66.    Regarding the promise to "purge our database of [inadvertently collected

personally identifiable information]," *see supra* ¶ 39, comScore's Deputy Privacy Officer

testified that ██████████████████████████████████████████,"

(Weaver Dep. Tr. at 273:17–24), and several of comScore's employees, including its Vice

President of Panel Operations, its Chief Research Officer, and its Senior Vice President of

Technology, testified that ██████████████████████████████████████

18

 . (O'Toole Nov. 21, 2013 Dep. Tr. at 118:12–23

."); Chasin Dep. Tr. at 70:11–16, 86:4–9

("Q: . . .

."); Bigbee Nov. 20,

2013 Dep. Tr. at 27:22–28:1 ("Q

.").)

**comScore Alone Designed, Deployed, Maintained, and Operated OSSProxy**

67.     comScore alone designed OSSProxy—neither TMRG, nor VoiceFive, nor any of comScore's subsidiaries, had any involvement in OSSProxy's design or development. (Brown Aug. 15, 2012 R. (30)(b)(6) Dep. Tr. at 71:21–74:22.)

68.     comScore's subsidiaries have no ability to modify OSSProxy in any way, nor do they have the ability to update OSSProxy. All updates of OSSProxy are designed and deployed by comScore. (*Id.* at 112:9–114:12.)

69.     comScore alone deploys OSSProxy directly to panelists, regulates the downloading of OSSProxy, validates that the terms of service have been accepted (i.e., after users click past the Downloading Statement over the course of a bundle's installation), installs the software onto panelists' computers, configures the software to operate properly on panelists' computers, and maintains OSSProxy. (*Id.* at 77:13–79:10.)

70.     comScore directly monitors and collects information from its panelists—information about panelists' web browsing history and other Internet behavior is transmitted to comScore's servers, not to comScore's subsidiaries. (*Id.* at 152:25–153:14.)

71. Neither TMRG nor VoiceFive receive any panelist data from OSSProxy. (*Id.* at 75:25–76:12.)

72. ████████████████████████████████████████████████

████████████████████████████. (*Id.* at 157:8–12; Weaver Dep. Tr. 41:17–23, 44:16–47:18.)

**Panelists' Relationship with Sponsors**

73. Emails sent to the email addresses presented in the ULA (i.e. support@tmrginc.com or privacy@tmrginc.com), ████████████████████████

████████████████████████████████████. (Weaver Dep. Tr. 247:7–17 ("████████████████████

████████████████████████████████████████████████

████████████ 249:11–15 ████████████████████████

████████████ O'Toole Nov. 21, 2013 Dep. Tr. 104:10 – 106:3.)

74. comScore has ████████████████████████████

████████████████████████████████████

████████████████████████████████ (O'Toole Nov. 21,

2013 Dep. Tr. at 104:6–106:4 ████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████.”); O'Toole Jan. 24, 2014

R. 30(b)(6) Dep. Tr. at 60:13–61:3 ████████████████████



CS0042536_Confidential--Attorney's Eyes Only.htm, Ex. 25

emphasis in original).)

75.

(CS0071631_Confidential--Attorney's Eyes Only.htm, Ex. 26

**Plaintiffs' Experience with OSSProxy**

76.     Plaintiff Mike Harris downloaded and installed a free software application that was bundled with OSSProxy (branded as "PremierOpinion") onto his Macintosh computer in March of 2010. (Dkt. 169 at ¶ 64; Transcript of July 13, 2012 Deposition of Mike Harris ("Harris July 13, 2012 Dep. Tr."), Ex. 27 at 35:6–8, 41:9–14, 43:7–11.)

77.     Plaintiff Jeff Dunstan downloaded and installed freeware that was bundled with OSSProxy (branded as "RelevantKnowledge") in September of 2010, and paid $39.99 for a program called PC Doctor to remove RelevantKnowledge from his computer. (Dkt. 169 at ¶ 67; Transcript of November 19, 2013 Deposition of Jeff Dunstan ("Dunstan Nov. 19, 2013 Dep. Tr."), Ex. 28 at 14:21–25, 20:17–21:10.)

Respectfully submitted,

**MIKE HARRIS** and **JEFF DUNSTAN**,
individually and on behalf of a class of
similarly situated individuals,

Dated: February 21, 2014

By: s/ Rafey S. Balabanian
    One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
Chandler R. Givens
cgivens@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs, the Class, and
the Subclass*

## <u>CERTIFICATE OF SERVICE</u>

     I, Rafey S. Balabanian, an attorney, hereby certify that on February 21, 2014, I served the above and foregoing ***Plaintiffs Jeff Dunstan's and Mike Harris's Local Rule 56.1 Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Rafey S. Balabanian