# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals, </br></br> Plaintiffs, </br></br> v. </br></br> COMSCORE, INC., a Delaware corporation, </br></br> Defendant. | Case No. 1:11-cv-05807 </br></br> Hon. James F. Holderman </br></br> Magistrate Judge Young B. Kim |

## DECLARATION OF RAFEY S. BALABANIAN

I, Rafey S. Balabanian, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am an adult over the age of 18 and a citizen of the State of Illinois. I am a partner of the law firm Edelson PC, and licensed to practice law in the State of Illinois. I represent Plaintiffs Mike Harris, Jeff Dunstan ("Plaintiffs") and have been appointed Class Counsel in this matter. I am fully competent to make this Declaration, have personal knowledge of all matters set forth herein unless otherwise indicated, and could and would testify truthfully to such matters if called as a witness in this action. I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

2. On August 23, 2011, Plaintiffs filed their initial Class Action Complaint against comScore, Inc. ("comScore") (collectively with Plaintiffs, the "Parties"), challenging its collection of consumer data through its software, OSSProxy. (Dkt. 1.) After comScore filed its Answer (Dkt. 59), the Parties engaged in substantial discovery regarding class certification. During that time, the Parties served and responded to seven sets of written discovery, filed and

1

responded to motions to compel (Dkts. 102, 104), and exchanged tens of thousands of documents. The Parties also took nine depositions, including those of the Plaintiffs and comScore's Rule 30(b)(6) designee, and exchanged expert discovery. In January of 2013, after the close of class discovery, Plaintiffs moved for class certification and filed their Second Amended Complaint (Dkt. 169), alleging violations of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA"), the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* ("ECPA"), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

3.  After full briefing, the Court granted in part and denied in part Plaintiffs' Motion for Class Certification. (Dkt. 186.) Two weeks after the Court entered the Class Certification Order, comScore petitioned the Seventh Circuit Court of Appeals for leave to appeal the decision, pursuant to Fed. R. Civ. P. 23(f). *See Harris v. comScore, Inc.*, No. 13-8007, Dkt. 1 (7th Cir. Apr. 16, 2013). The Seventh Circuit ultimately denied comScore's Rule 23(f) petition. (Dkt. 199.)

4.  After the denial of comScore's Rule 23(f) petition, the Parties proceeded with merits discovery. As with class discovery, the Parties exchanged tens of thousands of documents and took numerous additional depositions (in all, the Parties took twenty-three, including ten depositions of comScore's employees, six Rule 30(b)(6) depositions of comScore, two separate depositions of both Plaintiffs on class and merits issues, one third-party deposition, and three expert depositions). As part of the merits phase of discovery, the Parties also filed, briefed, and argued several motions to compel. (Dkts. 224, 226, 245, 293.)

5.  Beginning in August of 2013—shortly after the Seventh Circuit denied comScore's Rule 23(f) petition and early in merits discovery—the Parties began to discuss the

possibility of settlement. On August 22, 2013, the Parties engaged in a full-day mediation presided over by Rodney A. Max of the Upchurch Watson White and Max Mediation Group. Despite the best efforts of the Parties and the mediator, no settlement was reached as a result of that mediation. However, the mediation allowed the Parties to make progress in terms of closing the substantial gap in their opening positions.

6. Following that initial session, over the course of the next few months, Mr. Max repeatedly followed up with both Parties, in order to keep the momentum moving towards settlement, but his efforts eventually gave way to the Parties' desire to continue litigating, given their vastly different views at that time regarding an appropriate settlement. Thus, the Parties pushed forward with engaging in merits discovery.

7. Near the end of the merits discovery period, the Parties agreed to attend a settlement conference to be presided over by Magistrate Judge Kim, which took place on November 25, 2013. (Dkt. 286.) With Magistrate Judge Kim's knowledge of the case and his guidance over the settlement conference, the Parties continued to make progress toward a settlement, and agreed to engage in a second settlement conference, which took place on December 16, 2013. (Dkt. 292.) Though the Parties made progress toward a resolution of the matter, that conference also failed to result in settlement. Nevertheless, the Parties continued to exchange settlement offers.

8. After Magistrate Judge Kim adjourned the settlement conference but before he closed the referral, on January 9, 2014, he made a mediator's proposal to the Parties, which provided for a $14 million, non-reversionary settlement fund. Magistrate Judge Kim gave the Parties a deadline of 3:00 p.m. on January 13, 2014 to accept or decline the offer. The Parties did not accept the proposal at that time.

9. Following the lapse of Magistrate Judge Kim's proposal, the Parties proceeded with litigation, culminating with comScore moving to dismiss (Dkt. 242)—and later, to transfer (Dkt. 302)—and Plaintiffs filing a motion for partial summary judgment. (Dkt. 321.)

10. Over the course of the next month, the Parties continued to engage in settlement negotiations, and eventually, on March 19, 2014, the Parties agreed to the terms proposed in Magistrate Judge Kim's mediator's proposal—i.e., to a settlement that would create a non-reversionary $14 million fund. Over the course of the following two months, the Parties negotiated the remaining terms of the settlement, including injunctive relief, Class Notice, the claims process, and the particulars of the Settlement Agreement. Finally, on May 30, 2014, the Parties and their counsel agreed to execute the Settlement Agreement.

11. While Plaintiffs are confident in their claims, they are cognizant of the substantial risks that would accompany further litigation. comScore is represented by highly experienced attorneys from one of the most preeminent law firms in the world, and has made clear that without a settlement, it was prepared to continue vigorously defending this case—including moving to decertify the Classes and for summary judgment. Plaintiffs are aware that in the absence of a settlement, they would be subject to the uncertainty and expense of trial, and the risks and delays of inevitable appeals. Plaintiffs are also mindful that comScore would continue to assert a number of defenses on the merits—such as consent, which comScore has repeatedly maintained it has obtained from each and every Class member—and more complicated defenses, such as whether Plaintiffs can satisfy the "facility" and "electronic communication service" elements of the SCA, the "interception" and "electronic communication" elements of the ECPA, and the minimum damages requirement of the CFAA.

12. Additionally, Plaintiffs are aware that while some of comScore's defenses can be

resolved on a motion for summary judgment, many (if not most) would only be resolved after a complex and expensive trial. Looking beyond trial, Plaintiffs are also keenly aware that comScore would appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages at issue, comScore would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns. The immediate and substantial relief provided by the proposed settlement therefore weighs highly in favor of approval, and avoids the inherent risks associated with this complex and novel litigation.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of May, 2014 at Chicago, Illinois.

                                                                      s/ Rafey S. Balabanian