# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MIKE HARRIS and JEFF DUNSTAN,
individually and on behalf of a class of
similarly situated individuals,

        Plaintiffs,

        v.

COMSCORE, INC., a Delaware corporation,

        Defendant.

Case No. 1:11-cv-5807

Hon. James F. Holderman

Magistrate Judge Young B. Kim

### DECLARATION OF RAFEY S. BALABANIAN IN SUPPORT OF
### PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
### EXPENSES, AND INCENTIVE AWARD

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am a citizen of the state of Illinois and over the age of eighteen. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2.      I make this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Incentive Award.

3.      I am a partner at the law firm of Edelson PC, which has been retained to represent the named Plaintiffs in this matter, Jeff Dunstan and Mike Harris. I, along with other members of my firm, have been appointed Class Counsel in this case.

**The Litigation and Settlement**

4.      My firm litigated this highly contentious case for nearly three years and, over that time, engaged in substantial motion and discovery practice, three formal mediations, and, finally, the negotiation, drafting, and implementation of a comprehensive settlement agreement.

5.      In terms of motion practice, attorneys at my firm filed, briefed, and responded to dozens of motions, including, among others: motions to dismiss, strike, and transfer; motions to bifurcate, compel, stay, and extend discovery; a motion for class certification under Rule 23(b)(3), along with responding to comScore's petition for leave to appeal the Court's class certification order pursuant to Rule 23(f); motions for approval of a class notice plan; a motion for partial summary judgment; and a motion for preliminary approval of the class settlement reached in this matter.

6.      In terms of discovery, the parties engaged in both class and merits discovery, and attorneys at my firm spent many hours propounding and responding to discovery requests, including propounding third-party discovery; reviewing tens of thousands of electronic documents—most of which were highly technical in nature and, in total, spanned millions of electronic pages; reviewing hundreds of thousands of lines of comScore's software source code; reviewing portions of comScore's live and archived databases through on-site inspections at its headquarters in Reston, Virginia; conducting twenty-four depositions—including depositions of ten comScore employees, six Rule 30(b)(6) depositions, two depositions for each named Plaintiff, three expert depositions, and one third-party deposition; consulting with Plaintiffs' retained expert and interviewing additional proposed experts for trial purposes; and engaging in discovery-related motion practice, including briefing and arguing six motions to compel.

7.      Beginning in August 2013, the Parties began discussing the potential for settlement. In terms of the Parties' concrete settlement efforts (i.e., in addition to the many arm's-length communications between Plaintiffs and comScore exchanged by phone, email, and through in-person meetings), attorneys at Edelson PC drafted two formal mediation statements and appeared for three different in-person mediations.

8. The Parties' first formal mediation took place on August 22, 2013 with third-party neutral Rodney Max—of the Upchurch Watson White & Max Mediation Group—at the Chicago, Illinois offices of Quinn Emanuel Urquhart & Sullivan, LLP. The Parties drafted and exchanged mediation briefs prior to the mediation. While the discussions with Mr. Max were helpful in understanding each side's respective settlement position, no settlement was reached at the mediation, and the Parties returned to litigating the case and moving forward with discovery practice. Following that initial session, over the course of the next few months, Mr. Max repeatedly followed up with both Parties, in order to keep the momentum moving towards settlement, but his efforts eventually gave way to the Parties' desire to continue litigating, given their vastly different views at that time regarding an appropriate settlement. Thus, the Parties moved forward with merits discovery.

9. The Parties' next in-person mediation took place in the form of a settlement conference before Magistrate Judge Kim on November 25, 2013 and, pursuant to the Court's Order, (Dkt. 273), the Parties again drafted and exchanged written settlement positions. With the help of Magistrate Judge Kim, the Parties continued to explore and negotiate their settlement positions, with different offers being extended by each side. At the end of a full day, the Parties did not reach any agreement, but made progress towards resolving the matter and requested that Magistrate Judge Kim conduct a second in-person mediation conference.

10. The Parties met in-person for a second settlement conference before Magistrate Judge Kim on December 16, 2013. Once again, the Parties made progress in closing the gap between their respective settlement positions with the help of Magistrate Judge Kim, but ultimately could not reach an agreement during that settlement conference either.

11.     In an effort to bridge the gap between the Parties' positions, in early January 2014 Magistrate Judge Kim made a mediator's proposal to the Parties—proposing a $14 million non-reversionary settlement fund that Magistrate Judge Kim asked each side to either accept or reject by January 13, 2014. As reported in his January 13th minute order, however, the Parties did not accept Magistrate Judge Kim's proposal at that time.

12.     Notwithstanding their rejection of Magistrate Judge Kim's proposal, the Parties continued to discuss whether settlement was appropriate as they continued forward with the litigation—including, at that time, addressing comScore's motion to transfer and Plaintiffs' motion for partial summary judgment.

13.     As a result of those continued efforts, the Parties ultimately coalesced around the proposal previously made by Judge Kim—accepting the proposed $14,000,000 common fund as a starting point. Plaintiffs then drafted the terms of a proposed settlement agreement, including the class notices and several declarations. The Parties worked to finalize those papers and, on May 30, 2014, the Parties agreed to execute a final version of the Settlement Agreement and Plaintiffs moved for preliminary approval that same day.

14.     In the time since the Settlement was preliminarily approved, the Parties have successfully implemented the Court-approved Notice Plan through the Settlement Administrator, KCC Class Action Services, including the three forms of direct notice (i.e., email, postcard, and "push" notice to active users of comScore's software facilitated through the software itself), along with the execution of a comprehensive internet and publication notice plan. The Settlement Administrator continues to receive claims from Class Members on a weekly basis—submitted online through the Settlement Website and by mail—and fields phone calls and e-mails from Class

Members as well. To date, KCC has received approximately 1,471 phone calls from class members inquiring about the settlement.

15.     My firm likewise set up phone lines to handle direct incoming calls from Class Members, and has fielded dozens of calls from Class Members asking specific questions about the settlement or requesting assistance in filing a claim (e.g., asking for a mailed copy of the claim form, asking how to file a claim on behalf of a deceased family member, etc.).

16.     Of particular note, with the September 3, 2014 deadline to comment upon or request exclusion from the Settlement just two weeks away, not a single Class Member has objected and none have requested to be excluded. Further, the Settlement Administrator has received over seven thousand Claim Forms to date and expects still more, given that the deadline for Class Members to submit Claim Forms has not yet passed and hundreds of new claims have been filed each week since notice was first disseminated in early July 2014.

**Class Counsel's Experience and Work in this Litigation**

17.     Class Counsel have a proven record of effectively and successfully prosecuting complex nationwide consumer class actions, experience that we brought to the prosecution of this case.

18.     My firm has extensive experience in prosecuting class actions and other complex litigation of similar nature, scope, and complexity, and regularly engage in major complex consumer privacy class action lawsuits—including cases of first impression related to data breaches and consumer privacy—and have been appointed class counsel in these efforts. *See, e.g.*, *Claridge v. RockYou, Inc.*, No. 4:09-cv-06032-PJH (N.D. Cal. Mar. 29, 2012); *Resnick v. Avmed*, No. 10-cv-24513 (dkt. 82 at 3) (S.D. Fla. Oct. 25, 2013); *Standiford v. Palm*, No. 5:09-

cv-05719-LHK (dkt. 82 at 2) (N.D. Cal. Jan. 26, 2012). (*See also* Firm Resume of Edelson PC, a copy of which is attached as Exhibit A.)

19.     At the time of filing this case, I was aware that my firm would spend thousands of hours of attorney time in contested litigation involving highly technical issues of first impression, against some of the world's premier law firms, and certainly with no guarantee of success.

20.     I have reviewed my firm's retainer agreements with Mr. Harris and Mr. Dunstan. Those retainers contain contingency fee arrangements whereby we would receive up to one third of the settlement fund plus the costs of the suit. I believe that my firm assumed a significant risk of non-payment in initiating and prosecuting this case given the novelty of legal issues involved and the vigorous defense that Defendant and its highly skilled counsel put forth. In performing the work required in this case, the lawyers involved had to forgo several others opportunities.

21.     In setting the rates for counsel and law clerks, I know that these rates correlate to their respective experience and are at or below the average rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market for complex class action litigation. The rates listed in the chart below are the same rates we use for hourly clients, which make up a portion of our firm's revenues. For instance, we are currently representing a company in a complex commercial dispute with Groupon, Inc. and that client's retainer includes the same hourly rates sought here. Additionally, federal courts have approved our current hourly billing rates in similar class action litigation. *See, e.g., Gross v. Symantec Corp.*, No. 3:12-cv-00154-CRB, dkt. 88 (N.D. Cal. March 21, 2014) (finding Edelson PC's current "hourly rates are reasonable and have previously been approved by other courts throughout the country" in awarding fees based on the lodestar method); *Robles v. Lucky Brand Dungarees, Inc. et al*, No. 3:10-cv-04846-MMC, dkt. 105 (N.D. Cal. May 10, 2013) (finding Edelson PC's then-current

hourly rates reasonable in a lodestar "cross-check" analysis); *Theis v. AVG Technologies USA, Inc.*, 1:12-cv-10920-RGS (finding Edelson PC's current hourly rates reasonable by granting their full lodestar request); *see also* Exhibit A, Firm Resume of Edelson PC.

22.　　My firm's billable rates and a general outline of the hours of each attorney and law clerk who has worked on this matter are incorporated in the chart below. In my opinion, the expenditure of time by the attorneys and law clerks that worked on this case was reasonable and necessary. Our firm's practice generally, which we followed in this case, is to use a collaborative effort in reviewing discovery as well as the drafting of all major court filings, exhibits, and other important documents. That said, although several lawyers were involved in the litigation of this matter, each made a conscious effort to minimize the duplication of work and adjusted for time deemed to be unnecessary or duplicative. In fact, many of the attorneys were enlisted to perform specific tasks that did not require in-depth knowledge of the facts. By taking this case on a contingency basis and not being paid by the hour, we had an incentive to conduct our efforts efficiently. So too, being responsible for advancing all expenses, we had an incentive not to expend funds unnecessarily.

23.　　It is the firm policy of Edelson PC that attorneys and student law clerks/summer associates are responsible for keeping track of their billable time by *at least* the tenth of the hour through billing management software program known as "FreshBooks," and an older billing management software program known as "Big Time" that was in use when the case was initiated. I have reviewed the reports generated by this software, which are nearly 150 pages in length using approximately 8-point font.

24. Based on reports identified in Paragraph 23, over the past three years, members of my firm have spent over 9,302 hours representing the Plaintiffs and the certified Class without compensation.

25. Based on reports identified in Paragraph 23, my firm's lodestar equals $3,357,538.00 and represents the total work we undertook since the inception of this case, and will continue to undertake, and is accurately presented in the following chart:

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 18 | 397.5 | $685 | $272,287.50 |
| Rafey S. Balabanian (Partner) | 9 | 971.5 | $570 | $553,755.00 |
| Ben Thomassen (Associate) | 3 | 1,565.4 | $350 | $547,890.00 |
| Chandler Givens (Associate) | 3 | 1,525.7 | $350 | $533,995.00 |
| Nick Larry (Associate) | 2 | 571.9 | $335 | $191,587.00 |
| David Mindell (Associate) | 2 | 402.9 | $335 | $134,972.00 |
| Amir Missaghi (Associate) | 1 | 1,424.7 | $295 | $420,287.00 |
| Jack Yamin (Associate) | 1 | 1,180.1 | $295 | $348,130.00 |
| Ari Scharg (Partner) | 6 | 251.5 | $450 | $113,175.00 |
| Steven Teppler (Former Partner) | 32 | 132.5 | $600 | $79,500.00 |
| Law Clerks | n/a | 753.3 | $215 | $161,959.50 |
| Estimated Time Remaining | n/a | 125.0 | $400 | $50,000.00 |
| TOTAL | | 9302 | | $3,357,538.00 |

26.     Based on my personal experience with this case and a review of our electronic case files, the tasks the above-listed attorneys were required to perform in order to achieve the beneficial results of the Settlement included:

- extensive pre-suit investigation of Plaintiffs' claims and the claims of the Class;

- briefing dozens of substantive motions, including those discussed *supra*, ¶ 5;

- engaging in substantial discovery practice, including those efforts discussed *supra*, ¶ 6;

- interviewing prospective expert witness for various stages of the case, and working with our retained expert, who prepared an expert report in support of our motion for class certification;

- preparing for and attending several appearances before the Court;

- drafting two mediation statements, and appearing for three mediations, as discussed *supra*, ¶¶ 7-10; and

- extensive arm's-length settlement negotiations that culminated in a comprehensive settlement agreement, drafting a comprehensive settlement agreement, including the class notices and several declarations, and executing the agreed notice plan with the Settlement Administrator, as discussed *supra*, ¶¶ 7-16.

27.     Based on my experience with several similar settlements, I anticipate that approximately 125 additional hours will be required to be performed through final approval and administration of the settlement, should it be approved by the Court. Attorneys at my firm must still must draft a final approval motion, prepare and attend the final fairness hearing, contend with any potential objectors, and handle various issues related to claims administration.

28.     In addition, Edelson PC has incurred $101,069.13 in reimbursable expenses, which include the costs of travel, meals, lodging, postage/ FedEx, courier service, copying fees for courtesy copies, mediation fees, pro hac vice fees, filing fees, subpoena fees, and expert witness fees. A report detailing these expenses was generated from our Freshbooks program and older Big Time program that was still in use when the case was initiated. A copy of these reports is attached as Exhibit B, and receipts can be compiled and produced if required. I have reviewed the expenses, and any items I deemed unnecessary were removed.

**Plaintiffs' Involvement**

29.     Finally, it is my opinion that the Class benefitted significantly from Plaintiffs Harris's and Dunstan's involvement as the Class Representatives. Were it not for these individuals' efforts, as detailed in their separately filed declarations, the substantial benefit to the Class afforded under this Settlement Agreement could not have been achieved. It is Class Counsel's view that the incentive award to Plaintiffs as the Class Representatives in this case is entirely reasonable.

30.     In particular, without any expectation that they might recover such an award, or anything at all, Plaintiffs Dunstan and Harris devoted their own time and effort to pursuing claims on behalf of the Class and exhibited a willingness to participate in and undertake the responsibilities and risks attendant with bringing such an action—including taking time off of work and away from families and, in the case of Mr. Dunstan, traveling from his home in California to attend case matters in Illinois.

31.     Given the anticipated (and received) exposure and attention of this matter, both Plaintiffs additionally understood that the national media would report on their participation in this

lawsuit. Further, both Plaintiffs understood that they would likely be the focus of attacks and characterizations made by comScore—both through public court filings and through the media.

32.     Likewise, both Plaintiffs understood that their participation in this case would subject their private lives—especially as captured by their use of the computers upon which comScore's software was installed—to intense scrutiny by comScore's counsel and through public filings made with the Court.

33.     Even with these risks, intrusions, and inconveniences, at all times, both Plaintiffs willingly assisted Class Counsel with the investigation of their claims and provided our firm with valuable information regarding their use of and experience with comScore's software.

34.     Both Plaintiffs consulted with us throughout the case—including over the phone, by email, and in person—prepared and sat for two depositions each, and reviewed numerous pages of documents, including filings, discovery requests, deposition transcripts, and Settlement papers.

35.     Simply put, the Plaintiffs' active participation in the litigation was instrumental in ensuring that the Class ultimately recovered and in obtaining the substantial benefits represented by the Parties' Settlement Agreement.

                    *                    *                    *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of August 2014 at Chicago, Illinois.

_____
        Rafey S. Balabanian

11

# Exhibit A

### EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including privacy class actions involving comScore, Netflix, Time, Microsoft, and Facebook, numerous Telephone Consumer Protection Act ("TCPA") against companies such as Google, Twentieth Century Fox, and Simon & Schuester, class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit, fraudulent marketing cases against software companies such as Symantec, mobile content class actions against all major cellular telephone carriers, the Thomas the Tank Engine lead paint class actions, and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

### PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm'". (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009)

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." - *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal) (order appointing the firm interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly

specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

### *Privacy/Data Loss*

#### Data Loss/Unauthorized Disclosure of Data

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred.

- *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar cy pres settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-CV-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-CV-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-CV-14390 (E.D. Mich.) Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged

unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.,* No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

## Telephone Consumer Protection Act

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., UnitedHealth Group, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al,* No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc*., No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.).

Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.) Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al.,* 2013 CH 10169 (Cook County, IL) Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D. Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.). Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc*., Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## *Consumer Technology*

### **Fraudulent Software**

In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.* (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC* (E.D. Pa.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc.,* et al. (N.D. Ill.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

Edelson PC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.) Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

### *Mortgage & Banking*

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank,* N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC. Lead counsel in class actions challenging Citibanks's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

### *General Consumer Protection Class Actions*

We have successfully prosecuted countless class action suits against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Illinois): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams, et al. v. Motricity*, *Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.,* No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

**<u>Deceptive Marketing</u>**

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

### Products Liability Class Actions

We have been appointed lead counsel in state and federal products liability class settlements, including a $30, million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

### Insurance Class Actions

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually

settled the case ensuring that each class member would remain insured.

### Mass/Class Tort Cases

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as one of the nation's leading class action lawyers, especially in the areas of privacy, technology, and consumer advocacy. His notable cases include ones involving the national banks' suspensions of home equity lines of credit in the aftermath of the housing collapse, which resulted in the restoration of billions of dollars of consumer credit lines. He has developed much of the positive law under the Telephone Consumer Privacy Act, especially in the area of text message spam, resulting in settlements collectively worth over a hundred millions of dollars and earning him the moniker, "the Spam Slammer". Jay has been recognized as a "pioneer" in the emerging field of electronic privacy, having established key precedent in cases throughout the country and reaching some of the most important settlements in this space. In addition to

complex defense-side litigation, which he handles only in select cases, Jay also offers strategic support to start-ups, including several that have become national brands.

Jay is a frequent speaker and writer on class action issues, the practice of law more generally, and training and law firm management -- the latter earning him recognition by the ABA as one of "the most creative minds in the legal industry". He is an adjunct professor at Chicago-Kent School of Law, where he has taught seminars on class actions and negotiation. He writes a blog for Thomson Reuters, called Pardon the Disruption, where he focuses on ideas necessary to reform and reinvent the legal industry.

<u>Representative Plaintiff's Class Actions</u>:

- Lead counsel in over a half-dozen nationwide class action settlements collectively worth hundreds of millions of dollars involving claims of unauthorized charges on cellular telephones.
- Recognized as one of the "pioneers" of privacy class action litigation, having successfully litigated cases involving claims of privacy breaches or intrusive behavior against companies such as Netflix, Facebook, Microsoft, and Sears.
- Lead counsel on behalf of the largest adversarially certified privacy class action in the nation.
- Lead counsel in "crptocurrency" class action case against Mt. Gox -- a virtual currency exchange that lost hundreds of millions of dollars worth of bitcoins.
- Lead counsel in numerous text message spam class actions, including a $35 million settlement involving Jiffy Lube, a $20 million settlement involving a for-profit college, a $16 million settlement involving 20th Century Fox, a $10 million settlement involving Simon & Schuster and a $7 million settlement involving the Timberland Co.
- Successfully prosecuted class actions against the major banks for suspending home credit lines in the wake of the financial crash. Settlements restored billions of dollars in credit lines.
- Lead counsel in $30 million class action settlement involving lead-infused Thomas the Tank Engine children's toys.
- Part of a U.S. and Canadian class action mediation team obtaining a $24 million settlement involving the 2008 contaminated pet food recalls.
- Part of a team successfully representing personal injury claimants suffering from effects of second hand smoke while working at a riverboat casino.
- Obtained an injunction preventing an insurance company from canceling the health insurance of thousands of self-employed individuals, later reaching settlement guaranteeing them insurance for the future.

<u>Representative Commercial Litigation Matters</u>:

- Represented one of the nation's largest mortgage lenders in multiple putative employment class actions, resolving them at a fraction of the normal budgets established simply to defend such cases .
- Represented leading advertising company in defense of consumer class action.

- Successfully resolved threatened multi-million dollar class action against technology company pre-suit for nuisance value.
- Successfully negotiated the abandonment of threatened mulit-million class action against advertising company involving digital rights.
- In a 2-1 split decision before the Court of Appeals for the Seventh Circuit, won the dismissal of all charges against former Governor Rod Blagojevich in 9-figure civil racketeering claims on the basis of legislative immunity.
- Successfully won multi-million dollar pre-suit settlement on behalf of technology company and its officers claiming professional negligence.
- Successfully defended several "bet the company" cases involving commercial disputes against marketing company, all resulting in "nuisance value" type settlements.

Representative Corporate Consulting:

- Advised start-up on host of legal issues, including reformulating their business plan to ensure compliance with myriad state regulatory schemes. Company later became recognized as one of the fastest growing businesses in Chicago.
- Consulted with successful mid-west technology company, also recognized as one of the fastest growing in the area.
- Consulted with health care company, including help with product launch and negotiation of licensing agreement.
- Consultant on several tech start-ups, providing legal and strategic advice, including helping to secure VC funds.

Awards and Honors:

- Named to Top 100 Trial Lawyers, by the National Trial Lawyers, 2013
- Selected as an Illinois Super Lawyer, 2012, 2013, 2014
- Benchmark Litigation: Top Illinois Plaintiff class action lawyer, 2013, 2014
- Named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin's 2009. In that award, Jay was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution."
- Included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.
- Presented with the Annual Humanitarian Award for his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

Teaching:

- Adjunct professor at Chicago-Kent College of Law, Class Action Litigation and Negotiation Seminar.

- Guest lecturer at Northwestern University Law School and The John Marshall Law School on consumer and class action issues.
- Faculty for The Sedona Conference Cooperation Training Program (Feb. 21-22, 2014) (clinical training on negotiation and cooperation techniques).

Media:

- Appeared on dozens of local, national, and international television and radio programs, including ABC World News, CNN, Your World With Neil Cavuto, Big Story with John Gibson, CBS Radio and NPR.
- Appeared in thousands of newspapers, magazines, and other publications.
- Nicknamed the "Spam Slammer" in Chicago Sun-Times' front- page cover article after reaching the first ever class action settlement for text message spam.

Public Speaking:

- Panelist for National Association of Attorneys General 2014 Spring Consumer Protection Seminar; "Data Breach and Privacy Panel" (May 19, 2014)
- Panelist for Perrin Webinar: "Sports Concussion Litigation- Latest NCAA and High School Research, Developments and Findings" (May 14, 2014)
- Panelist for Law Seminar International's Conference on Technology Law: "Plaintiff's Perspective on the Use of Big Data Class Actions as a Privacy and Security Enforcement Tool" (Dec. 12, 2013).
- Panelist for Law Seminar International's Conference on Litigating Class Actions: "Evolving Issues in Privacy Class Actions" (Dec. 10, 2013).
- Panelist for Pennsylvania Bar Institute seminar: "The FCC Cracks Down on Telemarking Again. The Regulatory and Litigation Climate of the Telephone Consumer Protection Act" (Dec. 10, 2013).
- Panelist for the NCLC Class Action Symposium: "Data Privacy Class Action Session" (Nov. 10, 2013).
- Panelist for The Sedona Conference on Cyber Liability (participated in three panels:"Private Data Breach Incidents," "Telecommunications & The Internet," and "Pushing the Boundaries of Cyber Liability") (Oct. 24-25, 2013).
- Panelist for NetDiligence 2013 Cyber Risk & Privacy Liability Forum - West Coast: "Data Breach Litigation Update." (Oct. 10, 2013).
- Panelist for ABA Dispute Resolution Conference: "Getting Arbitration Back on Track." (April 5, 2013).
- Panelist for PLI's conference: "Defending Privacy and Behavioral Advertising Class Action Suits 2013: What Every Litigator and In-House Lawyer Needs to Know." (January 22, 2013).
- Panelist discussing privacy class actions during for American Bar Association's 16th Annual National Institute on Class Actions (October 25, 2012).
- Panelist for ITT Chicago-Kent College of Law's "Conference on Internet Privacy, Social Networks and Data Aggregation" (March 23, 2012).

- Panelist for Chicago-Kent College of Law's "Class Dismissed? How the Supreme Court's Recent Decisions Have Shifted the Balance Between Individuals and Corporations" (November 2, 2011).
- Panelist for Daily Deal Media Conference 2011, Roundtable on Legal Landscape of the Daily Deal Industry (September 8, 2011).
- Panelist for Chicago Bar Association's Committee on Cyber Law and Data Privacy, Seminar on Consumer Privacy (June 10, 2011).
- Co-chair of CLE International's 2011 national multi-day conference on consumer class actions (May 12-13, 2011).
- Co-chair of CLE International's 2010 national multi-day conferences on consumer class actions (June 14-15, 2010).
- Panelist for Law Seminar International's "Trends in Federal Circuit Class Certification Rulings" (Nov. 4, 2010).
- Panelist at Decalogue Society of Lawyers' Symposium on "Representing Celebrity Clients" (Jan. 28, 2010).
- Panelist at DePaul University College of Law & The International Institute for Animal Law's symposium, "How Much is Fido/Fluffy Worth? Animal Valuation Issues Raised by the Pet Food Recall and Other Litigation" (Oct. 25, 2007).

Publications:

- "What's Past is Prologue: Snowden Leaks, New Domains, Global Jockeying For Internet Governance Role Still Dominate Cyberlaw Hot Topics in 2014," Bloomberg/BNA Electronic Commerce & Law Report, Feb. 3, 2014 (contributor).
- "Pardon the Disruption," Thomson Reuters Legal Blog, Nov. 7, 2013 through present.
- "The ATL Interrogatories: 10 Questions with Jay Edelson from Edelson PC," Above the Law, Oct. 16, 2013.
- "Beyond the Ping Pong Table: Lessons for Lawyers From Startup Companies," National Law Journal, Sept. 30, 2013.
- "End the Summer Associate Sideshow (and Start Treating Them Like the Almost-Lawyers They Are)," Bloomberg Law, Aug. 21, 2013.
- "Cbyerlaw Predictions: Privacy Litigation in the United States," Bloomberg/BNA, Jan. 2, 2013 (contributor).
- Preventing Your Daily Deals From Becoming Permanent Targets, Daily Deal Media, 2012 Daily Deal Industry Report.
- "Nine Mistakes Companies Make In Defending Themselves Against Consumer Class Action Lawsuits," Law360 (Jan. 2011).
- "Trust Young Lawyers and They Won't Let You Down," ABA Journal's Legal Rebels – Remaking the Profession (Oct. 15, 2009).
- "The YouTube Generation: Implications for Medical Professionalism," Perspectives in Biology and Medicine, Vol. 51, No. 4 (2008), pp. 517-524 (Contributor).

**RYAN D. ANDREWS** is a Partner at EDELSON PC and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.), *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.), *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.), *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Ill.), and *Kramer v. Autobytel*, Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), and *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), *In re Jiffy Lube Int'l Text Spam Litig*, --- F. Supp. 2d ---, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner at EDELSON PC and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet

the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at EDELSON PC and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. (*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc.* (10-cv-02722-CW); *Turner v. Storm8, LLC*, (09-cv-05234) (N.D. Cal.); Standiford v Palm, Inc. (09-cv-05719-LHK) (N.D. Cal.); and *Espinal v Burger King Corporation*, (09-20982) (S.D. Fla.)). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.* 785 F.Supp.2d 855 (N.D. Cal.), *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal.), and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC'S Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including Webb v. Cleverbridge, et al., 11-cv-4141 (N.D. Ill.), Missaghi v. Blockbuster, 11-cv-2559 (D. Minn.), Ledet v. Ascentive, 11-cv-294 (E.D. Penn.), and Drymon v. CyberDefender, 11 CH 16779 (Cook Cnty, Illinois), and was appointed sole-lead class counsel in Loewy v. Live Nation, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner at EDELSON PC and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, *Williams et. al. v. Motricity, Inc.*, and *Walker et. al. v. OpenMarket Inc*.

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., magna cum laude, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney

represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at EDELSON PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., magna cum laude, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., magna cum laude, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He

graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated magna cum laude from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., cum laude, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at EDELSON PC, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at EDELSON PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including Elder v. Pacific Bell Telephone Co., et al., 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Ins. Co., et al*., --- F.R.D. ---, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated magna cum laude from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines

bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before

Case: 1:11-cv-05807 Document #: 358-1 Filed: 08/20/14 Page 35 of 48 PageID #:6625

the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated summa cum laude from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.

EDELSON PC Firm Resume as of August 2014

**Exhibit B**

**Expenses: Detail (Single Matter by Source) Adjustable**

1/1/2005 - 2/15/2012

| | | | | | | Charges | | |
|---|---|---|---|---|---|---|---|---|
| Source | Date | Estimate Item | Category | Note | Input | N/C | Billable | Invoiced |
| **Dunstan v. comScore, Inc.** | | | | | | | | |
| Thad Heckman | 12/11/11 | | General:Office Fee | Sylint Group | $583.00 | no | $583.00 | |
| Thad Heckman | 01/24/12 | | General:Postage/Courrier | FedEx | $38.92 | no | $38.92 | |
| Thad Heckman | 04/28/11 | | General:Office Fee | Retainer  Stroz Friedberg, LLC  retainer | $20,000.00 | no | $20,000.00 | |
| Thad Heckman | 05/03/11 | | General:Office Fee | Intego  Tech consulting | $5,000.00 | no | $5,000.00 | |
| Thad Heckman | 05/10/11 | | Travel:Client-Related | Food-$16.98, Transportation-$89.20  Bill Gray | $106.18 | no | $106.18 | |
| Thad Heckman | 04/30/11 | | General:Office Fee | Stroz Friedberg | $2,312.50 | no | $2,312.50 | |
| Thad Heckman | 10/14/11 | | General:Office Fee | Transcript for 10/6, 10/4, 10/7 | $310.40 | no | $310.40 | |
| Thad Heckman | 01/17/12 | | General:Office Fee | Tracey D. McCullough Court Reporter  Transcript for 1/5/12 motion | $101.50 | no | $101.50 | |
| Thad Heckman | 11/17/11 | | General:Office Fee | U.S N.D of Illinois Colleen Conway  transcript | $87.00 | no | $87.00 | |
| Thad Heckman | 05/10/11 | | Travel:Client-Related | Taxi  Chandler Givens | $25.00 | no | $25.00 | |
| **Dunstan v. comScore, Inc.** | | | | | **$28,564.50** | | **$28,564.50** | |
| **OVERALL TOTALS:** | | | | | **$28,564.50** | | **$28,564.50** | |

Edelson PC
350 North LaSalle
Suite 1300
Chicago IL  60654
United States





Class Action Cases
@edelson.com @edelson.com

| Invoice #: | 555555W |
|---|---|
| Date: | August 20, 2014 |
| Amount Due USD: | $72,504.63 |

| Item | Description | Unit Cost ($) | Quantity | Price ($) |
|---|---|---|---|---|
| Expense | [Dunstan v. comScore 07/08/14] Research, The Sylint Group | 222.00 | 1 | 222.00 |
| Expense | [Dunstan v. comScore 06/18/14] Case Research, Kroll Ontrack | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 06/04/14] Copies/Binding/Production, Fedex | 5.74 | 1 | 5.74 |
| Expense | [Dunstan v. comScore 06/04/14] Case Research, Kroll Ontrack | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 04/18/14] Case Research: Kroll Ontrack. April Service | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 03/30/14] Case Research: Kroll Ontrack. February Service | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 03/26/14] Case Research, Kroll Ontrack | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 03/07/14] Transcript: Tracey McCullough. Hearing on 11/12/134 | 36.90 | 1 | 36.90 |
| Expense | [Dunstan v. comScore 03/07/14] Transcript, Tracey D. McCullough: Jack Yamin | 248.05 | 1 | 248.05 |
| Expense | [Dunstan v. comScore 02/28/14] Research, Kroll Ontrack | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 02/21/14] Taxi/Train/Rental Car, uber | 22.67 | 1 | 22.67 |
| Expense | [Dunstan v. comScore 02/21/14] Taxi & Parking: Cab home from late filing | 8.00 | 1 | 8.00 |
| Expense | [Dunstan v. comScore 02/18/14] Research: RAW Digital | 404.00 | 1 | 404.00 |
| Expense | [Dunstan v. comScore 02/13/14] Deposition: David Feldman Worldwide, Inc. Mike Harris | 836.30 | 1 | 836.30 |
| Expense | [Dunstan v. comScore 02/11/14] Travel: Reimbursement: Jeff Dunstan | 171.11 | 1 | 171.11 |
| Expense | [Dunstan v. comScore 02/07/14] Courtesy Copy Delivery: Comet Messenger | 11.30 | 1 | 11.30 |
| Expense | [Dunstan v. comScore 02/06/14] Deposition: Capital Reporting Company. Michael Brown, Richard Weaver | 1,023.70 | 1 | 1,023.70 |
| Expense | [Dunstan v. comScore 02/04/14] Deposition: Capital Reporting Company. John O'Toole, Scott Mitchell | 1,419.20 | 1 | 1,419.20 |
| Expense | [Dunstan v. comScore 02/04/14] Travel: Mike Harris | 64.90 | 1 | 64.90 |
| Expense | [Dunstan v. comScore 01/27/14] Case Research, Kroll Ontrack | 525.00 | 1 | 525.00 |
| Expense | [Dunstan v. comScore 01/23/14] FedEx | 87.64 | 1 | 87.64 |

| | | | | |
|---|---|---|---|---|
| Expense | [Dunstan v. comScore 01/22/14] Transcript: Colleen M. Conway. Hearing on 1/14/14 | 13.20 | 1 | 13.20 |
| Expense | [Dunstan v. comScore 01/08/14] Taxi, Dispatch Taxi | 27.15 | 1 | 27.15 |
| Expense | [Dunstan v. comScore 12/28/13] Deposition: Esquire Solutions. Joshua Fox | 2,042.45 | 1 | 2,042.45 |
| Expense | [Dunstan v. comScore 12/19/13] Deposition: Shelley Plate Reporting, Inc. Josh Chasin | 1,226.55 | 1 | 1,226.55 |
| Expense | [Dunstan v. comScore 12/16/13] Service of Process: Direct Process Server, LLC. John Burbank | 160.00 | 1 | 160.00 |
| Expense | [Dunstan v. comScore 12/15/13] Deposition: Shelley Plate Reporting, Inc. Glenn Marchione | 1,232.75 | 1 | 1,232.75 |
| Expense | [Dunstan v. comScore 12/10/13] Flight: Nick Larry. Chicago to Ft. Lauderdale, Ft. Lauderdale to Chicago | 622.04 | 1 | 622.04 |
| Expense | [Dunstan v. comScore 12/05/13] Service of Process: Arrow Security Corp. Subpoena to Josh Fox | 90.10 | 1 | 90.10 |
| Expense | [Dunstan v. comScore 11/26/13] Deposition: Shelley Plate Reporting, Inc. LaToy Peterson-Renfrow | 682.25 | 1 | 682.25 |
| Expense | [Dunstan v. comScore 11/25/13] Deposition: Shelley Plate Reporting, Inc. Yvonne Bigbee | 964.50 | 1 | 964.50 |
| Expense | [Dunstan v. comScore 11/25/13] Deposition: Shelley Plate Reporting, Inc. John O'Toole | 960.50 | 1 | 960.50 |
| Expense | [Dunstan v. comScore 11/19/13] Deposition: David Feldman Worldwide, Inc. Jeffrey Dunstan | 866.75 | 1 | 866.75 |
| Expense | [Dunstan v. comScore 11/18/13] Hotel: Jeff Dunstan | 324.76 | 1 | 324.76 |
| Expense | [Dunstan v. comScore 11/18/13] Flight: CA to Chicago. Jeff Dunstan | 1,226.80 | 1 | 1,226.80 |
| Expense | [Dunstan v. comScore 11/15/13] Flight: Jeff Dunstan. CA to Chicago | 683.80 | 1 | 683.80 |
| Expense | [Dunstan v. comScore 11/15/13] Flight: Jeff Dunstan. Chicago to CA | 655.80 | 1 | 655.80 |
| Expense | [Dunstan v. comScore 11/15/13] Deposition: Shelley Plate Reporting, Inc. Steven Chase | 1,029.00 | 1 | 1,029.00 |
| Expense | [Dunstan v. comScore 11/14/13] Travel, uber: late filing - cab home | 23.87 | 1 | 23.87 |
| Expense | [Dunstan v. comScore 11/12/13] Copies/Binding/Production: FedEx | 11.49 | 1 | 11.49 |
| Expense | [Dunstan v. comScore 11/07/13] Case Research: The Sylint Group | 225.48 | 1 | 225.48 |
| Expense | [Dunstan v. comScore 11/04/13] Copies/Binding/Production: FedEx | 6.79 | 1 | 6.79 |
| Expense | [Dunstan v. comScore 10/24/13] Transcript: Colleen M. Conway. Hearing on 10-15-13 | 5.40 | 1 | 5.40 |
| Expense | [Dunstan v. comScore 10/24/13] FedEx | 40.49 | 1 | 40.49 |
| Expense | [Dunstan v. comScore 10/22/13] Service of Process: Delaware Attorney Services LLC. AT&T Inc. | 65.00 | 1 | 65.00 |
| Expense | [Dunstan v. comScore 10/21/13] Transcript: Tracey D. McCullough. Hearing on 10-16-13 | 27.60 | 1 | 27.60 |
| Expense | [Dunstan v. comScore 10/18/13] Service of Process: Delaware Attorney Services LLC. Acxiom, Epsilon, Exeran, Time Warner, AOL, Cox, TiVo, Crossix | 375.00 | 1 | 375.00 |

| | | | | |
|---|---|---|---|---|
| Expense | [Dunstan v. comScore 10/16/13] Supplies: Parallels Software for comScore discovery - Jack Yamin | 87.39 | 1 | 87.39 |
| Expense | [Dunstan v. comScore 10/15/13] Supplies: Three Computers for viewing code | 2,708.42 | 1 | 2,708.42 |
| Expense | [Dunstan v. comScore 10/11/13] Case Research, Parallels: e-discovery | 87.39 | 1 | 87.39 |
| Expense | [Dunstan v. comScore 10/11/13] Transcript: Colleen M. Conway. Hearing on 10-10-13 | 9.60 | 1 | 9.60 |
| Expense | [Dunstan v. comScore 10/08/13] Copies/Binding/Production: Verity Group | 10.00 | 1 | 10.00 |
| Expense | [Dunstan v. comScore 10/03/13] Travel, uber: taxi home after late filing | 23.63 | 1 | 23.63 |
| Expense | [Dunstan v. comScore 10/03/13] Deposition: Shelley Plate Reporting, Inc. Michael Brown | 725.25 | 1 | 725.25 |
| Expense | [Dunstan v. comScore 09/26/13] Case Research: Kroll Ontrack. Discovery services | 1,075.00 | 1 | 1,075.00 |
| Expense | [Dunstan v. comScore 08/28/13] Mediation: Upchurch Watson White & Max | 6,614.18 | 1 | 6,614.18 |
| Expense | [Dunstan v. comScore 08/19/13] FedEx | 24.09 | 1 | 24.09 |
| Expense | [Dunstan v. comScore 05/06/13] Copies/Binding/Production: FedEx | 28.72 | 1 | 28.72 |
| Expense | [Dunstan v. comScore 04/24/13] Transcript: Colleen M. Conway. Hearing on 4/23/13 | 66.55 | 1 | 66.55 |
| Expense | [Dunstan v. comScore 04/08/13] Transcript: Hearings on 3/15/12 and 1/31/13 | 19.20 | 1 | 19.20 |
| Expense | [Dunstan v. comScore 02/10/13] Case Research: CloudNine Discovery | 125.76 | 1 | 125.76 |
| Expense | [Dunstan v. comScore 01/21/13] Research: CloudNine Discovery | 125.76 | 1 | 125.76 |
| Expense | [Dunstan v. comScore 01/17/13] Taxi/Train/Rental Car, Taxi | 24.80 | 1 | 24.80 |
| Expense | [Dunstan v. comScore 01/16/13] Copies/Binding/Production: Verity Group | 159.75 | 1 | 159.75 |
| Expense | [Dunstan v. comScore 01/10/13] Case Research: CloudNine Discovery | 125.76 | 1 | 125.76 |
| Expense | [Dunstan v. comScore 01/09/13] Case Research: CloudNine Discovery | 125.76 | 1 | 125.76 |
| Expense | [Dunstan v. comScore 01/07/13] Transcript: Hearing on 12-6-12 | 6.00 | 1 | 6.00 |
| Expense | [Dunstan v. comScore 12/27/12] Professional Services: CloudNine Discovery | 125.76 | 1 | 125.76 |
| Expense | [Dunstan v. comScore 12/19/12] Deposition: Shelley Plate Reporting - Deposition of Colin O'Malley | 1,095.00 | 1 | 1,095.00 |
| Expense | [Dunstan v. comScore 12/19/12] Deposition: Shelley Plate Reporting - Deposition of Roberto Tamassia | 510.00 | 1 | 510.00 |
| Expense | [Dunstan v. comScore 12/04/12] Transcript: Hearing on 11-26-12 | 24.20 | 1 | 24.20 |
| Expense | [Dunstan v. comScore 11/26/12] Research: CloudNine Discovery | 1,003.81 | 1 | 1,003.81 |
| Expense | [Dunstan v. comScore 11/19/12] Deposition: David Feldman Worldwide - Don Waldhalm | 1,198.40 | 1 | 1,198.40 |
| Expense | [Dunstan v. comScore 11/08/12] Deposition: The Sylint Group - Don Waldhalm deposition | 3,805.01 | 1 | 3,805.01 |
| Expense | [Dunstan v. comScore 11/02/12] Transcript: 10-25-12 Hearing | 7.20 | 1 | 7.20 |

| | | | | |
|---|---|---|---|---|
| Expense | [Dunstan v. comScore 10/25/12] Hotel: Don Waldhalm | 363.07 | 1 | 363.07 |
| Expense | [Dunstan v. comScore 10/23/12] Flight: United - O'Hare to Sarasota, Don Waldham | 998.10 | 1 | 998.10 |
| Expense | [Dunstan v. comScore 10/23/12] Flight: Southwest - Don Waldham, Tampa to Chicago | 468.80 | 1 | 468.80 |
| Expense | [Dunstan v. comScore 10/22/12] Transcript: 10-18-12 Hearing | 139.15 | 1 | 139.15 |
| Expense | [Dunstan v. comScore 10/16/12] Transcript: Colleen Conway Hearing on 10/9/12 | 9.00 | 1 | 9.00 |
| Expense | [Dunstan v. comScore 10/15/12] Case Research: CloudNine Discovery - October | 878.05 | 1 | 878.05 |
| Expense | [Dunstan v. comScore 10/08/12] Case Research: The Sylint Group | 2,871.00 | 1 | 2,871.00 |
| Expense | [Dunstan v. comScore 09/19/12] Taxi & Parking | 45.65 | 1 | 45.65 |
| Expense | [Dunstan v. comScore 09/19/12] Travel | 25.00 | 1 | 25.00 |
| Expense | [Dunstan v. comScore 09/19/12] Travel: 2x$25.00 for carry-ons | 25.00 | 1 | 25.00 |
| Expense | [Dunstan v. comScore 09/19/12] Taxi & Parking | 21.00 | 1 | 21.00 |
| Expense | [Dunstan v. comScore 09/19/12] Service of Process: LaSalle Process Servers - Xinyu Huang subpoena | 185.00 | 1 | 185.00 |
| Expense | [Dunstan v. comScore 09/17/12] Travel: lunch | 9.27 | 1 | 9.27 |
| Expense | [Dunstan v. comScore 09/16/12] Travel: o'hare to apt | 41.25 | 1 | 41.25 |
| Expense | [Dunstan v. comScore 09/14/12] Travel, Hyatt Regency: incidentals @ hotel | 16.63 | 1 | 16.63 |
| Expense | [Dunstan v. comScore 09/14/12] Travel: Lunch @ depositions (w/ CG) | 31.93 | 1 | 31.93 |
| Expense | [Dunstan v. comScore 09/14/12] Travel: Taxi from Dulles to Hotel | 23.00 | 1 | 23.00 |
| Expense | [Dunstan v. comScore 09/12/12] Travel: Jeff Dunstan. Roaming charges on phone | 98.75 | 1 | 98.75 |
| Expense | [Dunstan v. comScore 09/12/12] Transcript: Jeff Dunstan Deposition | 933.85 | 1 | 933.85 |
| Expense | [Dunstan v. comScore 09/11/12] Travel: dinner | 8.44 | 1 | 8.44 |
| Expense | [Dunstan v. comScore 09/10/12] FedEx: Binding | 5.75 | 1 | 5.75 |
| Expense | [Dunstan v. comScore 09/07/12] FedEx | 12.98 | 1 | 12.98 |
| Expense | [Dunstan v. comScore 09/05/12] Flight: Ben Thomassen and Chandler Givens | 490.20 | 1 | 490.20 |
| Expense | [Dunstan v. comScore 09/05/12] Case Research: The Sylint Group - Don Waldhalm | 2,838.00 | 1 | 2,838.00 |
| Expense | [Dunstan v. comScore 08/31/12] Transcript: Kathleen M. Fennell | 22.50 | 1 | 22.50 |
| Expense | [Dunstan v. comScore 08/31/12] Case Research: CloudNine Discovery | 51.50 | 1 | 51.50 |
| Expense | [Dunstan v. comScore 08/30/12] Transcript: Pamela S. Warren | 65.25 | 1 | 65.25 |
| Expense | [Dunstan v. comScore 08/29/12] Deposition: David Feldman Worldwide - Michael Brown | 2,808.41 | 1 | 2,808.41 |
| Expense | [Dunstan v. comScore 08/24/12] Transcript: David Feldman Worldwide. Michael Harris deposition | 1,651.23 | 1 | 1,651.23 |
| Expense | [Dunstan v. comScore 08/14/12] Subpoena: Xinyu Huang-Millennial Media | 61.98 | 1 | 61.98 |
| Expense | [Dunstan v. comScore 08/10/12] Research: CloudNine Discovery - Hosting | 878.05 | 1 | 878.05 |

| | | | | |
|---|---|---|---|---|
| Expense | [Dunstan v. comScore 08/09/12] Hotel: Jeffrey Dunstan | 905.59 | 1 | 905.59 |
| Expense | [Dunstan v. comScore 08/09/12] Flight: Baggage - Jeff Dunstan | 50.00 | 1 | 50.00 |
| Expense | [Dunstan v. comScore 08/09/12] Food: Jeff Dunstan | 97.51 | 1 | 97.51 |
| Expense | [Dunstan v. comScore 08/09/12] Taxi: Jeff Dunstan | 110.00 | 1 | 110.00 |
| Expense | [Dunstan v. comScore 08/12/12] Taxi/Food/Flight, Cab | 22.25 | 1 | 22.25 |
| Expense | [Dunstan v. comScore 08/05/12] Research: The Sylint Group | 1,287.00 | 1 | 1,287.00 |
| Expense | [Dunstan v. comScore 08/02/12] Internal Firm Expense, Parallels | 39.99 | 1 | 39.99 |
| Expense | [Dunstan v. comScore 08/01/12] Transcript | 102.85 | 1 | 102.85 |
| Expense | [Dunstan v. comScore 07/31/12] Transcript | 13.50 | 1 | 13.50 |
| Expense | [Dunstan v. comScore 07/24/12] FedEx: Binding | 5.75 | 1 | 5.75 |
| Expense | [Dunstan v. comScore 07/18/12] Flight: Jeffrey Dunstan | 634.70 | 1 | 634.70 |
| Expense | [Dunstan v. comScore 07/10/12] Transcript: 7-5-12 proceedings | 36.00 | 1 | 36.00 |
| Expense | [Dunstan v. comScore 07/09/12] Research: The Sylint Group | 1,393.00 | 1 | 1,393.00 |
| Expense | [Dunstan v. comScore 06/06/12] Case Research: The Sylint Group | 1,834.50 | 1 | 1,834.50 |
| Expense | [Dunstan v. comScore 05/07/12] Copies/Binding/Production | 6.28 | 1 | 6.28 |
| Expense | [Dunstan v. comScore 05/07/12] Case Research: The Sylint Group | 815.50 | 1 | 815.50 |
| Expense | [Dunstan v. comScore 04/19/12] Cab, Cab: Rush transcript from hearing | 8.00 | 1 | 8.00 |
| Expense | [Dunstan v. comScore 04/17/12] Transcript | 72.50 | 1 | 72.50 |
| Expense | [Dunstan v. comScore 04/16/12] FedEx | 23.70 | 1 | 23.70 |
| Expense | [Dunstan v. comScore 04/03/12] Research: The Sylint Group | 3,246.50 | 1 | 3,246.50 |
| Expense | [Dunstan v. comScore 03/28/12] Transcript | 96.80 | 1 | 96.80 |
| Expense | [Dunstan v. comScore 03/05/12] Research: The Sylint Group | 3,850.50 | 1 | 3,850.50 |
| Expense | [Dunstan v. comScore 01/26/12] Transcript | 6.00 | 1 | 6.00 |

| | |
|---|---|
| Subtotal: | 72,504.63 |
| Total: | 72,504.63 |
| Amount Paid: | -0.00 |
| Balance Due USD: | $72,504.63 |

This invoice was sent using FreshBooks

**Invoice #555555W Expense Receipt**          [08/02/12] Internal Firm Expense, Parallels - 39.99

Billing Address
----------------------------------

Amir Missaghi
2418 W Wilson Ave
Chicago  IL  60625
United States

Items (All prices are in US Dollars)
--------------------------------------

1. Parallels Desktop 7.0 for Mac (English) - Download
   Quantity 1, Unit Price: $39.99, Amount: $39.99

Subtotal: $39.99
Taxes: $0.00
Total: $39.99

**Invoice #555555W Expense Receipt**                    [09/19/12] Taxi & Parking - 45.65

09/11/2012  Tue    TAXICAB TRANSPORTATI847-368-8916                    45.65

85101592255847-368-8916
847-368-8916
**Doing Business As:** TAXICAB TRANSPORTATION
**Merchant Address:** 5200 N OTTO AVE
CHICAGO
IL
60656-1011
UNITED STATES
**Reference Number:** 320122550379707926
Dispute/Inquire about this charge ↗
**Category:** Transportation - Taxis & Coach                    🖨 PRINT

**Invoice #555555W Expense Receipt**                                                    [09/19/12] Travel - 25.00



09/11/2012  Tue      UNITED AIRLINES CHICAGO/OHARE IL                                                      25.00

25689285 WWW.UNITED.COM
UNITED AIRLINES
From : To : Carrier : Class :
CHICAGO O'HARE INT
WASHINGTON DULLES UA

N/A UA

N/A YY

N/A YY
Ticket Number : 01626075073873 Date of Departure : 0911
Passenger Name : GIVENS /FIRST CHECKED
Document Type : SPECIAL SERVICE TICKET

**Doing Business As:** UNITED AIRLINES

**Merchant Address:**  DEPT HQJ-CM
600 JEFFERSON STREET
HOUSTON
TX
77002-7363
UNITED STATES

**Reference Number:** 320122570400948153

Dispute/Inquire about this charge ↗

**Category:** Travel - Airline                                                              🖨 PRINT

**Invoice #555555W Expense Receipt**                    [09/19/12] Taxi & Parking - 21.00

## Thanks for riding Uber!

BILLED TO
Chandler Givens (chandler.givens@gmail.com)

TRIP REQUEST DATE
August 7, 2012 at 10:10pm

DROPOFF LOCATION
848-850 W Fullerton Ave, Chicago, IL

CREDIT CARD
AMEX Personal American Express - 1007

BILLED TO CARD
# $21.00

**Invoice #555555W Expense Receipt**                    [10/11/13] Case Research, Parallels: e-discovery - 87.39

| | 10/11/2013 | 10/13/2013 | Sale | CBI*PARALLELS | $87.39 |
|---|---|---|---|---|---|

▸ Print

866-522-6855, IL 606040000 US
Online, Mail, or Telephone transaction

**Invoice #555555W Expense Receipt**                    [01/08/14] Taxi, Dispatch Taxi - 27.15

