# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>COMSCORE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:11-cv-5807<br><br>Hon. James F. Holderman<br><br>Magistrate Judge Young B. Kim |

**DECLARATION OF JEFF DUNSTAN IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

I, Jeff Dunstan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am one of the named plaintiffs in the above captioned action, and have been appointed as Class Representative by the Court. I am over the age of 18 and fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify as to the matters stated herein, I could and would competently do so. I make this declaration in support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and an Incentive Award.

2. My involvement in this case began on September 22, 2010, when I contacted attorneys at Edelson PC regarding comScore's data collection software that I had discovered on my personal computer. After discussions with my attorneys, I agreed to serve as one of the named plaintiffs in this case. My agreement to serve as a named plaintiff was in no way conditioned on my receiving any benefit for agreeing to be involved in this lawsuit. Further, I was never promised anything in exchange for serving as the named plaintiff, nor did I expect to receive any benefit, including, specifically, any monetary benefit for my service.

1

3. When I agreed to serve as a named plaintiff in this case, I understood that the case was likely to receive significant coverage from the national media—including my personal participation as a representative of the Class. Likewise, I understood that comScore was likely to make public statements—through court filings and otherwise—attacking my credibility and the merits of the case.

4. Before this lawsuit was filed on August 23, 2011, I fully reviewed the facts of the Complaint, including the details explaining my experience with comScore's software to ensure the accuracy of those statements. I performed this same task before the Amended Complaint was filed in October 2012, and again before the Second Amended Complaint was filed in January 2013.

5. In December 2011, I permitted technicians to obtain a forensic image of my computer's hard drive to preserve the device as evidence in this lawsuit. I was nervous about allowing my private information to be copied and removed from my possession, but with assurances from my lawyers that the information would kept secure, I completed the hard drive imaging process.

6. Early in April 2012 I worked with my attorneys to review and answer comScore's first set of interrogatories, which asked about my own experience with comScore's software and my involvement in the lawsuit. On April 6, 2014, I reviewed the answers to comScore's interrogatories for correctness and then signed the finalized version of my responses.

7. Around the same time, I conducted a search of my personal files for documents requested by comScore. The documents included things like personal correspondence, receipts of purchases, snapshots of files on my computer, and my resume.

8. Also in April 2014, I worked with my attorneys to locate and then provide

additional documents responding to certain of comScore's requests for the production of documents. I approved the production of these documents to comScore on April 27, 2012.

9. In early May 2012, I worked with my attorneys to supplement my original responses to comScore's first set of interrogatories. I signed off on those supplemental answers on May 14, 2012.

10. During that summer, my attorneys informed me that comScore intended to take my deposition in Chicago. On August 7, 2012, I flew from Bakersfield, California to Chicago. That night I prepared for several hours with my attorneys at their Chicago office for my deposition the next day.

11. I sat for my first deposition on August 8, 2012, and flew back to Bakersfield, California that night. All told, I ended up taking off several unpaid days of work to attend my first deposition in Chicago.

12. After the deposition, on August 17, 2012, I reviewed my deposition transcript to ensure the accuracy of my testimony and approved the same.

13. While sitting for my deposition, comScore's attorneys asked several questions about the use of my personal computer by my wife, Lori Baxter. On August 21, 2012, my wife was served at our house with a subpoena to be deposed in connection with this lawsuit. This upset her, as she felt that she didn't have any involvement in this case.

14. Unfortunately, the first subpoena was defective, so comScore tried to serve her at our home with a second subpoena on the same day. This upset me, and I called my attorneys to discuss the matter with them. During the call, I learned that, in addition to the subpoenas served on my wife, comScore informed my attorneys that it planned to subpoena my employer to obtain my time records. At that point, I was very upset.

3

15. I work as a salesman for a major retailer, and comScore said that they wanted to see whether I was at work the day comScore's software was installed on my computer. Ultimately, upon the suggestion of my attorneys, I produced the relevant time records myself on August 28, 2012. comScore did not pursue the matter further.

16. In late August 2013, my attorneys informed me that comScore had propounded additional discovery requests requiring my attention—including both interrogatories and requests for admission. Once again, I worked with my attorneys to honestly answer comScore's requests based on my knowledge and experiences. I approved both sets of responses—i.e., to comScore's interrogatories and requests for admission—on September 6, 2013 and September 10, 2013, respectively.

17. In the following months, my attorneys asked for my help in providing supplemental information for my interrogatory responses. Once again, I worked with my attorneys to review and draft supplemental responses and, on October 10, 2013, signed off on them. In November and December 2012, I similarly worked with my attorneys to review, draft, and approve additional supplemental responses.

18. In the beginning of November 2013, I learned from my attorneys that comScore wanted to depose me for a second time. I took off another two unpaid days of work and flew from Bakersfield, California to Chicago on November 18, 2013. That night, I met with my attorneys for several hours to prepare for the next day's deposition.

19. On November 19, 2013 I sat for my second deposition at comScore's attorneys' offices in Chicago. I flew back to Bakersfield, California that night.

20. On December 16, 2013, I reviewed my second deposition transcript to ensure the accuracy of my testimony and approved the same.

21. There were three different settlement conferences in this case—taking place in August 2013, November 2013, and December 2013. For each conference, I discussed our side's settlement position with my attorneys, was engaged in the settlement process over the course of each conference, and discussed the results of, and next steps following, each conference with my attorneys.

22. In early March 2014, in consultation with my attorneys, I learned that comScore had accepted the material settlement terms proposed by Magistrate Judge Kim after the conclusion of the second settlement conference. As such, I confirmed to my attorneys that I too approved these general terms, and on March 19, 2014, I learned that a settlement framework was agreed upon.

23. When I approved of the general terms offered by comScore, it did not contain any incentive award for me and my acceptance of the settlement for the Class was in no way conditioned on me receiving any award. It was only after I learned that an agreement had been reached with comScore on all material terms of the relief to the Class, that I was informed that comScore agreed to allow me to petition the Court for an incentive award.

24. On June 3, 2014, I was provided with the finalized terms of a settlement agreement. After discussing the terms with my attorneys, I signed the agreement on June 6, 2014. Towards the beginning of August 2014, I filed a claim using the settlement website, www.DataCollectionSettlement.net.

25. In addition to the work described above, I also spent many hours communicating with my attorneys at Edelson PC on the telephone, by email, and in person.

I declare under penalty of perjury that the foregoing is true and correct.

5

Executed this 19th day of August, 2014 at Bakersfield, California.

                                                                                                      _____
                                                                                                      Jeff Dunstan

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MIKE HARRIS and JEFF DUNSTAN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>COMSCORE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:11-cv-5807<br><br>Hon. James F. Holderman<br><br>Magistrate Judge Young B. Kim |

**DECLARATION OF MIKE HARRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

I, Mike Harris, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am one of the named plaintiffs in this case, and have been appointed as a Class Representative by the Court. I am over the age of 18 and fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify as to the matters stated herein, I could and would competently do so. I make this declaration in support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and an Incentive Award.

2. I became involved in this case in August 2011 after I contacted the attorneys at Edelson PC regarding comScore's data collection software that I had discovered on my personal computer. After discussions with my attorneys, I agreed to serve as one of the named plaintiffs in this case. My agreement to serve as a named plaintiff was in no way conditioned on my receiving any benefit for agreeing to be involved in this lawsuit. Further, I was never promised anything in exchange for serving as the named plaintiff, nor did I expect to receive any benefit, including, specifically, any monetary benefit for my service.

1

3. When I agreed to join this case as a plaintiff, I realized that the national media would likely report on the case—including on my participation as a potential representative of the class. Likewise, I recognized that comScore was likely to make public statements—through court filings and otherwise—that might question my credibility and the merits of my claims.

4. I also met with my attorneys in their Chicago office to further discuss the comScore software I found on my computer, how it may have been bundled with a free screensaver I previously downloaded, and the steps I took to remove the software from my computer.

5. Before this lawsuit was filed on August 23, 2011, I fully reviewed the facts of the Complaint, including the details explaining my experience with comScore's software to ensure the accuracy of those statements. I performed this same task before the Amended Complaint was filed in October 2012, and again before the Second Amended Complaint was filed in January 2013.

6. In April 2012, my attorneys asked me to answer and review comScore's first set of interrogatories relating to my experience with comScore's software and my involvement in this lawsuit. On April 8, 2012 I signed the document containing my answers to comScore's interrogatories. Also at this time, I conducted a thorough search of my computer for anything that might be responsive to comScore's requests for documents or information. I also searched my home and various other places where responsive information may have been stored. The documents and information I provided included proof that I had internet service at my home, information regarding the website from where I downloaded the screensaver bundled with comScore's software, and my resume.

7. Later in the same month, my attorneys spoke with me about producing additional

documents in response to comScore's requests, and on April 27, 2012, my attorneys produced further documents to comScore with my help. Likewise, in May 2012, my attorneys consulted me about supplementing my interrogatory responses, and I approved my answers on May 14, 2012.

8. Shortly after that, I learned from my attorneys that comScore wanted to take my deposition. Leading up to my deposition, I met with my attorneys at their office and prepared for several hours. On July 13, 2012, I sat for my first deposition at the offices of comScore's attorneys, using some of my limited number vacation days to take a day off of work. Soon after the deposition, I reviewed my deposition transcript to ensure the accuracy of my testimony and approved the same.

9. Next, I was asked to provide answers to more of comScore's interrogatories, and I signed the document with my completed answers on September 13, 2012.

10. In late August 2013, I worked with my attorneys to answer more discovery requests from comScore, including interrogatories and requests for admission. I provided my answers to my attorneys via telephone and email, and I approved documents reflecting my admission and denials on September 7, 2013 and documents with my interrogatory answers on September 10, 2013.

11. My attorneys then spoke with me about supplementing my interrogatory responses, and I signed off on those additional answers on October 11, 2013. Similarly, I reviewed and approved additional supplemental answers to comScore's interrogatories in November and December 2013.

12. In December 2013, I learned from my attorneys that comScore wanted to depose me for a second time. Although I accepted my obligation as the Class Representative, it was

difficult to schedule my deposition without taking any more personal days to get time off from work. While comScore's attorneys agreed to schedule my deposition late in the afternoon on February 5, 2014 at their offices in Chicago, I had to extend my work day (over the course of five days) to make up the time I devoted to the deposition, so as to not officially miss a day of work. The day before my deposition, I again met with my attorneys for several hours to prepare for the deposition. Soon after the deposition, I reviewed my deposition transcript to ensure the accuracy of my testimony and approved the same.

13. Three different settlement conferences took place in this case—in August 2013, November 2013, and December 2013. In each instance, I discussed our side's settlement position with my attorneys, was engaged in the settlement process during each conference, and discussed the results of, and next steps following, each conference with my attorneys.

14. In early March 2014, in consultation with my attorneys, I learned that comScore had accepted the material settlement terms proposed by Magistrate Judge Kim after the conclusion of the second settlement conference. As such, I confirmed to my attorneys that I too approved these general terms, and on March 19, 2014, I learned that a settlement framework was agreed upon.

15. When I approved of the general terms offered by comScore, it did not contain any incentive award for me and my acceptance of the settlement for the class was in no way conditioned on me receiving any award. It was only after I learned that an agreement had been reached with comScore on all material terms of the relief to the Class, that I was informed that comScore agreed to allow me to petition the Court for an incentive award.

16. On June 3, 2014, I was provided with the finalized terms of a settlement agreement. After discussing the terms with my attorneys, I signed the agreement on June 7,

2014.

17. In addition to the work described above, I also spent many hours communicating with my attorneys at Edelson PC on the telephone, by email, and in person.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 19th day of August 2014 at Chicago, Illinois.

_____
Mike Harris